LAWRENCE A. ORGAN (SBN 175503)
*Email: larry@civilrightsca.com*
BARBARA E. FIGARI (SBN 251942), *Of Counsel*
*Email: barbara@figarilaw.com*
JULIANNE K. SCHWARZ (SBN 290001)
NICOLE C. MOSKOWITZ (SBN 298431)
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
407 San Anselmo Avenue, Suite 201
San Anselmo, CA 94960
Telephone: (415) 453-4740
Facsimile: (415) 785-7352

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOHN ADAMS, SHANE CASTLE on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES; and CATHY A. CATTERSON in her official capacity as Circuit and Court of Appeals Executive to the U.S. Courts for the Ninth Circuit.

Defendants.

Case No.: ____________________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FIRST AMENDMENT AND 44 U.S.C. § 3101**

**RELATED CASE NO. 4:14-cv-03022-YGR**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

*Justice can never be done in the midst of prejudice against a party.*

*"The mind of the bigot is like the pupil of the eye. The more light you shine on it, the more it will contract."* -- *Oliver Wendell Holmes, Jr.*

**PRELIMINARY STATEMENT**

1. This case involves censorship and obfuscation of core First Amendment speech denial of access to public records that go the very essence of an unbiased judiciary. Specifically, the Defendant, COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, by and through its executive CATHY CATTERSON refuses to release emails contained in an Investigative File into Judge Richard F. Cebull (Ret.). Plaintiffs are informed and believe that these emails contain racist, sexist and discriminatory messages against, *inter alia*, Native Americans, women, and people of color.

2. After the Committee investigated Judge Richard F. Cebull's conduct, the Committee found literally hundreds of emails confirming Judge Cebull's bias. Accordingly, Plaintiffs seek disclosure of these discriminatory emails because this is a matter of public concern, and because various parties who appeared before Judge Cebull likely had their due process rights violated by his rulings.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under 28 U.S.C. §§1331, 1343, 2201(a), 2202, and pursuant to the First, Fifth and Fourteenth Amendments to the United States Constitution. Venue is appropriate in the Northern District of California because the emails at issue in this case are located there and the actors who refuse to produce the documents, Defendants, are located there.

**PARTIES**

4. John Adams is a natural person residing in Helena, Montana. He is a member of the press corps and requested copies of the emails written by Hon. Richard F. Cebull (ret.). Plaintiff Adams brings this action on behalf of himself and all similarly situated members of the press.

5. Shane Castle, the executive director of Big Sky Investigative Reporting, a nonprofit investigative media organization in Montana, is a natural

person residing in Montana. He is a member of the press corps and requested copies of the emails written by Hon. Richard F. Cebull (ret.). Plaintiff Castle brings this action on behalf of himself and all similarly situated members of the press.

6. Defendant, Ninth Circuit Committee on Judicial Conduct and Disability of the Judicial Conference of the United States ("the Committee"), is located in the State of California with its headquarters in San Francisco, California.

7. Plaintiffs are informed and believe that Defendant CATHY A. CATTERSON, acting in her official capacity as the Circuit & Court of Appeals Executive to the U.S. Court of Appeals for the Ninth Circuit is located in San Francisco, California, has access to and control over the racist, sexist and otherwise objectionable emails sent and received by Judge Cebull.

**STATEMENT OF FACTS**

8. Plaintiff Mr. Adams is a reporter, who on or about February 27, 2012, received a copy of an email that included a sender/recipient – then Chief Judge of the United States District Court of Montana – Judge Richard F. Cebull. It read:

"Normally I don't send or forward a lot of these, but even by my standards, it was a bit touching. I want all of my friends to feel what I felt when I read this. Hope it touches your heart like it did mine. This is so beautiful…"

"A little boy said to his mother; 'Mommy, how come I'm black and you're white?" His mother replied, "Don't even go there Barack! From what I can remember about that party, you're lucky you don't bark!"

9. Mr. Adams interviewed Judge Cebull on or about February 29, 2012 at approximately1:15 p.m. Judge Cebull admitted to sending the email and admitted it was to and from his Court-issued email address.

