BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6646
Facsimile: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Attorneys for Committee on Judicial
Conduct and Disability*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| JOHN ADAMS, SHANE CASTLE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES; and CATHY A. CATTERSON in her official capacity as Circuit and Court of Appeals Executive to the U.S. Courts for the Ninth Circuit,<br><br>Defendants. | No. 4:15-cv-01046-YGR<br><br>**DEFENDANT COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hearing Date: July 28, 2015<br>Time: 2:00 p.m.<br>Courtroom 1, 4th Floor<br><br>Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

NOTICE OF MOTION .................................................................................................................. 1

STATEMENT OF THE ISSUE ...................................................................................................... 1

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

I.      RELEVANT STATUTORY BACKGROUND ..................................................................... 2

    A.    The Judicial Conduct and Disability Act ...................................................................... 2

    B.    The Freedom of Information Act ................................................................................... 5

    C.    The Federal Records Act ............................................................................................... 6

II.     BACKGROUND FACTS AND PLAINTIFFS' ALLEGATIONS ...................................... 7

    A.    Background Proceedings ................................................................................................ 7

    B.    Plaintiffs' Allegations ................................................................................................... 9

ARGUMENT ................................................................................................................................ 10

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION
       OVER THIS ACTION ........................................................................................................ 10

    A.    Sovereign immunity bars this action. .......................................................................... 11

    B.    The JCD Committee is absolutely immune from suit. ................................................ 12

    C.    Plaintiffs lack standing to assert the hypothetical due process interests
         of third parties. ............................................................................................................ 14

    D.    Plaintiffs lack standing to sue the JCD Committee because they have not alleged an
         injury that is "fairly traceable" to the JCD Committee. .............................................. 15

II.     EVEN ASSUMING THIS COURT HAD SUBJECT MATTER JURISDICTION,
       PLAINTIFFS' CLAIMS ARE MERITLESS AND MUST BE DISMISSED. ................. 17

    A.    Plaintiffs have no valid claim under the First Amendment. ....................................... 18

       1.   There is no First Amendment right to the records Plaintiffs seek. ............................ 18

       2.   Section 360(a) and the FOIA exemption for the judiciary are constitutional. .......... 22

    B.    Plaintiffs lack a private right of action to enforce the Federal Records Act. .............. 24

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*A-G-E Corp. v. United States*,
  968 F.2d 650 (8th Cir. 1992) ............................................................................ 17

*Andrade v. U.S. Sentencing Comm'n*,
  989 F.2d 308 (9th Cir. 1993) ............................................................................ 21

*Antoine v. Byers & Anderson, Inc.*,
  508 U.S. 429 (1993) .......................................................................................... 13

*Armstrong v. Bush*,
  924 F.2d 282 (D.C. Cir. 1991) .......................................................................... 24

*Ayrs v. Greenwald*,
  21 F.3d 1111 (9th Cir. Apr. 12, 1994) .............................................................. 12

*Banks v. Dep't of Justice*,
  538 F. Supp. 2d 228 (D.D.C. 2008) ................................................................. 21

*Bonnichsen v. U.S. Dep't of Army*,
  969 F. Supp. 628 (D. Or. 1997) ....................................................................... 23

*Bradley v. Fisher*,
  80 U.S. 335 (1871) ..................................................................................... 12, 13

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) ......................................................................... 18, 19, 20

*Brown v. Gomez*,
  19 F. App'x 513 (9th Cir. 2001) ....................................................................... 22

*Cal. First Amendment Coalition v. Calderon*,
  150 F.3d 976 (9th Cir. 1998) ..................................................................... 20, 21

*Caldwell v. Obama*,
  6 F. Supp. 3d 31 (D.D.C. 2013) ....................................................................... 21

*Chavez v. City of Oakland*,
  414 F. App'x 939 (9th Cir. 2011) ..................................................................... 19

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ...................................................................................... 16

*Clemmer v. Office of Chief Judge*,
  544 F. Supp. 2d 722 (N.D. Ill. 2008) ............................................................... 21

*Courthouse News Service v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ............................................................................ 20

*Danos v. Jones*,
   652 F.3d 577 (5th Cir. 2011) ............................................................ 12, 21

*Danos v. Jones*,
   721 F. Supp. 2d 491 (E.D. La. 2010) ..................................................... 12

*Easter v. Am. West Fin.*,
   381 F.3d 948 (9th Cir. 2004) ................................................................ 17

*Entler v. McKenna*,
   487 F. App'x 417 (9th Cir. 2012) ......................................................... 18

*Forrester v. White*,
   484 U.S. 219 (1988) ............................................................................. 13

*Four Directions v. Comm. on Judicial Conduct and Disability*,
   No. 4:14-cv-03022-YGR, 2015 WL 1254765 (N.D. Cal. Mar. 18, 2015) ............... 13

*Four Directions v. Comm. on Judicial Conduct and Disability*,
   No. 4:14-cv-03022-YGR, 2015 WL 3409469 (N.D. Cal. May 29, 2015)................ 14

*Freedom to Travel Campaign v. Newcomb*,
   82 F.3d 1431 (9th Cir. 1996) .................................................... 18, 19, 23

*Holloman v. Watt*,
   708 F.2d 1399 (9th Cir. 1983) .............................................................. 11

*Houchins v. KQED, Inc.*,
   438 U.S. 1 (1978) ................................................................. 18, 19, 20, 21

*Hrdlicka v. Reniff*,
   656 F.3d 942 (9th Cir. 2011) ................................................................ 19

*In re Complaint of Judicial Misconduct*,
   37 F.3d 1511 (JCD Committee 1994)........................................................ 5

*In re Complaint of Judicial Misconduct*,
   425 F.3d 1179 (9th Cir. Jud. Council 2005) .............................................. 3

*In re Focus Media, Inc.*,
   378 F.3d 916 (9th Cir. 2004) ................................................................ 21

*In re Judicial Misconduct*,
   751 F.3d 611 (JCD Committee 2014)......................................... 7, 8, 9, 16

*Kinetic Systems, Inc. v. Fed. Fin. Bank*,
   895 F. Supp. 2d 983 (N.D. Cal. 2012) ................................................... 11

*Kissinger v. Reporters Committee for Freedom of the Press*,
   445 U.S. 136 (1980) ............................................................................. 24

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004)............................................................................. 15

*LaNave v. Minnesota Sup. Ct.*,
   915 F.2d 386 (8th Cir. 1990) ................................................................ 13

*Lane v. Peña,*
    518 U.S. 187 (1996) ................................................................................................. 11, 12

*Los Angeles Police Dep't v. United Reporting Publ'g Corp.,*
    528 U.S. 32 (1999) ........................................................................................................ 23

*Lynch v. United States,*
    292 U.S. 571 (1934) ...................................................................................................... 11

*Mayo v. U.S. Gov't Printing Office,*
    9 F.3d 1450 (9th Cir. 1993) .................................................................................. 21, 22

*Mills v. United States,*
    742 F.3d 400 (9th Cir. 2014) ...................................................................................... 15

*Mullis v. U.S. Bankr. Court,*
    828 F.2d 1385 (9th Cir. 1987) ............................................................................... 12, 13

*Munns v. Kerry,*
    782 F.3d 402 (9th Cir. 2015) ...................................................................................... 11

*Overton v. Torruella,*
    183 F. Supp. 2d 295 (D. Mass. 2001) ........................................................................ 13

*Partington v. Gedan,*
    961 F.2d 852 (9th Cir. 1992) ...................................................................................... 13

*Pell v. Procunier,*
    417 U.S. 817 (1974) ...................................................................................................... 18

*Polich v. Burlington Northern, Inc.,*
    942 F.3d 1467 (9th Cir. 1991) .................................................................................... 17

*Pony v. County of Los Angeles,*
    433 F.3d 1138 (9th Cir. 2006) ............................................................................... 14, 15

*Powers v. Ohio,*
    499 U.S. 400 (1991) ...................................................................................................... 15

