BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6646
Facsimile: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Attorneys for Committee on Judicial Conduct and Disability*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

JOHN ADAMS, SHANE CASTLE on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES; and CATHY A. CATTERSON in her official capacity as Circuit and Court of Appeals Executive to the U.S. Courts for the Ninth Circuit,

Defendants.

No. 4:15-cv-01046-YGR

**DEFENDANT COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Hearing Date: July 28, 2015 [vacated]
Time: 2:00 p.m.
Courtroom 1, 4th Floor

Hon. Yvonne Gonzalez Rogers

# TABLE OF CONTENTS

INTRODUTION……………………………………………………………………………..1

ARGUMENT……………………………………………………………………………...1

I. Sovereign Immunity and Judicial Immunity Bar This Action……………………….........1

A. Congress did not waive the JCD Committee's sovereign immunity in Section 702 of the APA……………………………………………………………………………..2

B. The JCD Committee enjoys judicial immunity from suit…………………….……………3

II. Plaintiffs' Arguments in Their Opposition are Insufficent to Rescue Their Claims from Dissmissal on the Merits……………………………………………………………..6

A. There is no First Amendment right to the requested records, and Plaintiffs cite no authority establishing such a right…………………………………………………...7

B. The FOIA's exemption of the federal judiciary from its disclosure requirements is not unconstitutional………………………………………………………………….. 9

C. Plaintiffs' claim to a common law and constitutional right to access "official public records" has no bearing on whether they may access non-public records from an investigative file……………………………………………………………….13

CONCLUSION….……………………………………………………………………….14

**TABLE OF AUTHORITIES**

*Branzburg v. Hayes*,
408 U.S. 665 (1972) .......... 8

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) .......... 13

*Ctr. for Nat'l Sec. Studies v. United States*,
331 F.3d 918 (D.C. Cir. 2003) .......... 11, 13

*Danos v. Jones*,
721 F. Supp. 2d 491 (E.D. La. 2010) .......... 3

*Dotson v. Griesa*,
398 F.3d 156 (2d Cir. 2005) .......... 3

*Estes v. Texas*,
381 U.S. 532 (1965) .......... 13

*FDIC v. Ernst & Ernst*,
677 F.2d 230 (2d Cir. 1982) .......... 11

*Four Directions v. Comm. on Judicial Conduct & Disability*,
No. 4:14-cv-03022-YGR, 2015 WL 1254765 (N.D. Cal. Mar. 18, 2015) .......... 5

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*,
742 F.3d 414 (9th Cir. 2013) .......... 10

*Havemann v. Colvin*,
537 F. App'x 142 (4th Cir. 2013) .......... 10

*Holloman v. Watt*,
708 F.2d 1399 (9th Cir. 1983) .......... 3

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978) .......... 7, 8, 9, 11

*In re Castillo*,
297 F.3d 940 (9th Cir. 2002) .......... 5

*In re Complaint of Judicial Misconduct*,
751 F.3d 611 (JCD Committee 2014) .......... 5

*In re Fidelity Mortgage Investors*,
690 F.2d 35 (2d Cir. 1982) .......... 2

*Kinetic v. Fed. Fin. Bank*,
895 F. Supp. 2d 983 (N.D. Cal. 2012) .......... 3

*Lane v. Peña*,
518 U.S. 187 (1996) .......... 2

*Lurie v. Dep't of the Army*,
970 F. Supp. 19 (D.D.C. 1997) .......... 10

*McBurney v. Young*,
133 S. Ct. 1709 (2013) .......... 9, 11

*McGehee v. Casey*,
718 F.2d 1137 (D.C. Cir. 1983) .......... 11

*McKissock & Hoffman, P.C. v. Waldron*,
2011 WL 3438333 (E.D. Pa. Aug. 5, 2011) .......... 3

*Novell, Inc. v. United States*,
109 F. Supp. 2d 22 (D.D.C. 2000) .......... 3

*Overton v. Torruella*,
183 F. Supp. 2d 295 (D. Mass. 2001) .......... 4

*Pell v. Procunier*,
417 U.S. 817 (1974) .......... 8

*Red Lion Broad. Co. v. FCC*,
395 U.S. 367 (1969) .......... 9

*Republican Party of Minn. v. White*,
536 U.S. 765 (2002) .......... 9

*Schneider v. California*,
151 F.3d 1194 (9th Cir. 1998) .......... 4

*Shemonsky v. Vanaskie*,
2005 WL 2031140 (M.D. Pa. Aug. 16, 2005) .......... 3

*Sheppard v. Maxwell*,
384 U.S. 333 (1966) .......... 13

*Smith v. Arkansas State Highway Employees*,
441 U.S. 463 (1979) .......... 12

*Sorrell v. IMS Health Inc.*,
131 S. Ct. 2653 (2011) .......... 11

*Tashima v. Admin. Office of the U.S. Courts*,
719 F. Supp. 881 (C.D. Cal. 1989) .......... 2