10. Three investigation requests were made to the Defendants, and the Defendants launched an investigation into Judge Cebull. On January 17, 2014, the COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES. C.C.D. No. 13-01. IN RE: COMPLAINT OF JUDICIAL MISCONDUCT - PROCEEDING IN REVIEW OF THE ORDER AND MEMORANDUM OF THE JUDICIAL COUNCIL OF THE NINTH CIRCUIT J.C. Nos. 09-12-90026, 09-12-90032 filed their MEMORANDUM OF DECISION in re Judge Richard Cebull. For purposes of brevity, Plaintiffs incorporate Decision Nos. 09-12-90026, 09-12-90032 as if fully set forth therein, and attaches true and correct copies of these decisions as Exhibits A and B, respectively, to this Complaint. For good cause, the Defendants found the complaints against the Judge to be well placed.

11. Judge Cebull waived confidentiality in the investigation and eventually retired from his position.

12. During the course of his term as a U.S. Federal Judge, Plaintiffs are informed and believe that he presided over hundreds of cases involving the rights of Native Americans, women and people of color.

13. Judge Cebull understated the scope of his discriminatory and bigoted emails. The Committee's investigation revealed that Cebull had "hundreds upon hundreds" of racist, bigoted and misogynistic emails on his Court issued Computer, residing in his Court issued email account.

14. Plaintiffs have asked to see the contents of the investigative files including the emails, through requests to Cathy Catterson. On or about January 11, 2015, Mr. Castle requested copies of all the incoming and outgoing emails from Judge Cebull's government account that supported the report's conclusion as well as the Committee's investigative report. On or about January 13, 2015, Defendants denied these requests relying on alleged exemptions pursuant to 28 U.S.C. § 360 and pursuant to an exemption under the Freedom of Information Act

for "the courts of the United States" and referencing 5 U.S.C. § 551 (1) (B). Consistently, the Defendants state they are prohibited from releasing any information contained in the investigative file including the emails independently created or received by Judge Cebull.

15. The Defendants, a section of the United States Government, have no compelling interest justifying this prohibition, particularly after completing an investigation of complaints, finding merit to the complaints, and having completed the investigation. The Committee should therefore be enjoined from withholding the investigative file and/or the discriminatory emails concerning Judge Cebull from the Plaintiffs so that the contents thereof can be reported to the public and so that any violations of due process can be exposed and rectified.

16. 28 U.S.C. §16 grants exclusive control to the Defendants to exercise authority provided in chapter 16 of Title 28 United States Codes for the review of circuit council conduct and disability orders filed under that chapter.

17. All of the Committee's proceedings are confidential except as provided by statute. The Act authorizes an exception to the normal confidentiality provisions where the judicial council in its discretion provides a copy of the report of the special committee to the complainant and to the subject judge. 28 U.S.C. § 360(a)(1). However, the Rules do not entitle the complainant to a copy of the special committee's report.

18. Plaintiffs Adams and Castle are active members of the Press and have both sought to obtain copies of the Investigation File and Judge Cebull's discriminatory emails via requests to Defendants. In both cases, Defendants refused to produce copies of any of the documents requested. Defendants relied on 28 U.S.C. § 360(a)(1) and the exemption for the Judiciary under the Freedom of Information Act (FOIA) 5 U.S.C. § 551 (1) (B) as a legal basis for denying the requests for the documents at issue.

19. Plaintiff Adams became aware of actions taken by Judge Cebull that violated several canons of the Judicial Code and which raise an inference that Judge Cebull's rulings violated the Due Process clause of the Fifth Amendment.

20. Based upon his knowledge of these, Plaintiff Adams filed a news story about Judge Cebull.

21. Several individuals filed complaints with the Defendants that contained detailed allegations concerning the acts of misconduct referenced in this Complaint.

22. Plaintiffs Adams and Castle believe that the judge named in the judicial complaint(s) and the Defendant Committee have acted unlawfully in that they have refused to produce emails that are not private or confidential documents. In addition, to the extent Defendants are relying on statutes to prevent dissemination and review of the discriminatory emails at issue here, such statues are unconstitutional in that they abridge the Freedom of the Press guaranteed by the First Amendment. Accordingly, this Court should strike down the statutes relied upon by Defendants as unconstitutional.