*Press-Enterprise Co. v. Superior Court,*
    478 U.S. 1 (1986) .......................................................................................................... 20

*Public Citizen v. Carlin,*
    184 F.3d 900 (D.C. Cir. 1999) .................................................................................... 24

*Public Citizen v. Carlin,*
    2 F. Supp. 2d 1 (D.D.C. 1997) .................................................................................... 24

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ...................................................................................................... 20

*Salmon Spawning & Recovery Alliance v. Gutierrez,*
    545 F.3d 1220 (9th Cir. 2008) .................................................................................... 15

*Samuel v. Michaud,*
    980 F. Supp. 1381 (D. Idaho 1996) ........................................................................... 13

*Senate of State of Cal. v. Mosbacher*,
    968 F.2d 974 (9th Cir. 1992) ................................................................... 19

*Shemonsky v. Vanaskie*,
    2005 WL 2031140 (M.D. Pa. Aug. 16, 2005) ......................................... 12

*Sparks v. Character & Fitness Comm.*,
    859 F.2d 428 (6th Cir. 1988) ................................................................... 13

*Stump v. Sparkman*,
    435 U.S. 349 (1978) ................................................................................. 12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................... 14, 15

*United States v. Casas*,
    376 F.3d 20 (1st Cir. 2004) ..................................................................... 20

*United States v. Mitchell*,
    463 U.S. 206 (1983) ................................................................................. 11

*Warth v. Dep't of Justice*,
    595 F.2d 521 (9th Cir. 1979) ............................................................. 21, 22

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................... 14, 15

*Washington Legal Foundation v. U.S. Sentencing Comm'n*,
    17 F.3d 1446 (D.C. Cir. 1994) ................................................................ 21

*Zemel v. Rusk*,
    381 U.S. 1 (1965) ....................................................................... 18, 23, 24

**Statutes**

Federal Records Act,
    Pub. L. No. 81-849, 64 Stat. 583 (1950) .................................................. 6

Freedom of Information Act,
    Pub L. No. 89-554, 80 Stat. 383 (1966) ................................................... 5

Judicial Councils Reform and Judicial Conduct and Disability Act,
    Pub. L. No. 96-458, 94 Stat. 2035 (1980) ................................................ 2

Judicial Improvements Act,
    Pub. L. No. 107-273, 116 Stat. 1758 (2002) ............................................ 4

5 U.S.C. § 551 ................................................................................... 5, 21

5 U.S.C. § 552 ............................................................................................ 5

28 U.S.C. § 331 .................................................................................................................. 3

28 U.S.C. § 332 .................................................................................................................. 3

28 U.S.C. § 351 .................................................................................................................. 3

28 U.S.C. § 352 ............................................................................................................... 3, 5

28 U.S.C. § 353 .................................................................................................................. 3

28 U.S.C. § 354 .................................................................................................................. 3

28 U.S.C. § 357 ........................................................................................................ 5, 10, 16

28 U.S.C. § 360 ......................................................................................................... 4, 5, 20

44 U.S.C. § 2101 ................................................................................................................ 6

44 U.S.C. § 2102 ................................................................................................................ 6

44 U.S.C. § 2115 ................................................................................................................ 7

44 U.S.C. § 2901 ................................................................................................................ 6

44 U.S.C. § 2902 ................................................................................................................ 6

44 U.S.C. § 2905 ................................................................................................................ 7

44 U.S.C. § 3101 ................................................................................................................ 6

44 U.S.C. § 3303 ................................................................................................................ 6

44 U.S.C. § 3314 ................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 12(h)(3) .................................................................................................... 12

JCD Rule 21(a) .................................................................................................................. 4

**Legislative History**

S. Rep. No. 96-362 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4315 ........................... 5, 20

### NOTICE OF MOTION

Defendant, the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States ("JCD Committee"), respectfully moves this Court to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) or, in the alternative, Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The JCD Committee respectfully requests that this motion be heard on Tuesday, July 28, 2015 at 2:00 p.m., or as soon as feasible thereafter.  The JCD Committee requests that this Court dismiss Plaintiffs' Complaint in its entirety because the Court lacks subject matter jurisdiction to hear any of the claims asserted by Plaintiffs or, in the alternative, because Plaintiffs' claims are meritless.

### STATEMENT OF THE ISSUE

Whether Plaintiffs' allegations are sufficient to establish subject matter jurisdiction in this Court; or, in the alternative, whether Plaintiffs have stated a valid claim for relief under either the First Amendment or the Federal Records Act.

### INTRODUCTION

Plaintiffs claim to be two members of the press in Montana who sought access to confidential investigative records whose disclosure is squarely prohibited by federal statute. Plaintiffs have attempted to generate a lawsuit where the Court lacks jurisdiction, where Defendants are immune from suit, and where Defendants caused them no cognizable injury.  If that were not enough, Plaintiffs' foundational legal assumption—that the First Amendment guarantees a right of access to records of judicial misconduct investigations—is deeply flawed and contrary to established precedent.  This case must be dismissed.

From the outset, Plaintiffs' claims suffer from multiple independent jurisdictional faults. First, they cannot sue Defendants because Congress has not waived the United States's sovereign immunity for such a suit.  For this reason alone, Plaintiffs' claims must be dismissed.  Second, even if Congress had enacted a valid waiver of sovereign immunity, Defendants enjoy immunity from suit.  More specifically, the JCD Committee and its member judges are entitled to absolute judicial immunity from the claims Plaintiffs attempt to advance.  Third, assuming Plaintiffs

could somehow overcome these fatal deficiencies, a close review of their allegations demonstrates that they lack standing to sue the JCD Committee because the injury asserted—lack of access to certain investigative records—is not "fairly traceable" to any act by the JCD Committee.  The Court lacks subject matter jurisdiction to hear the claims asserted against the JCD Committee and they must be dismissed under Rule 12(b)(1).

If this Court considers the merits of Plaintiffs' claims—which, to be clear, it should not—it will find that those claims lack validity.  The Supreme Court has long made clear that the First Amendment confers no right, either on the press or the public generally, to access government information.  And Plaintiffs' ability to speak or write has not been affected in any way, either by the statutory provisions they contend are unconstitutional or by the actions of either Defendant. Plaintiffs' First Amendment claim thus lacks merit.  Although Plaintiffs also attempt to sue under the Federal Records Act, longstanding Supreme Court precedent makes clear that there is no private right of action under that statute.  Thus, to the extent the Court retains jurisdiction to evaluate the merits of Plaintiffs' claims, they both must be dismissed under Rule 12(b)(6).

<strong>BACKGROUND</strong>

**I.    RELEVANT STATUTORY BACKGROUND**

Plaintiffs' Complaint identifies and relies upon provisions from three federal statutes, the Judicial Councils Reform and Judicial Conduct and Disability Act, the Freedom of Information Act, and the Federal Records Act.  To provide background for the Court, an overview of the key provisions of these statutes follows.

**A.    The Judicial Conduct and Disability Act**

In the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980,[1] Congress established an administrative scheme for the Judicial Branch to investigate and resolve complaints of judicial misconduct and disability.  Pursuant to the Act, any individual may file a complaint "alleging that a judge has engaged in conduct prejudicial to the effective and

---

[1] Pub. L. No. 96-458, 94 Stat. 2035 (1980) (codified, as amended, at various sections of Title 28).

*Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR
**Defendant Committee's Motion to Dismiss - 2**

expeditious administration of the business of the courts" or alleging inability of the judge to discharge the duties of office because of mental or physical disability. *See* 28 U.S.C. § 351. As the Ninth Circuit Judicial Council[2] has noted, "the overall purpose of the Judicial Conduct and Disability Act is not to punish but to protect the judicial system and the public from further acts by a judicial officer that are detrimental to the fair administration of justice." *In re Complaint of Judicial Misconduct*, 425 F.3d 1179, 1182 (9th Cir. Jud. Council 2005).