*Taylor v. San Bernardino Cnty. Sheriff's Dep't*,
2015 WL 3477149 (C.D. Cal. June 2, 2015) .......... 12

*Trackwell v. United States*,
472 F.3d 1242 (10th Cir. 2007) .......... 3

*Trentadue v. Integrity Comm.*,
501 F.3d 1215 (10th Cir. 2007) .......... 12

*Walsh v. Nev. Dep't of Human Resources*,
471 F.3d 1033 (9th Cir. 2006) .......... 6

*Wanxia Liao v. United States*,
No. C11-02494-JSW, 2012 WL 3945772 (N.D. Cal. Apr. 16, 2012) .......... 2

*We the People Found. v. United States*,
485 F.3d 140 (D.C. Cir. 2007) .......... 12

*Zemel v. Rusk*,
381 U.S. 1 (1965) .......... 8

**Statutes**

5 U.S.C. § 551(1)(B) .......... 6, 9, 10, 12

5 U.S.C. § 701(b)(1)(B) .......... 2

5 U.S.C. § 702 .......... 1, 2

28 U.S.C. § 360(a) .......... 5, 6, 10

28 U.S.C. § 753(b) .......... 13

**Rules**

Fed. R. of Civ. Proc. 12(B)(1) .......... 14

Fed. R. of Civ. Proc. 12(B)(6) .......... 14

**Legislative History**

Senate Report No. 79-752 (1945) .......... 11

**INTRODUCTION**

Defendants, the Committee on Judicial Conduct and Disability ("JCD Committee") and Cathy A. Catterson, have each moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. *See* ECF No. 25 ("JCD Comm. Mot."); ECF No. 26. In response to Defendants' Motions, Plaintiffs have filed a consolidated opposition memorandum, ECF No. 27 ("Opp'n"), that fails to defeat the dispositive arguments that Defendants raised in their motion papers. As Defendants demonstrated, there are multiple independent reasons why jurisdiction is lacking over Plaintiffs' Complaint or, in the alternative, why Plaintiffs are fundamentally mistaken about their putative First Amendment right to the documents at issue. Plaintiffs proffer no reason why the Court should not dismiss Plaintiffs' Complaint in its entirety.

**ARGUMENT**

**I. SOVEREIGN IMMUNITY AND JUDICIAL IMMUNITY BAR THIS ACTION.**

In their opposition, Plaintiffs contend that Congress waived sovereign immunity through a provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Opp'n at 2:24-3:12. They are mistaken. Section 702 waives the government's immunity from suit only in actions brought against federal "agencies," which are expressly defined by the APA to exclude the federal judiciary. Lacking any valid waiver of sovereign immunity, Plaintiffs' claims cannot proceed and the case must be dismissed for this reason alone.

Even were the Court to disagree, the action must be dismissed because judicial immunity bars Plaintiffs' claims. Plaintiffs' assertion in their opposition that the JCD Committee committed no judicial act is based on a flawed understanding of the role the JCD Committee played in the underlying proceedings. For instance, the contentions in the opposition brief wrongly attribute the denial of Plaintiffs' records request to the JCD Committee. The only JCD Committee conduct at issue was the adjudication of a petition for review, which is a quintessential "judicial act." Moreover, even were the JCD Committee to have denied the request (which it did not do), the JCD Committee would nonetheless have been acting in

***Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 1**

connection with its oversight role in judicial misconduct investigations and therefore would be protected by absolute quasi-judicial immunity. Whether due to sovereign immunity or judicial immunity, Plaintiffs' action cannot proceed.

### A. Congress did not waive the JCD Committee's sovereign immunity in Section 702 of the APA.

Plaintiffs do not contest that, for their lawsuit to proceed, they must identify a valid waiver of the government's sovereign immunity. *See Lane v. Peña*, 518 U.S. 187, 192 (1996). However, the sovereign immunity waiver proffered by Plaintiffs, 5 U.S.C. § 702, does not apply here and therefore cannot rescue their Complaint from dismissal on sovereign immunity grounds.