23. Plaintiffs Adams and Castle also desire to write and publish stories about what they believe was a failure by the Committee to investigate the complaints more fully. They are prevented from writing such stories because they do not have the primary sources of information. By preventing the reporters' stories, the Defendants are abridging the freedom of the press as delineated under the First Amendment.

24. Plaintiffs Adams and Castle desire to publish stories about the complaint and ways in which Committee's investigation reviewed facts and determined that no rights had been violated. In addition, Plaintiffs seek to ensure that those people who were potentially negatively impacted by Judge Cebull's racist rulings have a recourse by providing access to his discriminatory emails through the stories they intend to publish about Judge Cebull's views and his

rulings in actual cases. By preventing the reporters' stories, the Defendants are abridging the freedom of the press as delineated under the First Amendment.

## CAUSES OF ACTION

### FIRST COUNT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF FIRST AMENDMENT

25. All previous paragraphs are incorporated by reference.

26. This case arises under the First Amendment to the Constitution of the United States, which provides in pertinent part

> Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The provisions thereof guarantee to the members of the Press the right to practice their profession in an unencumbered way. This includes giving access to important processes and documents. The access of the press to important information is the lynchpin of a thriving democratic republic as it provides a check on the excesses of power to which our Founding Fathers were concerned. The right of the Press to freely exercise their review of governmental processes is fundamental. As William Blackstone noted, "the liberty of the press is indeed essential to the nature of a free state." Our Second President and one of the authors of the Constitution, John Adams, included the following in the Constitution of the Commonwealth of Massachusetts, "The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth." In the Pentagon Papers case, Justice Hugo Black noted that

> In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy. The press was to serve the governed, not the governors. The Government's

> power to censor the press was abolished so that the press would remain forever free to censure the Government. The press was protected so that it could bare the secrets of government and inform the people. Only a free and unrestrained press can effectively expose deception in government. And paramount among the responsibilities of a free press is the duty to prevent any part of the government from deceiving the people and sending them off to distant lands to die of foreign fevers and foreign shot and shell.

*New York Times Co. v. United States*, 403 U.S. 713, 717, 91 S. Ct. 2140, 2143 (1971).

27. The facts of the instant case highlight the importance of giving the Press access to critical government documents. Here, the Committee on Judicial Conduct has specifically noted that there is substantial evidence of bias by a former jurist Judge Cebull. The implications of that bias include denial of Due Process rights and Equal Protection of the law. Without access to the requested emails, the potential harm to numerous people is incalculable.

28. The Committee refuses to acknowledge inquiries into The Investigation File; moreover, the Committee has taken what was once public domain information (the Cebull emails) and classified them now as "Investigative Materials" subject to secrecy, even though the complaint(s) has/have been settled.

29. Federal laws prohibiting the publication by complainants of their complaints are content-based and therefore subject to strict scrutiny. *Citizens United v. F.E.C.*, 130 S. Ct. 876, 898 (2010). Similarly, federal laws prohibiting the disclosure of public documents should be subject to strict scrutiny in light of the fundamental rights involved.

30. These prohibitions cannot satisfy strict scrutiny because the Federal Government has no compelling interest in suppressing the content of complaints of racism and bias launched against an accused racist and bigoted jurist. These prohibitions therefore violate the Free Speech and Free Press Clause of the First Amendment to the United States Constitution.

31. Plaintiffs Adams and Castle are suffering a violation of their rights to Freedom of Speech and Freedom of the Press under the First Amendment because they have been prevented from accessing public records and from publishing the results of their requests and the complaints filed against Judge Cebull. The nondisclosure of these important public documents therefore constitutes an abridgement of Plaintiffs' First Amendment rights.

32. Plaintiffs Adams and Castle will continue to have their constitutional rights violated until this Court grants relief.