The Act provides for review of complaints by the chief judge of the circuit, 28 U.S.C. § 352, or, if warranted, by a special committee composed of circuit and district judges in the circuit, *id.* § 353. A special committee may be appointed by the chief judge to investigate the facts and allegations of the complaint, *id.* § 353(a), when that complaint is not disposed of by the chief judge of the circuit, either through dismissal or other corrective actions, *see id.* § 352(b). The special committee "shall conduct an investigation as extensive as it considers necessary, and shall expeditiously file a comprehensive written report thereon with the judicial council of the circuit" containing both investigative findings and recommendations for "necessary and appropriate action" by the judicial council. *Id.* § 353(c). The judicial council of the circuit may, in turn, conduct additional investigation and take certain corrective actions prescribed by statute, *id.* § 354(a), or, in its discretion, may refer the complaint with the judicial council's recommendations "for appropriate action to the Judicial Conference of the United States," *id.* § 354(b).

The Judicial Conference of the United States (or "Judicial Conference") is a conference presided over by the Chief Justice of the United States and comprised of the chief judge of each judicial circuit, the chief judge of the Court of International Trade, and a district judge from each judicial circuit. *Id.* § 331. The Judicial Conference "is authorized to exercise the authority provided in [the Judicial Conduct and Disability Act] as the [Judicial] Conference, or through a

_____

[2] By statute, the judicial council of each federal circuit comprises the chief judge of the circuit, who presides, and an equal number of circuit and district judges from within the circuit. *See* 28 U.S.C. § 332(a)(1).

*Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR
**Defendant Committee's Motion to Dismiss - 3**

standing committee." *Id.*  In the proceedings that underlie the instant case, the Judicial

Conference has elected to exercise its authority through a standing committee, known as the

Committee on Judicial Conduct and Disability, which is a named Defendant.  (This

memorandum refers to the Committee on Judicial Conduct and Disability as the "JCD

Committee," both for brevity and to avoid potential confusion with the Special Committee

appointed by the Ninth Circuit Judicial Council to investigate the misconduct complaints that

underlie this case.)  Pursuant to the authority granted by 28 U.S.C §§ 331 and 358, the Judicial

Conference has prescribed the Rules for Judicial-Conduct and Judicial-Disability Proceedings

(the "JCD Rules").[3]  Pursuant to Rule 21 of the JCD Rules, the JCD Committee consists of seven

members and "considers and disposes of all petitions for review."  The JCD Committee's

decisions are presumptively final, subject only to discretionary review by the Judicial

Conference of the United States.  JCD Rule 21(a).

Of particular relevance to this case, investigations of misconduct complaints are

conducted under a congressional mandate of confidentiality.  28 U.S.C. § 360.  Section 360(a) of

Title 28 provides that, subject to three limited exceptions, "all papers, documents, and records of

proceedings related to investigations conducted under this chapter shall be confidential and shall

not be disclosed by any person in any proceeding." *Id.*[4]  The exceptions set forth in § 360 permit

limited disclosures in narrowly defined circumstances that are not relevant here.  In

recommending passage of the Act, the Senate Judiciary Committee identified the principal

interests served by the confidentiality provision set forth at § 360(a): "The Committee believes

that the establishment of a confidentiality provision will avoid possible premature injury to the

reputation of a judge."  S. Rep. No. 96-362 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4315, 4330.

The confidentiality requirement also ensures that those with meritorious grievances not be

---

[3] These rules are available at http://www.uscourts.gov/file/document/2008/03/rules-judicial-conduct-and-judicial-disability-proceedings.

[4] When it was enacted as part of the Judicial Improvements Act of 2002, section 360(a) superseded an existing confidentiality provision previously set forth at 28 U.S.C § 372(c)(14). *See* Pub. L. No. 107-273, 116 Stat. 1758 (2002).

*Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR
**Defendant Committee's Motion to Dismiss - 4**

deterred from filing complaints "because they fear retaliation, or other adverse consequences, if they do so." *In re Complaint of Judicial Misconduct*, 37 F.3d 1511, 1514 (JCD Committee 1994).

While § 360(a) prohibits disclosure of records related to investigative proceedings, its neighboring provision, section 360(b), requires that any order providing for corrective action in response to a complaint be made available to the public through the clerk's office of the court of appeals in the relevant circuit. 28 U.S.C. § 360(b). This limited publication requirement indicates that Congress considered and determined the degree of public disclosure that is appropriate in judicial misconduct investigations.

Finally, section 357(c) of Title 28 provides that, except for review by the Judicial Conference that is specifically authorized by the Act, "all orders and determinations . . . shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.* § 357(c); *see also id.* § 352(c).

### B.    The Freedom of Information Act

The Freedom of Information Act ("FOIA") was enacted in 1966 as an amendment to the Administrative Procedure Act. *See* Pub L. No. 89-554, 80 Stat. 383 (1966). The FOIA provides that a person may obtain access to "agency records" from a federal "agency," except where such agency records are protected from public disclosure by one of nine exemptions or are otherwise not subject to the FOIA. 5 U.S.C. §§ 551(1), 552(a)(3), (b), (c). The FOIA's definition of an "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . ., or any independent regulatory agency," *id.* § 552(f)(1), but specifically excludes, among other entities, the Legislative and Judicial Branches of the federal government, *see id.* § 551(1)(A)-(B) (excluding "the Congress" and "the courts of the United States" from the definition of "agency"). The FOIA thus establishes a statutory right of public access to certain information from agencies in the Executive Branch of the federal government.

C.      The Federal Records Act

The Federal Records Act of 1950 ("FRA"), as amended, establishes the framework for records management programs in federal agencies.[5]  *See* Pub. L. No. 81-849, 64 Stat. 583.  In enacting the FRA, Congress sought to ensure, among other things, "efficient and effective records management[,] . . . [a]ccurate and complete documentation of the policies and transactions of the Federal Government[, and] . . . [j]udicious preservation and disposal of records."  44 U.S.C. § 2902(1), (5).  The Act requires the "head of each Federal agency [to] make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency."  *Id.* § 3101.  In addition to records management, the FRA regulates the disposal of records, and provides that records may not be "alienated or destroyed" except pursuant to the disposal provisions of the Act.  *Id.* § 3314. The National Archives and Records Administration ("NARA"), under the supervision and direction of the Archivist of the United States, is chiefly responsible for implementing the FRA.  *Id.* §§ 2101(3), 2102.

Chapter 33 of the FRA provides the "exclusive" procedure for the disposal of records of the Government.  *Id.* § 3314.  Pursuant to that Chapter, agency heads submit to the Archivist schedules for "records of a specified form or character" proposing the disposal of those records after a specified period of time, *id.* § 3303(3); the Archivist may, after notice and opportunity for public comment, "empower the agency to dispose of those records in accordance with NARA regulations," *id.* § 3303a(a).

The FRA also contains remedial provisions.  It provides that, "[w]hen the Archivist finds that a provision of [the FRA] has been or is being violated, the Archivist shall (1) inform in writing the head of the agency concerned of the violation and make recommendations for its correction; and (2) unless satisfactory corrective measures are demonstrably commenced within

---

[5] Unlike the FOIA's definition of an "agency," the FRA's definition of a "Federal agency" includes "any establishment in the legislative or judicial branch of the Government," subject to certain enumerated exceptions.  44 U.S.C. § 2901(14).

*Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR
**Defendant Committee's Motion to Dismiss - 6**

1    a reasonable time, submit a written report of the matter to the President and the Congress." *Id.*

2    § 2115.  Further, the Archivist "shall notify the head of a Federal agency of any actual,

3    impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the

4    custody of the agency that shall come to his attention, and assist the head of the agency in

5    initiating action through the Attorney General for the recovery of records wrongfully removed

6    and for other redress provided by law." *Id.* § 2905(a).  If the agency head does not initiate

7    action, the Archivist "shall request the Attorney General to initiate such action, and shall notify

8    the Congress when such a request has been made." *Id.*

9    **II.    BACKGROUND FACTS AND PLAINTIFFS' ALLEGATIONS**

10       **A.    Background Proceedings**

11       This case arises out of the investigation of Richard Cebull, the former Chief District

12   Judge for the District of Montana, by a Special Committee of the Ninth Circuit Judicial Council.

13   The Special Committee's investigation arose out of an email that Judge Cebull transmitted on

14   February 20, 2012.  *See In re Judicial Misconduct*, 751 F.3d 611, 612 (JCD Committee 2014)

15   (the "*JCD Committee Decision*").[6]  That email was, as found by the Ninth Circuit Judicial

16   Council, "about President Obama's mother" and "inappropriate."  *Id.* at 619-20.  On March 1,

17   2012, after this email incident became publicly known, Judge Cebull requested that the Ninth

18   Circuit Judicial Council conduct an inquiry into potential misconduct.  *Id.* at 619.  On March 23,

19   2012, then-Chief Judge of the Ninth Circuit Alex Kozinski referred the matter to a Special

20   Committee of the Ninth Circuit Judicial Council for investigation.[7]  *Id.*

21

22

23

24       [6] As explained *infra*, attached to the JCD Committee Decision published in the Federal
     Reporter are the Ninth Circuit Judicial Council's Orders of March 15, May 13, and July 2, 2013.

25   For ease of reference, citations to the Federal Reporter are used in this memorandum for all
     decisions at issue in prior proceedings before the JCD Committee and the Ninth Circuit Judicial

26   Council.

27       [7] Included in the referral to the Special Committee was an additional complaint regarding
     the email incident from Third Circuit Chief Judge Theodore A. McKee.  *JCD Committee*

28   *Decision*, 751 F.3d at 620.

Following its "thorough investigation," the Special Committee issued a Report to the Ninth Circuit Judicial Council on December 17, 2012, describing its findings. *Id.* at 620. On March 15, 2013, the Ninth Circuit Judicial Council issued an Order adopting the Special Committee's findings and taking certain corrective actions against Judge Cebull. The Ninth Circuit Judicial Council's Order issued a public reprimand against Judge Cebull for conduct prejudicial to the effective administration of the business of the courts; ordered that no new cases be assigned to Judge Cebull for a 180-day period; directed Judge Cebull to complete training on judicial ethics, racial awareness, and elimination of bias; directed Judge Cebull to issue a public apology; and authorized litigants involved in cases before Judge Cebull to move to recuse him. *Id.* at 624-25.

On March 29, 2013, Judge Cebull retired effective May 3, 2013. *Id.* at 627. As a result of this development, the Ninth Circuit Judicial Council issued an Order vacating as moot its March 2013 Order before it was made publicly available. *Id.* at 625. The Ninth Circuit Judicial Council then, on July 2, 2013, issued an Order explaining that Judge Cebull's retirement concluded the misconduct proceedings and dismissing the complaints as moot. *Id.* at 627-28. In response to these latter two Orders of the Ninth Circuit Judicial Council, Chief Judge McKee filed petitions for review by the JCD Committee under 28 U.S.C. § 357(a).

On January 17, 2014, the JCD Committee issued a Decision granting Judge McKee's petitions. The JCD Committee adopted the Judicial Council's March 2013 Order and, "irrespective of [the Judicial Council's] vacatur" of that Order, published it pursuant to § 360(b) as a final order disposing of Judge Cebull's and Judge McKee's misconduct complaints. *Id.* at 617-18. The JCD Committee found that Judge Cebull's May 3, 2013 retirement did not affect the finality of the Ninth Circuit Judicial Council's March 2013 Order, though the JCD Committee did declare that the prospective sanctions imposed by the Ninth Circuit Judicial Council were inoperative in light of the retirement. *Id.* at 618-19. In addition to publishing the Ninth Circuit Judicial Council's March 2013 Order, the JCD Committee published its Orders of

May 13, 2013 and July 2, 2013, stating that "[t]he publication requirements of 28 U.S.C. § 360(b) . . . are thereby satisfied."  *Id.*

**B.    Plaintiffs' Allegations**

Plaintiffs filed their Complaint in this Court on March 5, 2015.  ECF No. 1.  According to the allegations in their Complaint, Plaintiffs John Adams and Shane Castle are two "member[s] of the press corps" in Montana who have taken an interest in the investigation of Judge Cebull. Compl. ¶¶ 4-5, 8-9, 18.  Plaintiffs allege that on or about January 11, 2015, Mr. Castle requested, through Defendant Cathy Catterson, copies of "all the incoming and outgoing emails from Judge Cebull's government account that supported the report's conclusion as well as the Committee's investigative report," and that this request was denied two days later.  Compl. ¶ 14.  Plaintiffs allege that their request for records was denied pursuant to 28 U.S.C. § 360 and 5 U.S.C. § 551(1)(B), the provision exempting the judiciary from application of the FOIA.

Claiming a "desire to write and publish stories" about the Special Committee's investigation, Plaintiffs allege that "[t]hey are prevented from writing such stories because they do not have the primary sources of information," which they characterize as the "Investigation File" and "Judge Cebull's discriminatory emails."  *Id.* ¶¶ 18, 23.  They seek access to these materials so that "the contents thereof can be reported to the public and so that any violations of due process can be exposed and rectified."  *Id.* ¶ 15.

Plaintiffs assert two counts for declaratory and injunctive relief.  First, they allege that their inability to access the requested materials violates their First Amendment rights to freedom of speech and of the press.  *Id.* ¶ 31.  Citing the Due Process and Equal Protection Clauses, Plaintiffs also state that "the potential harm to numerous people is incalculable" without access to "the requested emails."  *Id.* ¶ 27.  Plaintiffs ask the Court to declare that 28 U.S.C. § 360(a) and 5 U.S.C. § 551(1)(B), which they allege are "the legal bases on which the government relies for non-disclosure," violate the First Amendment and are therefore unconstitutional.  *Id.* ¶ 33.

Second, Plaintiffs assert a violation of 44 U.S.C. § 3101, a provision of the Federal Records Act.  Plaintiffs allege that "Defendants have failed to create, manage, or maintain

Federal Records in a manner such that said records can be efficiently procured by requests through the Freedom of Information Act and/or litigation-related discovery." *Id.* ¶ 38. They allege that the "nondisclosure" of the requested material violates unspecified "statutory provisions" of the FRA. *Id.* ¶ 39. Plaintiffs ask this Court to issue a sweeping injunction requiring Defendant JCD Committee to "immediately comply" with the Federal Records Act such that "Judge Cebull's emails in particular, and *the emails of all Federal Judges* are maintained so that they may be produced" in response to requests under the FOIA or in litigation discovery. *Id.* ¶ 41 (emphasis added).

## ARGUMENT

### I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION.

In their Complaint, Plaintiffs have attempted to sue the JCD Committee.[8] The JCD Committee is a standing committee of circuit and district judges established pursuant to 28 U.S.C. § 331 to "exercise the authority provided" under the Judicial Conduct and Disability Act, including, as the JCD Committee did here, reviewing and deciding petitions for review of judicial council orders. *See* 28 U.S.C. § 357(c). Plaintiffs cannot establish subject matter jurisdiction to sue the JCD Committee for multiple, independent reasons. First, as part of the federal government, the JCD Committee enjoys sovereign immunity, and Congress has not waived that immunity. Second, composed as it is of circuit and district judges, the JCD Committee is absolutely immune from suit for any of its judicial acts, and Plaintiffs' claims against it must be dismissed.[9] Moreover, even if the JCD Committee were amenable to suit, the injury asserted by Plaintiffs—inability to access certain investigative records—is not "fairly

---

[8] In paragraph 6 of the Complaint, Plaintiffs identify a nonexistent entity, the "Ninth Circuit Committee on Judicial Conduct and Disability of the Judicial Conference of the United States," which they allege is headquartered in San Francisco, California. Compl. ¶ 6.