Section 702 is a provision of the APA that provides, in pertinent part: "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S.C. § 702.[1] Although this provision waives sovereign immunity in cases seeking equitable relief against federal agencies and officers, it is not a comprehensive waiver in every case against *any* federal entity or official. A key limitation embedded in § 702 is that it applies only to claims against "an *agency* or an officer or employee thereof." *Id.* (emphasis added). And the APA specifically excludes "the courts of the United States" from its definition of an "agency," including as that term is used in § 702. *See* 5 U.S.C. § 701(b)(1)(B); *see also, e.g.*, *Tashima v. Admin. Office of the U.S. Courts*, 719 F. Supp. 881, 886 (C.D. Cal. 1989), *aff'd on other grounds* 967 F.2d 1264 ("Congress intended the entire judicial branch of the Government to be excluded from the provisions of the Administrative Procedure Act." (quoting *In re Fidelity Mortgage Investors*, 690 F.2d 35 (2d Cir. 1982))); *Wanxia Liao v. United States*, No. C 11-02494 JSW, 2012 WL

---

[1] Plaintiffs assert that the quoted provision is part of the Freedom of Information Act, which is not accurate. Opp'n at 3:2-5. Section 702 is part of the APA, which was amended in 1966 to incorporate the FOIA.

***Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 2**

3945772, at *10 n.21 (N.D. Cal. Apr. 16, 2012). Thus, the provision on which Plaintiffs rely does not waive the JCD Committee's immunity from this action.

Multiple courts have held that when a plaintiff purports to sue a part of the federal judiciary, the APA precludes the action. *See, e.g.*, *Trackwell v. U.S. Govm't*, 472 F.3d 1242, 1244 (10th Cir. 2007) (affirming district court ruling that § 702 does not waive sovereign immunity of the Supreme Court and the Clerk of the Supreme Court); *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 25-27 (D.D.C. 2000); *McKissock & Hoffman, P.C. v. Waldron*, 2011 WL 3438333, at *2 (E.D. Pa. Aug. 5, 2011) (endorsing a "broad interpretation of 'the courts' that includes the entire judicial branch"). And Plaintiffs have no response to the cases cited in the JCD Committee's opening brief finding judicial committees entitled to sovereign immunity. *See, e.g.*, *Danos v. Jones*, 721 F. Supp. 2d 491, 495 (E.D. La. 2010), *aff'd*, 652 F.3d 577 (5th Cir. 2011); *Shemonsky v. Vanaskie*, 2005 WL 2031140, at *4 (M.D. Pa. Aug. 16, 2005). In short, as the Second Circuit has held, Plaintiffs here "may not take advantage of the United States's broad waiver of sovereign immunity in the Administrative Procedure Act because that waiver applies only to 'agencies,' and the federal judiciary is not an agency within the meaning of the act." *Dotson v. Griesa*, 398 F.3d 156, 177 n.15 (2d Cir. 2005) (citations omitted).

Plaintiffs have failed to meet their burden of showing that a waiver of immunity exists, mandating dismissal of the Complaint. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983); *Kinetic Systems, Inc. v. Fed. Fin. Bank*, 895 F. Supp. 2d 983, 995 (N.D. Cal. 2012).

**B. The JCD Committee enjoys judicial immunity from suit.**

In its opening brief, the JCD Committee demonstrated why, even were the Court to find that a valid waiver of sovereign immunity existed, Plaintiffs' claims could not proceed because the JCD Committee is immune from suit. JCD Comm. Mot at 12:6-13:28. The JCD Committee explained that its adjudication of Chief Judge McKee's petition for review, and its ensuing issuance of the January 17, 2014 Decision, constituted "judicial acts" that entitled it to absolute judicial immunity. *Id.* at 13:1-20. Alternatively, the JCD Committee argued that it would be entitled to quasi-judicial immunity. *Id.* at 13 n.11.