33. This Court should therefore act to declare the legal bases on which the government relies for non-disclosure, 28 U.S. Code § 360 (a) of the Committee's Rules and 5 U.S.C. § 551 (1) (B) the FOIA exemption for judicial records, as violating the First Amendment protections for Freedom of Speech and the Press.

**SECOND COUNT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**FOR VIOLATION 44 U.S.C. § 3101**

34. All previous paragraphs are incorporated by reference.

35. The Committee on Judicial Conduct and Disability of the Judicial Conference of the United States is part of the Administrative Office of the United States Courts, which is the administrative agency of the United States Federal Court System. It is an agency to the judicial branch of government created under Article III of the United States Constitution, much like the agencies (such as the Environmental Protection Agency) created to the executive branch of government created under Article I of the United States Constitution.

36. The Federal Records Act of 1950, *as amended*, provides that each Federal Agency is required to make and preserve records that (1) document the organization, functions, policies, decisions, procedures, and essential transactions of the agency and (2) provide the information necessary to protect the legal and

financial rights of the government *and* by persons directly affected by the agency's activities. The Act defines a Federal record without respect to format, and accordingly, records include, *inter alia*, all documentary materials, regardless of physical form or characteristics.

37. Under the Act, agencies are required to manage the creation, maintenance, use and disposition of records in order to achieve adequate and proper documentation of the policies and transactions of the Federal government. The Act cautions that poorly managed records may complicate, or in some cases prevent, an agency's compliance with the Freedom of Information Act (FOIA) or litigation-related discovery actions.

38. Defendants have failed to create, manage, or maintain Federal Records in a manner such that said records can be efficiently procured by requests through the Freedom of Information Act and/or litigation-related discovery.

39. Plaintiffs Adams and Castle are suffering a violation of their rights to Freedom of Speech and Freedom of the Press under the First Amendment because they have been prevented from accessing public records and from publishing the results of their requests and the complaints filed against Judge Cebull. The nondisclosure of these important public documents therefore constitutes and abridgement of Plaintiffs' First Amendment rights, as well as the statutory provisions of the Federal Records Act.

40. Plaintiffs Adams and Castle will continue to have their constitutional rights violated until this Court grants relief.

41. This Court should therefore issue an Order mandating that the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States, as part of the Administrative Office of the United States Courts, immediately comply with the Federal Records Act in creating, managing and maintaining a system through which Judge Cebull's emails in particular, and the emails of all Federal Judges, are maintained so that they may be produced in the

future in connection with a FOIA request and/or a litigation-related discovery order.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief from this Court as follows:

a) Exercise jurisdiction over Plaintiffs' complaint;

b) Declare that 28 U.S. Code § 360 (a) of the Committee's Rules are unconstitutional on their face and as applied to Plaintiffs;

c) Declare 5 U.S.C. § 551 (1) (B) of the Freedom of Information Act unconstitutional on its face and as applied to Plaintiffs and similarly situated members of the Press;

d) Issue an immediate order to Defendants to preserve all emails written or received by Judge Cebull containing discriminatory or bigoted statements or content.

e) Declare the emails written or received by Judge Cebull on his government email account and government computer public records subject to disclosure to members of the Press.

f) issue an Order mandating that the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States, as part of the Administrative Office of the United States Courts, immediately comply with the Federal Records Act in creating, managing and maintaining a system through which Judge Cebull's emails in particular, and the emails of all Federal Judges, are maintained so that they may be produced in the future in connection with a FOIA request and/or a litigation-related discovery order.

g) Award plaintiffs nominal damages against Defendants;

h) Award plaintiffs and the Class their costs of litigation, including reasonable attorney's fees, expert witness fees, and expenses pursuant to the equal access to justice statute or any other applicable statute; and

i) Grant such other relief to which Plaintiffs may be entitled, or as this Court deems necessary and proper.

Respectfully submitted,

DATED: March 5, 2015

**CALIFORNIA CIVIL RIGHTS LAW GROUP**

/s/ Lawrence A. Organ

Lawrence A. Organ, Esq.
Barbara E. Figari, Esq.
Attorneys for Plaintiffs