[9] These sovereign immunity and judicial immunity arguments mandating dismissal apply with equal force to Defendant Catterson, sued as Circuit Executive for the Ninth Circuit. The JCD Committee anticipates that Defendant Catterson will join in these arguments in her concurrently filed Motion to Dismiss.

traceable" to any act of the JCD Committee, and Plaintiffs therefore lack standing to bring claims against it.  The JCD Committee received no request for access and therefore took no action to deny any such request.

In sum, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims, and the Complaint must therefore be dismissed pursuant to Rule 12(b)(1).

### A.      Sovereign immunity bars this action.

It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Munns v. Kerry*, 782 F.3d 402, 412 (9th Cir. 2015).  Because the doctrine of sovereign immunity is jurisdictional in nature, the plaintiff bears the burden of establishing that a waiver of immunity exists.  *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983); *Kinetic Systems, Inc. v. Fed. Fin. Bank*, 895 F. Supp. 2d 983, 995 (N.D. Cal. 2012).  Although the government may waive sovereign immunity, such a waiver cannot be implied but must be unequivocally expressed and "strictly construed . . . in favor of the sovereign."  *Lane v. Peña*, 518 U.S. 187, 192 (1996); *Munns*, 782 F.3d at 412-13.  The bar of sovereign immunity "applies alike to causes of action arising under acts of Congress and to those arising from some violation of rights conferred upon the citizen by the Constitution."  *Lynch v. United States*, 292 U.S. 571, 582 (1934) (citations omitted).

Because Plaintiffs' action is against a federal entity and a federal official, it may be maintained only: (1) to the extent that it falls within an express waiver of the United States's sovereign immunity; and (2) in the manner authorized by the statute that provides the waiver. *See Lane*, 518 U.S. at 192.  Plaintiffs, however, have not identified—and cannot identify—a sovereign immunity waiver that would permit their claims to proceed.  This lack of a valid waiver of sovereign immunity mandates dismissal of the action.  Fed. R. Civ. P. 12(h)(3).

In other cases involving committees and other bodies comprised of federal judges, courts have readily found those entities entitled to sovereign immunity.  *See, e.g.*, *Danos v. Jones*, 721 F. Supp. 2d 491, 495 (E.D. La. 2010) ("There is apparently no dispute that the Judicial Council is

entitled to sovereign immunity."), *aff'd*, 652 F.3d 577 (5th Cir. 2011); *Shemonsky v. Vanaskie*, 2005 WL 2031140, at *4 (M.D. Pa. Aug. 16, 2005) ("As Congress has not authorized suits against the Third Circuit Judicial Conference, Plaintiff's action against it must be dismissed."). The outcome here should be no different: all claims must be dismissed because Congress has not waived Defendants' sovereign immunity from suit.

### B.    The JCD Committee is absolutely immune from suit.

In addition to being barred by sovereign immunity, Plaintiffs' claims against the judges of the JCD Committee (to the extent Plaintiffs have set forth coherent claims against the JCD Committee at all, *see infra* Section I.D) are barred by absolute judicial immunity.[10]  "Judges are absolutely immune from civil liability for damages for their judicial acts."  *Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987) (citing *Bradley v. Fisher*, 80 U.S. (13 Wal.) 335, 347 (1872)).  In *Mullis*, the Ninth Circuit extended absolute judicial immunity to include "actions for declaratory, injunctive and other equitable relief."  *Id.* at 1394.  "'A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'"  *Id.* at 1388 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)); *see also Ayrs v. Greenwald*, 21 F.3d 1111, at *1 (9th Cir. Apr. 12, 1994) ("Judicial immunity is overcome only if the judge acts outside the judge's judicial capacity or in the complete absence of all jurisdiction.").

Nowhere in the Complaint do Plaintiffs allege facts to demonstrate a "clear absence of all jurisdiction" that would deprive the JCD Committee of the immunity it enjoys.  To the contrary, Plaintiffs appear to concede that the JCD Committee acted within the scope of its jurisdiction. *See* Compl. ¶ 10 ("For good cause, the Defendants found the complaints against [Judge Cebull] to be well placed.").

---

[10] The Court may also properly analyze the judicial immunity argument under Rule 12(b)(6).

1   Further, the actions of the judges comprising the JCD Committee were "judicial acts" for

2   which they are immune from liability.  As the Supreme Court has noted, "the touchstone for the

3   doctrine's applicability has been performance of the function of resolving disputes between

4   parties, or of authoritatively adjudicating private rights."  *Antoine v. Byers & Anderson, Inc.*, 508

5   U.S. 429, 435-36 (1993) (citation omitted).  Here, the JCD Committee "authoritatively

6   adjudicate[ed]" the petitions for review filed by Chief Judge McKee and issued a thorough

7   decision explaining its reasons for granting those petitions.  This function is akin to others found

8   to be "judicial" in nature.  *See Overton v. Torruella*, 183 F. Supp. 2d 295, 305-06 (D. Mass.

9   2001) (in case brought against members of the First Circuit Judicial Council for actions taken in

10  their capacity as council members, finding the actions "within the ambit of acts taken in a judge's

11  judicial capacity").  Other courts have concluded that disciplinary measures taken by judges are

12  acts that qualify for absolute immunity.  *See, e.g.*, *Bradley v. Fisher*, 80 U.S. 335 (1871)

13  (absolute immunity applies to disbarring of attorney without first affording the lawyer an

14  opportunity to be heard); *Partington v. Gedan*, 961 F.2d 852, 866-67 (9th Cir. 1992)

15  (interpreting and enforcing state bar disciplinary rules are "judicial" functions); *Sparks v.

16  Character & Fitness Comm.*, 859 F.2d 428, 434 (6th Cir. 1988) (denying an application for

17  admission to a state bar is "judicial" in nature); *LaNave v. Minnesota Sup. Ct.*, 915 F.2d 386, 387

18  (8th Cir. 1990) (same).  Absolute immunity compels dismissal of Plaintiffs' claims against the

19  JCD Committee.[11]

20

21  _____

22  [11] Alternatively, were the Court to find that the JCD Committee's members were not
    acting in a judicial capacity when performing the acts at issue, the JCD Committee would

23  nonetheless be entitled to quasi-judicial immunity.  *See Mullis*, 828 F.2d at 1390; *Four
    Directions v. Committee on Judicial Conduct and Disability*, No. 4:14-cv-03022-YGR, ECF No.

24  53, 2015 WL 1254765, at *5 n.3 (N.D. Cal. Mar. 18, 2015) (noting that "quasi-judicial immunity
    would extend to Respondents here for actions taken in connection with the investigation of the

25  misconduct complaints against Judge Cebull").  As a second alternative, even were the Court to
    disagree that the JCD Committee's conduct at issue—to the extent any such conduct has been

26  put at issue by Plaintiffs' allegations—was a "judicial act," dismissal would still be warranted
    under the doctrine of qualified judicial immunity.  *See Samuel v. Michaud*, 980 F. Supp. 1381,

27  1401 (D. Idaho 1996) (recognizing that judges "are eligible for qualified immunity for any
    administrative acts that are not protected by the doctrine of absolute judicial immunity"); *see*

28

*Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR
**Defendant Committee's Motion to Dismiss - 13**

### C.    Plaintiffs lack standing to assert the hypothetical due process interests of third parties.

To establish standing for injunctive relief, a plaintiff must show, among other things, "that he is under threat of suffering 'injury in fact' that is concrete and particularized" and also that the threatened injury is "actual and imminent, not *conjectural or hypothetical*." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added, citation omitted).  This means that a plaintiff "must allege a distinct and palpable injury *to himself*, even if it is an injury shared by a large class of other possible litigants."  *Pony v. County of Los Angeles*, 433 F.3d 1138, 1145 (9th Cir. 2006) (emphasis added) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Plaintiffs here fall demonstrably short of these requirements in their attempt to generate standing by asserting the third-party interests of "those people who were *potentially* negatively impacted by Judge Cebull's racist rulings."  Compl. ¶ 24 (emphasis added); *see also id.* ¶ 27 ("Without access to the requested emails, the *potential harm to numerous people* is incalculable." (emphasis added)).  First, these allegations, alluding as they do to "potential" injury that may or may not have occurred to unidentified third parties in unidentified cases before (former) Judge Cebull, are, by their own terms, speculative and hypothetical and therefore incapable of establishing standing.[12]

Second, this assertion runs directly counter to the Supreme Court's directive that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499; *Powers v. Ohio*, 499 U.S. 400, 410 (1991) (same).  "Generally, a plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party."  *Pony*, 433 F.3d at 1146.  Indeed, "[c]ourts typically decline to hear cases asserting rights properly belonging to third parties rather than the plaintiff."  *Mills v. United States*, 742 F.3d

---

*also Forrester v. White*, 484 U.S. 219, 229 (1988) (holding judge's dismissal of subordinate employee potentially eligible for qualified immunity).