In response, Plaintiffs contend that the JCD Committee is not immune because its acts were "ministerial" rather than "judicial." Opp'n at 4:11-5:24. Plaintiffs appear to base their argument on the mistaken assumptions that the JCD Committee denied their request for information and that such a denial is a ministerial act. *Id.* at 5:20-22. Plaintiffs state, unsupported by any record citation, that "[t]here was a request for documents in a letter and then an email, and the denial was made via a letter on [*sic*] and an email." *Id.* at 5:21-22. They go on: "The judges did not actually sign the letters, and there was never any order of the court issued." *Id.* at 5:22-23.[2] Setting aside that none of these alleged facts are pled in the Complaint and therefore may not be properly considered, *see Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), Plaintiffs misidentify the JCD Committee as the entity that denied their request for information. No request was submitted to the JCD Committee, and it therefore was not in position to deny anything.[3] The only act that the JCD Committee took—adjudication of a petition for review—is decidedly judicial in nature, a point that Plaintiffs do not dispute. *See, e.g.*, *Overton v Torruella*, 183 F. Supp. 2d 295, 305-06 (D. Mass. 2001).

Even were the Court to credit Plaintiffs' assertion (which was not pled in the Complaint) that the denial of their request may somehow be attributed to the JCD Committee, this contention

---

[2] The JCD Committee notes that the allegation that "[t]he judges did not actually sign the letters," Opp'n at 5:22, actually *supports* the JCD Committee's position that it did not deny Plaintiffs' request.

[3] Plaintiffs continue to confuse the respective identities and roles of the JCD Committee, Defendant Catterson, and the Special Committee appointed by the Ninth Circuit Judicial Council. Plaintiffs' contentions are also internally inconsistent. For instance, they state, on the one hand, that "the judges [of the JCD Committee] did not actually sign the [denial] letters." Opp'n at 5:22. Yet on the other hand, Plaintiffs insist that "the Committee through its agents including Ms. Catterson [*sic*] denied that request for documents." *Id.* at 7:26-27. Moreover, Defendant Catterson is not an "agent" of the JCD Committee but is instead the Circuit and Court of Appeals Executive for the Ninth Circuit. Elsewhere, Plaintiffs wrongly assert that the JCD Committee conducted an "investigation." Despite Defendants' efforts to clarify the distinctions between the role of the JCD Committee and those of Ms. Catterson and the Ninth Circuit Judicial Council, *see* JCD Comm. Mot. at 2:22-5:14, it appears that Plaintiffs nonetheless continue to confuse the JCD Committee with the Special Committee appointed by the Ninth Circuit Judicial Council. The Court should not permit Plaintiffs' internally inconsistent positions to overcome the valid judicial immunity defense asserted here.

***Adams, et al. v. Committee on Judicial Conduct and Disability*, No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 4**

fails to address the JCD Committee's alternative argument based on quasi-judicial immunity. The Ninth Circuit has made clear that even for acts that are "purely administrative," quasi-judicial immunity attaches when such acts are "actually a part of the judicial function." *In re Castillo*, 297 F.3d 940, 952 (9th Cir. 2002).  Furthermore, as this Court noted in the *Four Directions* litigation, "quasi-judicial immunity would extend to Respondents here for actions taken in connection with the investigation of the misconduct complaints against Judge Cebull." *Four Directions v. Committee on Judicial Conduct & Disability*, No. 4:14-cv-03022-YGR, 2015 WL 1254765, at *5 n.3 (N.D. Cal. Mar. 18, 2015), *vacated on reconsideration by* 2015 WL 3409469 (May 27, 2015).

In this case, Judge Cebull's emails at issue were central to the misconduct investigation conducted by the Special Committee of the Ninth Circuit Judicial Council, and the JCD Committee's adjudication of the petition for review.  The Special Committee was initially formed as the result of controversy regarding these emails.  *See In re Judicial Misconduct*, 751 F.3d 611, 613-14 (JCD Committee 2014).  In the course of its investigation, the Special Committee obtained and reviewed Judge Cebull's emails, *id.* at 620-21, and that review was the basis for the March 15, 2013 and July 2, 2013 Orders reviewed by the JCD Committee, *id.* at 624-25.  Thus, Plaintiffs alleged request is for information at the heart of the investigation into Judge Cebull's misconduct.  Any denial of their request for information by either Defendant was no mechanical application of a FOIA exemption or the confidentiality provision of 28 U.S.C. § 360(a).  Instead, any such denial is closely bound up with Defendants' respective roles in the conduct and review of the misconduct investigation.  Even assuming the JCD Committee acted to deny Plaintiffs' request, that act would have been taken in connection with the JCD Committee's oversight role in the misconduct investigation, and was thus an exercise of the JCD Committee's judicial function.

Thus, even in Plaintiffs' counter-factual scenario where the JCD Committee denied the request for documents, that act would be entitled to quasi-judicial immunity and Plaintiffs' action is therefore barred.  Whether the circumstances are analyzed under the doctrine of judicial

immunity or the doctrine of quasi-judicial immunity, the JCD Committee is immune from suit and Plaintiffs' action must be dismissed.