[12] As this Court is aware from the *Four Directions* litigation, when litigants who had appeared before Judge Cebull sought to raise this type of due process claim, they were found to lack standing to sue.  *See Four Directions*, No. 4:14-cv-03022-YGR, 2015 WL 3409469, at *2-3, ECF No. 83, Order Granting Resps.' Mot. for Reconsideration  (N.D. Cal. May 27, 2015).

400, 407 (9th Cir. 2014) (citation omitted).[13]  This case should be no different, and Plaintiffs'

attempt to proceed on the basis of supposed injuries to third parties not before the Court should

be firmly rejected for lack of standing.

> **D.** **Plaintiffs lack standing to sue the JCD Committee because they have not alleged an injury that is "fairly traceable" to the JCD Committee.**

Assuming *arguendo* that Plaintiffs (on their *own* behalf) could overcome the

jurisdictional bar of sovereign immunity and also overcome the judicial immunity to which

Defendants are entitled, yet another jurisdictional limitation precludes their claims against the

JCD Committee: they lack standing to sue.  To have standing to seek injunctive relief, the

plaintiff's injury "must be fairly traceable to the challenged action of the defendant." *Earth*

*Island Inst.*, 555 U.S. at 493.

Plaintiffs have failed to establish that their asserted injuries are "fairly traceable" to any

act of the JCD Committee. *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220,

1227 (9th Cir. 2008) ("To show causation, the plaintiff must demonstrate a causal connection

between the injury and the conduct complained of—the injury has to be fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third

party not before the court." (citation omitted)).  Nothing the JCD Committee did or is properly

alleged to have done caused the injury asserted by Plaintiffs—denial of access to the

investigative materials.  As a result, the Court's jurisdiction has not been properly invoked and,

---

[13] Although "limited exceptions" to this standing rule have been held to exist under certain circumstances, none would apply under the facts alleged here. *See Mills*, 742 F.3d at 407 ("It may be 'necessary to grant a third party standing to assert the rights of another' when (1) 'the party asserting the right has a 'close' relationship with the person who possesses the right' and (2) 'there is a 'hindrance' to the possessor's ability to protect his own interests.'" (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)).  The third parties whose injuries Plaintiffs purport to assert are not even identified, let alone alleged to have a "close relationship" to Plaintiffs.  Nor have Plaintiffs alleged any "hindrance" to these unidentified third parties' ability to protect their own interests.  Indeed, third parties have previously sought relief in this very Court based on Judge Cebull's alleged bias. *See Four Directions*, No. 14-cv-03022, ECF No. 34, Compl. ¶¶ 8-12 (prior litigants before Judge Cebull alleging possible bias in judicial decisions).

particularly in light of the constitutional component of Plaintiffs' claims, they lack standing to proceed against the JCD Committee.  *Clapper v. Amnesty Int'l USA*¸ 133 S. Ct. 1138, 1147 (2013) (describing standing inquiry as "especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional" (citation omitted)).

Plaintiffs refer repeatedly to the "investigation" or "investigative report" of "the Committee."  Compl. ¶¶ 13, 14, 23, 24.  Yet, as the publicly available Decision and Orders make clear, the JCD Committee issued no investigative report.  And although Plaintiffs appear to attribute the denial of their request for records to both Defendants, *see* Compl. ¶ 14 ("Defendants denied these requests . . . ."), they fail to allege that any request was ever made of the JCD Committee.  Plainly, the JCD Committee cannot have denied a request that had not been submitted to it.

The JCD Committee's role was limited to reviewing the petitions filed by Third Circuit Chief Judge McKee.  The JCD Committee reviewed the Orders of the Ninth Circuit Judicial Council pursuant to the Judicial Conduct and Disability Act.  *JCD Committee Decision*, 751 F.3d at 617-19.  Specifically, it considered whether the non-publication of the March 2013 Order was consistent with the Act's publication requirement and the finality provisions of the JCD Rules.  Following its review, the JCD Committee issued a memorandum of decision determining that, pursuant to 28 U.S.C. § 360(b), the March 15, 2013 Order of the Ninth Circuit Judicial Council must be published.  *Id.* at 617; *see* 28 U.S.C. § 357(a) ("A complainant or judge aggrieved by an action of the judicial council under section 354 may petition the Judicial Conference of the United States for review thereof.").

Plaintiffs allege no injury attributable to the January 17, 2014 Decision of the JCD Committee and, indeed, other than identifying that Decision in paragraph 10, make no mention of it whatsoever in the Complaint.  Because Plaintiffs have advanced no material allegations against the JCD Committee, much less any allegations that create a fairly traceable link between the JCD Committee's conduct and Plaintiffs' alleged lack of access, Plaintiffs lack standing to

proceed against the JCD Committee.  *See Easter v. Am. West Fin.*, 381 F.3d 948, 962-63 (9th Cir. 2004) (upholding dismissal on standing grounds when plaintiffs "failed to demonstrate that they have injuries in fact traceable to" certain named defendants); *Polich v. Burlington Northern, Inc.*, 942 F.3d 1467, 1472 (9th Cir. 1991) (affirming dismissal of defendant when plaintiffs "failed to explain" how the named defendant had caused their alleged injuries); *A-G-E Corp. v. United States*, 968 F.2d 650, 653-54 (8th Cir. 1992) (finding no standing to sue named defendant OMB when "plaintiffs suffered no direct injury" from OMB's directives to other agencies).  This lack of standing precludes the Court's subject matter jurisdiction and Plaintiffs' claims against the JCD Committee must be dismissed.

In sum, whether because there is no valid waiver of sovereign immunity, because the Defendants are immune from suit, or because Plaintiffs lack standing, this Court lacks subject matter jurisdiction over Plaintiffs' claims and their Complaint must accordingly be dismissed pursuant to Rule 12(b)(1).

## II.   EVEN ASSUMING THIS COURT HAD SUBJECT MATTER JURISDICTION, PLAINTIFFS' CLAIMS ARE MERITLESS AND MUST BE DISMISSED.

For the reasons set forth above, the Court lacks subject matter jurisdiction over Plaintiffs' Complaint.  However, even were the Court to disagree and find some jurisdictional basis to proceed to the merits of Plaintiffs' claims, those claims should nonetheless be dismissed.  As an initial matter, section 360(a) establishes a near-absolute prohibition on disclosure of investigative records of judicial misconduct, and the materials Plaintiffs seek fall squarely within the scope of this prohibition.[14]  Plaintiffs' constitutional challenge to this disclosure prohibition is meritless because established precedent demonstrates that they have no First Amendment right to access government information.  This precedent is fatal to Plaintiffs' First Count for relief.

---

[14] In her concurrently filed Motion to Dismiss, Defendant Catterson thoroughly explains the prohibition on disclosure established by § 360(a) and the JCD Rules, and rightly argues that the materials at issue are properly within the scope of that disclosure prohibition.  The JCD Committee joins in and adopts these arguments.  *See* Def. Catterson's Mot. to Dismiss, ECF No. 26, at Section III (June 19, 2015).

*Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR
**Defendant Committee's Motion to Dismiss - 17**

1  Longstanding precedents are also clear that there is no private right of action under the Federal

2  Records Act, and Plaintiffs' Second Count for relief thus fails as well.

3      **A.      Plaintiffs have no valid claim under the First Amendment.**

4          **1.      There is no First Amendment right to the records Plaintiffs seek.**

5      The Supreme Court and the Ninth Circuit have long and repeatedly made clear that there

6  is no constitutional right to disclosure of government records.  *See, e.g.*, *Houchins v. KQED, Inc.*,

7  438 U.S. 1, 15 (1978) (plurality opinion); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d

8  1431, 1441 (9th Cir. 1996) ("[W]here a person seeks only to gather information, no First

9  Amendment rights are implicated."); *Entler v. McKenna*, 487 F. App'x 417, 418 (9th Cir. 2012)

10  (unpublished)  ("[T]here is no constitutional right to public disclosure of government

11  documents.").  Plaintiffs' First Amendment claim wrongly hinges on the exact opposite

12  assumption, that the First Amendment guarantees them a fulsome right to access any government

13  document, including documents that Congress has explicitly held are not to be disclosed.  Thus,

14  the fundamental premise of Plaintiffs' lawsuit is baseless, and their claims must be dismissed

15  with prejudice.

16      Supreme Court precedents on this issue could not be more clear.  In *Zemel v. Rusk*, the

17  Court flatly stated that "[t]he right to speak and publish does not carry with it the unrestrained

18  right to gather information."  381 U.S. 1, 16-17 (1965); *see also Branzburg v. Hayes*, 408 U.S.

19  665, 684 (1972) ("It has generally been held that the First Amendment does not guarantee the

20  press a constitutional right of special access to information not available to the public

21  generally."); *Pell v. Procunier*, 417 U.S. 817, 834 (1974) ("The Constitution does not, however,

22  require government to accord the press special access to information not shared by members of

23  the public generally.").  And in *Houchins v. KQED, Inc.*, a plurality of the Justices reinforced the

24  Court's prior holdings in terms that foreclose the relief Plaintiffs seek here: "Neither the First

25  Amendment nor the Fourteenth Amendment mandates a right of access to government

information or sources of information within the government's control." 438 U.S. at 15.[15]  The *Houchins* Court denied any "special right of access to government-controlled sources of information" and rejected the argument that the First Amendment "compels access as a *constitutional* matter." *Id.* at 7-8 (emphasis in original).  The Ninth Circuit is in accord.  *See, e.g.*, *Hrdlicka v. Reniff*, 656 F.3d 942, 943 n.1 (9th Cir. 2011); *Freedom to Travel Campaign*, 82 F.3d at 1441; *Chavez v. City of Oakland*, 414 F. App'x 939, 940 (9th Cir. 2011) (unpublished).

The documents Plaintiffs seek are internal records relating to the internal confidential judicial investigation of Judge Cebull's conduct.  Without question, these documents are "government information" or "sources of information within the government's control," and binding precedents thus bar the First Amendment claim Plaintiffs seek to bring.  Plaintiffs' attempt to use the First Amendment as a discovery mechanism to lay the groundwork for speculative future claimants should be firmly rejected.  Indeed, the Ninth Circuit has made clear that the Constitution is not a substitute for the FOIA.  *See Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 976-77 (9th Cir. 1992) ("At any rate, neither the Constitution itself nor the census statutes has ever been held to be a FOIA." (citing *Houchins*, 438 U.S. at 15)).

To the extent Plaintiffs may attempt to argue that these precedents do not apply, they would be deeply misguided.  Though the Supreme Court has stated that "news gathering is not without its First Amendment protections," *Branzburg*, 408 U.S. at 707, it has subsequently clarified this statement as mere dicta that "in no sense implied a constitutional right of access to news sources," *Houchins*, 438 U.S. at 10-11; *see also id.* at 11 (negating "any notion that the First Amendment confers a right of access to news sources").  Nor can Plaintiffs withstand dismissal by contending that their alleged status of members of the press confers some sort of special right of access beyond that of the general public.  Indeed, the Ninth Circuit has

---

[15] Justice Stewart, who supplied the fourth vote concurring in the judgment in *Houchins*, agreed with the plurality opinion on the principle that controls here: "The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access superior to that of the public generally." *Houchins*, 438 U.S. at 16 (Stewart, J., concurring in the judgment).

recognized explicit limitations on the protection afforded newsgathering; chief among those limitations is the recognition that "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Cal. First Amendment Coalition v. Calderon*, 150 F.3d 976, 981 (9th Cir. 1998) (quoting *Branzburg*, 408 U.S. at 684).[16]

Plaintiffs thus have no First Amendment right to access the investigative materials because those materials are not made available to the general public. Not only are the investigative materials that Plaintiffs seek not available to the general public, but Congress has also explicitly forbidden their disclosure in 28 U.S.C. § 360(a).[17]  Further underscoring the lack

_____

[16] Plaintiffs may also try to argue in response that the "experience and logic" test adopted by the Supreme Court in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-80 (1980), should be applied here. *See also Courthouse News Service v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014) ("The Supreme Court has repeatedly held that access to public proceedings and records is an indispensable predicate to free expression about the workings of government."). That argument would be incorrect. Courts have applied that test to determine whether the public must be granted access to certain aspects of otherwise public court proceedings—principally in criminal trials—but never to confidential investigations of potential judicial misconduct. *Id.* at 786 (describing a "right of access to *public* records and proceedings" (emphasis added)); *see also United States v. Casas*, 376 F.3d 20, 22 (1st Cir. 2004) (internal court memoranda need not be produced because they are confidential and not part of the court record).

Moreover, even if the "experience and logic" test were applied here, public access to the Special Committee's investigative records should be denied. First, investigations into potential judicial misconduct, and the documents reviewed in those investigations, have not "historically been open to the press and general public." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986). And second, public access would not play "a significant positive role in the functioning of the particular process in question." *Id.* Indeed, Congress made the determination that allowing unfettered public access to judicial misconduct investigations would lead to any number of adverse consequences, including unfounded injury to a judge's reputation and diminished public confidence in the judiciary. S. Rep. No. 96-362 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4315, 4330. Congress's balancing of the competing considerations led it to adopt a publication requirement for final remedial orders, but to otherwise prohibit disclosure of investigative records. *See* 28 U.S.C. § 360(a)-(b).

[17] The Ninth Circuit, citing § 360(a), has confirmed that the "Judicial Council's consideration of judicial complaints is confidential." *In re Focus Media, Inc.*, 378 F.3d 916, 921 n.2 (9th Cir. 2004) (declining to discuss disposition of judicial complaint); *see also, e.g., Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011) (holding that other than the final order from the Fifth Circuit Judicial Council disposing of misconduct complaint, "[t]he remainder of the Council's proceedings were confidential" under § 360(a)); *Caldwell v. Obama*, 6 F. Supp. 3d 31, 39 n.3

of public access is Congress's exemption of the judiciary from the disclosure obligations set forth in the FOIA.  *See* 5 U.S.C. § 551(1)(B) (explicitly excluding "the courts of the United States" from the FOIA's definition of "agency"); *Warth v. Dep't of Justice*, 595 F.2d 521, 523 (9th Cir. 1979) (courts are exempt from the FOIA's disclosure requirements).  And, as the Ninth Circuit (among other courts) has made clear, section 551(1)(B) of the FOIA "excludes not only the courts themselves but the entire judicial branch."  *Mayo v. U.S. Gov't Printing Office*, 9 F.3d 1450, 1451 (9th Cir. 1993).[18]  Congress's judgment in this area is entitled to significant deference given the pronouncement in *Houchins* that the degree of access to government information is "clearly a legislative task which the Constitution has left to the political processes."  438 U.S. at 12 (plurality opinion).  Congress has performed that task and, for wholly rational reasons, has declined to make the investigative materials available to the general public.  Plaintiffs' inability to obtain those materials does not amount to a First Amendment violation.  *Cal. First Amendment Coalition*, 150 F.3d at 981.