## II. PLAINTIFFS' ARGUMENTS IN THEIR OPPOSITION ARE INSUFFICIENT TO RESCUE THEIR CLAIMS FROM DISMISSAL ON THE MERITS.

In their opposition, Plaintiffs focus on their putative First Amendment right to the requested records and on the supposed unconstitutionality of FOIA's provision exempting the judiciary from request for records. *See* 5 U.S.C. § 551(1)(B). Plaintiffs fail to respond to the JCD Committee's arguments demonstrating both the constitutionality of 28 U.S.C. § 360(a) and the unavailability of a Federal Records Act claim, and the Court should therefore treat these points as conceded. *See Walsh v. Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (deeming "effectively abandoned" an issue that was not raised in response to a motion to dismiss). Finally, although Plaintiffs make occasional allusion to the alleged due process rights of prior litigants or other unspecified individuals, *see, e.g.*, Opp'n at 11:4-5, 13:15-22, they do not quarrel with Defendants' argument that Plaintiffs lack standing to assert the hypothetical due process interests of such third parties. They have effectively conceded this argument, and the Court should not consider any such alleged injuries to parties other than Plaintiffs.

The First Amendment and FOIA arguments that Plaintiffs do advance in their opposition rest on flawed assumptions and citations to inapposite case law. Irrespective of the legal generalities Plaintiffs advance, and irrespective of their attempts to distinguish the binding authorities cited by the JCD Committee, Plaintiffs cannot dispel the fundamental principle that there is no inherent First Amendment right to government information. Instead of engaging with the JCD Committee's argument, Plaintiffs operate from the opposite assumption that *all* government information is freely available, either as a matter of constitutional right or common law right. From this novel position, Plaintiffs argue that the FOIA's inapplicability to the judiciary renders it facially unconstitutional. In response to Defendants' Motions, Plaintiffs have failed to show any merit to their claims and the action must be dismissed as a result.

***Adams, et al. v. Committee on Judicial Conduct and Disability,*** **No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 6**

**A. There is no First Amendment right to the requested records, and Plaintiffs cite no authority establishing such a right.**

Plaintiffs mistakenly contend that the JCD Committee has read the cases cited in its opening brief "too broadly." Opp'n at 11:8. On the contrary, any reasonable reading of the binding Supreme Court decisions the JCD Committee cited in its opening brief demonstrates that Plaintiffs' claim of a First Amendment right to the requested documents is meritless. Rather than grappling with these authorities, Plaintiffs seek to distinguish them on their facts. Any such factual distinctions, however, are wholly immaterial. In addition, Plaintiffs appear to invite the Court to engage in a form of "balancing" and to reject these binding authorities in favor of their generalized claim "for the press to check the power of government." *Id.* at 12:8-10. The Court should reject these efforts.

In *Houchins v. KQED, Inc.*, the Court made clear that there is no First Amendment right to disclosure of government records. 438 U.S. 1, 15 (1978) (plurality opinion) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."). Plaintiffs attempt to overcome this basic principle by asserting a "substantial interest" in publishing Judge Cebull's emails for public consumption. Opp'n at 11:26-27. But nothing in the First Amendment or the cases interpreting it permits a plaintiff to obtain non-public government information by bare assertion of a "substantial interest" in that information. Were it otherwise, essentially all government information would be subject to full public disclosure, since any interested party could conceivably articulate some "substantial interest" in the subject matter. Indeed, under plaintiff's theory, a person could obtain classified documents, sensitive information sealed by court order, internal deliberations by judges or agency officials, or information submitted to the courts or the government by confidential informants. The adverse consequences and potential for abuse of such a regime are readily apparent.

The Supreme Court in *Houchins* has already decided the central question raised by Plaintiffs' lawsuit, explaining that it "has never intimated a First Amendment guarantee of a right

*Adams, et al. v. Committee on Judicial Conduct and Disability,* **No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 7**

of access to all sources of information within government control." 438 U.S. at 9 (plurality opinion). Contrary to Plaintiffs' suggestion, Defendants have not read this decision "too broadly." Instead, the plain language of *Houchins* controls the First Amendment analysis in this case, and it is dispositive of Plaintiffs' constitutional claims.