As numerous precedents recognize, Plaintiffs lack a First Amendment right of the sort they attempt to press here.  The public has no right to access these records and Plaintiffs have no special right, guaranteed by the First Amendment or otherwise, to overcome that prohibition.

### 2.  Section 360(a) and the FOIA exemption for the judiciary are constitutional.

In their First Count for relief, Plaintiffs have asked this Court to declare unconstitutional 28 U.S.C. § 360(a) and 5 U.S.C. § 551(1)(B), statutory provisions allegedly cited by Defendant

---

(D.D.C. 2013) (citing § 360(a) and noting that "proceedings related to judicial misconduct complaints made to the Judicial Council of the District of Columbia Circuit are confidential"); *Clemmer v. Office of Chief Judge*, 544 F. Supp. 2d 722, 728 (N.D. Ill. 2008) (citing § 360(a) and recognizing the "strong interest" in keeping judicial investigation records confidential "in order to preserve the integrity of future investigations").

[18] *See also, e.g.*, *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994); *Andrade v. U.S. Sentencing Comm'n*, 989 F.2d 308, 309-10 (9th Cir. 1993); *Banks v. Dep't of Justice*, 538 F. Supp. 2d 228, 231-32 (D.D.C. 2008).  The Judicial Conference of the United States, of which the JCD Committee is a part, falls squarely within the judicial branch.

---

Catterson in her alleged response to Plaintiff Castle's request.  Compl. ¶¶ 14, 33.  Plaintiffs contend that these statutes violate "the First Amendment protections for Freedom of Speech and the Press."  *Id.* ¶ 33.  Plaintiffs notably do not contest that § 360(a) applies with full force to the investigative materials they seek.  Nor do Plaintiffs assert that either Defendant acted unreasonably or improperly to the extent that Plaintiffs' request was denied pursuant to § 360(a).  Section 360(a) unquestionably applies to the requested materials, and its disclosure prohibition reflects Congress's determination of the need for confidentiality in investigations of possible judicial misconduct.  The confidentiality ensured by the statute protects the reputation of judges named in baseless complaints, encourages witnesses to provide relevant information, and preserves public confidence in the judiciary.

As for Plaintiffs' assertion that these statutes violate the First Amendment, section 360(a) and 5 U.S.C. § 551(1)(B) do nothing to restrict their freedom of speech.  Furthermore, as explained above, the purported right to access on which Plaintiffs hinge their constitutional argument, to the extent it exists at all, is not implicated here.  Section 360(a) and 5 U.S.C. § 551(1)(B) are not unconstitutional.

Neither § 360(a) nor the FOIA restricts speech.  Instead, section 360(a) prohibits, by any person in any proceeding, disclosure of documents related to investigations of judicial misconduct.  Section 551(1)(B) in turn exempts the federal judiciary from requests for records pursuant to the FOIA.  *See Mayo*, 9 F.3d at 1451; *Warth*, 595 F.2d at 523; *Brown v. Gomez*, 19 F. App'x 513, 514 (9th Cir. 2001) (unpublished).  Neither statute has any effect on Plaintiffs' ability to speak, write, or publish within the ambit of free speech protection.

In *Freedom to Travel Campaign v. Newcomb*, the Ninth Circuit rejected the same sort of "free speech" argument that Plaintiffs press here.  82 F.3d at 1441.  The plaintiff argued that government restrictions on travel to Cuba "interfere[d] with its right to gather firsthand information about Cuba, which its members would use to participate in the public debate about the wisdom of the Cuban-American embargo."  *Id.*  The court explained that "the right to speak does not carry with it an 'unrestrained right to gather information.'"  *Id.* (quoting *Zemel*, 381

U.S. at 17).  Accordingly, "where a person seeks only to gather information, no First Amendment rights are implicated."  *Id.*  The court, citing the Supreme Court's prior rejection of an identical argument in *Zemel v. Rusk*, concluded that "the First Amendment [was] not implicated," and that the plaintiff could not mount a First Amendment challenge to the travel restrictions.  *Id.*

The same outcome is warranted for Plaintiffs' claim that § 360(a) and the judiciary's FOIA exemption are unconstitutional.  Their nominal free speech claim is premised not on any actual speech restriction, but instead on a nonexistent "right" to access non-public government documents.  And Plaintiffs' strained effort to derive a free speech claim from their inability to access information runs headlong into contrary Supreme Court precedent.  *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40 (1999) (concluding, in a case involving "nothing more than a governmental denial of access to information in its possession," that the State "could decide not to give out arrestee information at all without violating the First Amendment"); *Zemel v. Rusk* , 381 U.S. at 16-17 ("There are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow."); *Bonnichsen v. U.S. Dep't of Army*, 969 F. Supp. 628, 648 (D. Or. 1997) (noting that "almost any forbidden conduct potentially can be cast in the form of a First Amendment right to gather knowledge, *e.g.*, the right to smoke marijuana to gather knowledge about its effects").[19]

Other than the flawed First Amendment position they advance, Plaintiffs offer no other basis for this Court to hold 28 U.S.C. 360(a) and 5 U.S.C. 551(1)(B) unconstitutional.

**B.**      **Plaintiffs lack a private right of action to enforce the Federal Records Act.**

Count Two of the Complaint is Plaintiffs' attempt to compel compliance with the Federal Records Act.  Compl. ¶¶ 34-41.  The Supreme Court, however, has made clear that there is no

---

[19] The following example from the Court's opinion in *Zemel* amply illustrates the defect in Plaintiffs' argument: "For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment right."  381 U.S. at 17.

private right of action to enforce the FRA.  *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 148-50 (1980); *id.* at 148 (holding that "[n]o provision of [the Federal Records Act] expressly confers a right of action on private parties" and further concluding that "such a private right of action can[not] be implied").  Instead, the purpose of the FRA was "solely to benefit the agencies themselves and the Federal Government as a whole."  *Id.* at 149.  Thus, "*judicial review is precluded* to the extent that allegations are made that agency officials are not acting in compliance with their duties under record-keeping guidelines."  *Public Citizen v. Carlin*, 2 F. Supp. 2d 1, 9 (D.D.C. 1997) (emphasis added), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999); *see Armstrong v. Bush*, 924 F.2d 282, 297 (D.C. Cir. 1991) (holding "that the FRA precludes direct private actions to require that agency staff comply with the agency's recordkeeping guidelines").  Plaintiffs' attempt in Count Two to state a cause of action under the FRA is barred by these precedents.[20]

Plaintiffs have failed to state a valid claim under the Federal Records Act, and Count Two of the Complaint should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, this Court lacks subject matter jurisdiction, and Plaintiffs' Complaint must accordingly be dismissed pursuant to Rule 12(b)(1).  In the alternative, Plaintiffs' claims for relief under the First Amendment and the Federal Records Act lack merit, and the Complaint must be dismissed pursuant to Rule 12(b)(6).

Dated: June 19, 2015.                                   Respectfully submitted,

                                                        U.S. DEPARTMENT OF JUSTICE

                                                        BENJAMIN C. MIZER
                                                        Principal Deputy Assistant Attorney General

---

[20] The court in *Armstrong* did recognize the existence of a viable cause of action under the Administrative Procedure Act based on an alleged failure of the Archivist or an agency head to take enforcement action.  924 F.2d at 297.  Plaintiffs here, however, assert no such claim, nor do they allege facts that would support one.  Instead, they seek to proceed with a "direct private action" of the sort that *Armstrong* held the FRA disallows.  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ELIZABETH J. SHAPIRO
Deputy Branch Director

_____/s/ Andrew Zee_____
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6646
Facsimile: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Attorneys for Committee on Judicial Conduct and Disability*

1

2                              **CERTIFICATE OF SERVICE**

3          I hereby certify that on the 19th day of June, 2015, I electronically transmitted the

4   foregoing document to the Clerk of Court using the ECF System for filing.

5

6

7                                                    _/s/ Andrew Zee_____
8                                                   M. ANDREW ZEE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR
**Defendant Committee's Motion to Dismiss**