Plaintiffs also attempt to distinguish the Supreme Court's decisions in *Zemel v. Rusk*, 381 U.S. 1 (1965), and *Branzburg v. Hayes*, 408 U.S. 665 (1972), on grounds that the factual circumstances differ from those presented here. *See* Opp'n at 12 n.2. These factual distinctions, however, are immaterial and do nothing to undermine the constitutional principles embedded in those cases. In *Zemel*, the Court disavowed an "unrestrained right to gather information" based on an asserted "right to speak and publish." 381 U.S. at 16-17. Plaintiffs' attempt to minimize *Zemel* merely because it involved "travel to Cuba" is without basis. Opp'n at 12:24-25. The same goes for *Branzburg*, which Plaintiffs ask the Court to ignore simply because its facts were not *identical* to those here. Opp'n at 12:27-28 (arguing that *Branzburg* "had nothing to do with whether or not a reporter should be able to access important government documents"). A Supreme Court case need not share an identical fact pattern for the principles it announces to apply with binding force to subsequent cases.

Although Plaintiffs expend considerable space in their opposition brief extolling the important role of the free press in a functioning democracy, *see* Opp'n 8:1-10:19, they cite nothing to support the more specific constitutional principle they advocate—a purported First Amendment right to access confidential records from the federal judiciary. That is because no such right has been held to exist; indeed, the contrary principle has been recognized—and recognized repeatedly—by the Supreme Court. *See, e.g.*, *Houchins*, 438 U.S. at 15; *Pell v. Procunier*, 417 U.S. 817, 834 (1974); *Branzburg*, 408 U.S. at 684; *Zemel*, 381 U.S. at 16-17. Despite Plaintiffs' attempts to diminish the import of these rulings, there is no First Amendment right to the information they seek.

**B. The FOIA's exemption of the federal judiciary from its disclosure requirements is not unconstitutional.**

From their inaccurate assumption that the First Amendment confers a plenary right to the records they seek, Plaintiffs proceed to argue that the FOIA's exemption for the judiciary, 5 U.S.C. § 551(1)(B), is unconstitutional. They argue that Congress's exclusion of the judicial branch from the FOIA's disclosure obligations violates the First Amendment because it prevents the press from operating as a check against "racist judges on the bench." Opp'n at 15:5-7. Yet Plaintiffs proffer no support other than their own bare policy preferences for their claim that the FOIA is unconstitutional. *See id.* at 13:20-22 ("[T]here simply is no compelling reason to shield Judge Cebull's racist and sexist emails from disclosure pursuant to FOIA or the generic freedom of the press to scrutinize government records."). Although Congress may choose to impose disclosure requirements on government agencies, as it has through the FOIA, the "Constitution itself is n[ot] a Freedom of Information Act." *Houchins*, 438 U.S. at 14-15. Indeed, the Supreme Court "has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws." *McBurney v. Young*, 133 S. Ct. 1709, 1718 (2013) (citing *Houchins*, 438 U.S. at 14). Plaintiffs' lawsuit is no more than an attempt to relitigate this settled question.

Further, the cases on which Plaintiffs rely for their FOIA argument do not advance their position. *Red Lion Broadcasting Co. v. FCC* (cited by Plaintiffs at Opp'n 15:6-10), upheld the FCC's so-called "fairness doctrine" and observed that the First Amendment required consideration not only of a radio broadcaster's asserted First Amendment right to broadcast material solely of its choosing but also of the public's right to receive more varied discourse on public affairs. 395 U.S. 367, 386-90 (1969). The case did not involve a request for government information from the public and thus says nothing about the extent to which the government may be compelled to disclose such information, let alone saying anything about the FOIA's exemption for the judiciary. Similarly, *Republican Party of Minnesota v. White*, also relied on by Plaintiffs (Opp'n at 15:17-23), involved not restrictions on access to government information,

but state judicial canons prohibiting candidates for judicial office from publicly stating their positions on certain issues. 536 U.S. 765, 770-74 (2002). The constitutional issue in that case was whether the state's speech restriction violated judicial candidates' First Amendment rights, and again had nothing to do with a claim of *access* to information of the sort Plaintiffs assert here. Finally, Plaintiffs' muddled attempt to harness arguments about "preventing actual judicial bias," *see* Opp'n at 15:23-16:1, has no place in determining whether § 551(1)(B) is constitutional.[4]

At bottom, Plaintiffs' claim that § 551(1)(B) is unconstitutional appears to rest on the novel theory that, by mandate of the First Amendment, the FOIA must grant any requester unconditional access to records from the judicial branch of the federal government, lest it be held unconstitutional. Yet courts recognize that the "FOIA does not provide unfettered access to government files and papers." *Lurie v. Dep't of* Army, 970 F. Supp. 19, 32 (D.D.C. 1997); *see also Havemann v. Colvin*, 537 F. App'x 142, 146 (4th Cir. 2013) ("Congress's desire to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny did not produce a statute that provides unfettered access to agency records." (citation omitted)).

Instead, the "FOIA reflects Congress's intent that the public's right to information be balanced against other competing interests." *Id.* One of those "competing interests" was to preclude undue interference with, and intrusion into, the judicial function. As legislative history makes clear, the APA, out of whose original disclosure provisions the FOIA grew, was designed to address concerns over the growth and influence of *executive* agencies, and similar checks on the *judicial* branch did not animate Congress in the passage of either statute. *See, e.g.*, S. Rep.

[4] Plaintiffs' argument that denying access to Judge Cebull's emails constitutes a prior restraint similarly misses the mark. Opp'n at 10:22-11:7. "A prior restraint is an administrative or judicial order that forbids certain communications issued before those communications occur." *Greater Los Angeles Agency of Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 430 (9th Cir. 2014). As the JCD Committee pointed out in its opening brief, neither the FOIA's judiciary exemption or 28 U.S.C. § 360(a) restrict Plaintiffs' speech or any specified communications by Plaintiffs. JCD Comm. Mot. at 22:12-23:5. The prior restraint precedent cited by Plaintiffs has no application here.

***Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 10**

No. 79-752, at 3 (1945), *reprinted in* ADMINISTRATIVE PROCEDURE ACT: LEGISLATIVE HISTORY, 1944-46, at 189 (1946) (addressing the "the fundamental problem of the inconsistent union of prosecuting and deciding functions exercised by many *executive agencies*" (emphasis added)). The Second Circuit has recognized these limits on the FOIA's reach: "The purpose of the FOIA was to correct improper denials of requests for public information by various federal agencies, *not by courts*." *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982); *id.* ("Nothing in the legislative history of the FOIA suggests that Congress intended the FOIA to apply to courts . . . .").

In any event, courts have previously rejected claims of a constitutional entitlement to documents, separate from demands made in connection with a FOIA request. *See, e.g.*, *McBurney*, 133 S. Ct. at 1718; *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2677 (2011) (Breyer, J., dissenting) ("[T]his Court has never found that the First Amendment prohibits the government from restricting the use of information gathered pursuant to a regulatory mandate"); *Center for Nat'l Security Studies v. Dep't of Justice*, 331 F.3d 918, 933 (D.C. Cir. 2003) (rejecting argument that "disclosure is independently required by both the First Amendment and the common law right of access to government information"); *cf. McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983) ("A litigant seeking release of government information under FOIA, therefore, relies upon his statutory entitlement—as narrowed by statutory exceptions—and not upon his constitutional right to free expression."). As the D.C. Circuit, citing *Houchins*, explained, the lack of constitutional right to government information means that "disclosure of government information generally is left to the 'political forces' that govern a democratic republic." *Center for Nat'l Security Studies*, 331 F.3d at 933. The result of those "political forces" is Congress's enactment of the FOIA, and the Constitution does not mandate fuller disclosure than what the legislature has elected to provide. *Id.* at 935-36.

Nor can Plaintiffs plausibly claim that the alleged denial of their request itself amounted to a form of constitutional violation. Courts have recognized that while the First Amendment grants a right to petition the government, it imposes no affirmative duty on the government to

***Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 11**

respond. For instance, in *Trentadue v. Integrity Committee*, the plaintiff asserted a right to certain documents under the FOIA but also "assert[ed] a constitutional claim to the documents at issue" based on due process and a right of access to the courts. 501 F.3d 1215, 1237 (10th Cir. 2007). The Tenth Circuit rejected the constitutional claim, holding that plaintiff had only a "liberty interest in his First Amendment right to petition the government"—a right which the plaintiff had exercised—but that "the right to petition confers no attendant right to a response from the government." *Id.* (citing *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 465 (1979)). Here, Plaintiffs were afforded all to which they were arguably entitled—the right to petition the government for the documents at issue—and the fact that Plaintiffs allegedly received any response at all went beyond the required constitutional minimum. *Id.*; *see also We the People Foundation, Inc. v. United States*, 485 F.3d 140, 141 (D.C. Cir. 2007) (explaining that First Amendment does not encompass a right "to receive a government response to or official consideration of a petition for redress of grievances"); *Taylor v. San Bernardino County Sheriff's Dep't*, 2015 WL 3477149, at *6 (C.D. Cal. June 2, 2015).

Ultimately, Plaintiffs' argument can be reduced to a claim that the FOIA's judiciary exemption is unconstitutional simply because they say it is. Their section heading says as much: "Plaintiff's Complaint Specifically Contends that the FOIA Exemption for the Judiciary is Unconstitutional and Therefore Defendants' Reliance on the Judicial Exemption to FOIA as the Basis for Denying Access to Judge Cebull's Emails Was also Unconstitutional." Opp'n 14:26-15:2. Plaintiffs, of course, cannot survive a motion to dismiss merely by alleging that § 551(1)(B) is unconstitutional; that is instead a purely legal issue for the Court to decide in resolving Defendants' Motions. The constitutional claim advanced by Plaintiffs rests solely on the defective premise that Plaintiffs enjoy a constitutional right to the records they have requested. They offer no judicial precedent for striking down the FOIA's exclusion of the judiciary from its application, and this Court should not create the first such precedent. Plaintiffs' claim that § 551(1)(B) is unconstitutional is meritless.

**C. Plaintiffs' claim to a common law and constitutional right to access "official public records" has no bearing on whether they may access non-public records from an investigative file.**

In the final section of their opposition brief, Plaintiffs assert an "affirmative right of access to court records." Opp'n at 18:1-2. They assert, without any support, that the "emails at issue here are part of the official public records of the United States District Court." *Id.* at 17:5-6. According to Plaintiffs, they are entitled to unfettered access to Judge Cebull's emails (and, by logical extension, the emails of any federal judge) because those emails were allegedly "created on a government computer and sent using an official government email address." Opp'n at 17:6-7. Defendants are unaware of any authority that would support such a sweeping degree of public access to judicial records, and Plaintiffs cite none.

As an initial matter, the D.C. Circuit has held that the "the common law right of access is preempted by FOIA." *Center for Nat'l Security Studies*, 331 F.3d at 936. Thus, Plaintiffs' common law claim to the information sought founders from the outset because the FOIA grants them no right to records from the federal judiciary. "It would make no sense for Congress to have enacted the balanced scheme of disclosure and exemption [in the FOIA], and for the court to carefully apply that statutory scheme, and then to turn and determine that the statute had no effect on a preexisting common law right of access." *Id.* at 937.

Even assuming their common law right of access survives passage of the FOIA, the cases and statutory provisions that Plaintiffs do cite all concern access to records of judicial *proceedings*, not the internal correspondence, memoranda, notes, work product, or other non-public material generated by judicial officers. *See, e.g.*, 28 U.S.C. § 753(b) ("Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim . . . ."); *Cox Broadcasting Co. v. Cohn*, 420 U.S. 469, 496 (1975) ("Once true information is *disclosed in public court documents open to public inspection*, the press cannot be sanctioned for publishing it." (emphasis added)); *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966) ("[W]hat *transpires in the court room* is public property." (emphasis added, quotation omitted)); *Estes v. Texas*, 381 U.S. 532, 542 (1965) ("The public are permitted to

***Adams, et al. v. Committee on Judicial Conduct and Disability,* No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 13**

attend nearly all judicial inquiries, and there appears to be no sufficient reason why they should not also be allowed to see in print the reports of trials . . . ."). Whatever right Plaintiffs or the public generally may have to attend judicial proceedings or to obtain records of those proceedings, it does not follow that they also enjoy a far broader right to reach beyond the public courtroom and access internal records of judicial deliberations and correspondence. The claim to a common law right of access is grossly misplaced in response to Defendants' Motions.

If the Court does not decide the Motions on grounds of sovereign immunity, lack of standing (as to claims against the JCD Committee), or judicial immunity, it should dismiss the Complaint for failure to state a claim.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint must be dismissed in its entirety, either for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6).

Dated: July 13, 2015.

Respectfully submitted,

U.S. DEPARTMENT OF JUSTICE

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Andrew Zee*
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6646
Facsimile: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Attorneys for Committee on Judicial Conduct and Disability*

***Adams, et al. v. Committee on Judicial Conduct and Disability*, No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss - 14**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of July, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.

*/s/ Andrew Zee*
M. ANDREW ZEE

***Adams, et al. v. Committee on Judicial Conduct and Disability,*** **No. 4:15-cv-01046-YGR**
**Defendant Committee's Reply in Support of Motion to Dismiss**