1  BENJAMIN C. MIZER
   Principal Deputy Assistant Attorney General
2  ELIZABETH J. SHAPIRO
3  Deputy Branch Director
   M. ANDREW ZEE (CA Bar No. 272510)
4  Attorney
   Civil Division, Federal Programs Branch
5  U.S. Department of Justice
6  450 Golden Gate Avenue, Room 7-5395
   San Francisco, CA 94102
7  Telephone: (415) 436-6646
   Facsimile: (415) 436-6632
8  E-mail: m.andrew.zee@usdoj.gov
9
   *Attorneys for Committee on Judicial*
10 *Conduct and Disability*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| JOHN ADAMS, SHANE CASTLE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES; and CATHY A. CATTERSON in her official capacity as Circuit and Court of Appeals Executive to the U.S. Courts for the Ninth Circuit,<br><br>Defendants. | No. 4:15-cv-01046-YGR<br><br>**DEFENDANT COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hearing Date: July 28, 2015 [vacated]<br>Time: 2:00 p.m.<br>Courtroom 1, 4th Floor<br><br>Hon. Yvonne Gonzalez Rogers |

## INTRODUCTION

Pursuant to the Court's Order dated October 29, 2015, *see* ECF No. 36, Defendant, the Committee on Judicial Conduct and Disability ("JCD Committee"), submits the following Supplemental Brief to address the possible application of *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") to Plaintiffs' claims and in further support of its Motion to Dismiss Plaintiffs' Complaint, *see* ECF No. 25.

As Defendants JCD Committee and Cathy A. Catterson have argued in moving to dismiss Plaintiffs' Complaint, this Court lacks subject matter jurisdiction over Plaintiffs' claims because the JCD Committee enjoys sovereign immunity and absolute immunity, and because Plaintiffs lack standing. *See* ECF Nos. 25, 26.[1]  Even if this Court disagrees, however, and concludes that it has jurisdiction over Plaintiffs' claims, Plaintiffs have failed to state a claim upon which relief can be granted as to either Defendant, including with respect to any claimed right of access under the First Amendment to the documents at issue in this litigation.

Specifically, Plaintiffs have failed to state a valid claim because, as the Supreme Court has held, the First Amendment does not mandate any "special right of access to government-controlled sources of information." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality opinion).  Regardless of how Plaintiffs frame their claims, Plaintiffs are seeking access to government documents, and not access to a proceeding.  Their claims are therefore properly governed by *Houchins*, and there is no occasion to apply the *Press-Enterprise II* framework.  *See* ECF No. 25 at 20 n.16.

Nonetheless, even if this Court were to analyze Plaintiffs' claims under the "experience and logic" test set forth in *Press-Enterprise II*, Plaintiffs have failed to state a valid claim under the First Amendment as to either Defendant.  Historically, judicial investigations into possible federal judicial misconduct have not been open to the press and general public, and such public access would severely undermine, if not eliminate, their functioning.

---

[1] The JCD Committee joins in and adopts the arguments set forth in the Supplemental Memorandum filed by Defendant Catterson on this date.

*Adams, et al. v. Committee on Judicial Conduct and Disability,* **No. 4:15-cv-01046-YGR**
**Defendant Committee's Supplemental Brief in Support of Motion to Dismiss - 1**

# ARGUMENT

**I.  PLAINTIFFS HAVE FAILED TO STATE A VALID FIRST AMENDMENT CLAIM UNDER THE EXPERIENCE AND LOGIC TEST OF *PRESS-ENTERPRISE II*.**

This Court should decline to analyze Plaintiffs' claims under the *Press-Enterprise II* framework because Plaintiffs' claims relate to access to government documents, and not access to a proceeding.  Nonetheless, even if this Court were to analyze Plaintiffs' claims under the "experience and logic" test set forth in *Press-Enterprise II*, Plaintiffs have failed to state a valid First Amendment claim.

In *Press-Enterprise II*, the Supreme Court considered whether a First Amendment right of access attaches to a state preliminary hearing arising out of a capital murder prosecution.  478 U.S. at 3.  The Court applied the "experience and logic" test, asking first, "whether the place and process have historically been open to the press and general public," and second, "whether public access plays a significant positive role in the functioning of the particular process in question."  *Id.* at 8.  A qualified First Amendment right of public access exists only "[i]f the particular proceeding in question passes these tests of experience and logic."  *Id.* at 9.

Applying this test to California's preliminary hearings, the Court concluded that both its requirements were satisfied.  As to the "experience" prong, it cited a "near uniform practice of state and federal courts" evincing a "tradition of accessibility to preliminary hearings of the type conducted in California."  *Id.* at 10-11.  And the Court found that a preliminary hearing in California was "sufficiently like a trial" that public access was "essential to the proper functioning of the criminal justice system."  *Id.* at 12.  This observation, coupled with its prior determination that "openness in criminal trials . . . 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system,'" led the Court to conclude that the "logic" prong was also met.  *Id.* at 9 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 501 (1984)).

In this case, Plaintiffs do not seek access to a hearing or particular proceeding, but rather to parts of the closed investigative record—specifically, emails—considered by the Special

Committee of the Ninth Circuit Judicial Council in its investigation into potential misconduct by Judge Cebull. Those emails are "papers, documents, and records of proceedings related to investigations" that Congress has explicitly prohibited from disclosure. 28 U.S.C. § 360(a).

The confidentiality of investigative records in judicial misconduct inquiries is a longstanding practice. The federal judiciary's historic practice of investigating potential judicial misconduct was codified in 1980 when Congress established the complaint process set forth in the Judicial Councils Reform and Judicial Conduct and Disability Act (the "Act"), Pub. L. No. 96-458, 94 Stat. 2035 (1980) (codified as amended at 28 U.S.C. §§ 351-64).[2] There is no history of openness for this type of investigation; indeed, federal judicial misconduct investigations have always been closed to the public, and it would be a transformative event to disrupt this longstanding practice.

The confidentiality that permeates federal judicial misconduct inquiries is presently codified in the Act and in the Rules for Judicial-Conduct and Judicial-Disability Proceedings (the "JCD Rules"), as adopted by the Judicial Conference, and historically in the Illustrative Rules.[3] Such confidentiality is essential to the proper functioning of the federal judicial misconduct

---

[2] *See also Chandler v. Judicial Council of Tenth Circuit*, 398 U.S. 74, 85 (1970) (noting that impetus for passage of 28 U.S.C. § 332, which established the circuit judicial councils, was to "give judges a statutory framework and power whereby they might put their own house in order" (internal quotation omitted)); Hon. Anthony J. Scirica, *Judicial Governance and Judicial Independence*, 90 NYU L. Rev. 779, 784-85 (2015) (recounting congressional enactments designed to give "the judiciary the opportunity to strengthen its internal oversight," and to create in the Judicial Conference "a body capable of forging and implementing judicial conduct regulations"); Richard L. Marcus, *Who Should Discipline Federal Judges, and How?*, 149 F.R.D. 375, 375 (Sept. 1993) ("Before 1981, discipline of federal judges short of impeachment was handled as part of the general administrative responsibilities of the Judicial Councils of the various circuits under 28 U.S.C. § 332, which had been adopted in 1939.").

[3] The Judicial Conference of the United States promulgated the uniform national JCD Rules in 2008. *See* http://www.uscourts.gov/file/18438/download. Confidentiality is governed by JCD Rule 23, and the public availability of decisions is governed by JCD Rule 24. The Illustrative Rules Governing Complaints of Judicial Misconduct and Disability ("Illustrative Rules") preceded the JCD Rules and contained similar provisions regarding confidentiality and the public availability of decisions.

*Adams, et al. v. Committee on Judicial Conduct and Disability,* **No. 4:15-cv-01046-YGR**
**Defendant Committee's Supplemental Brief in Support of Motion to Dismiss - 3**

complaint and investigation process.  Thus, even were Plaintiffs' claims subject to analysis under the *Press-Enterprise II* test, the requirements of that test could not be satisfied.

### A. Judicial investigations into possible federal judicial misconduct have not been historically open to the press and general public.

Investigations into potential misconduct by federal judges have not "historically been open to the press and general public." *Press-Enterprise II*, 478 U.S. at 8.  Rather, confidentiality has been the hallmark of investigations into allegations of federal judicial misconduct. *See, e.g.*, *In re Charge of Judicial Misconduct*, 593 F.2d 879, 880 n.* (9th Cir. 1979) (quoting at no.5 a procedural rule applicable to pre-1980 proceedings in the Ninth Circuit, providing that "[a]ll papers received by, and proceedings and reports of, the committee shall remain confidential"); Hon. Harry T. Edwards, *Regulating Judicial Misconduct and Divining "Good Behavior" for Federal Judges*, 87 Mich. L. Rev. 765, 792 (1989) (noting non-public nature of informal disciplinary measures used prior to 1980).

Congress codified that confidentiality when it passed the Act in 1980, mandating strict non-disclosure requirements for "all papers, documents, and records of proceedings related to investigations," with narrow exceptions neither applicable nor alleged to apply here.  28 U.S.C. § 360(a) (previously codified at 28 U.S.C. § 372(c)(14)).  This provision reflects Congress's considered judgment that all files "related to" judicial misconduct investigations, including the record developed in the course of such investigations, should not be made open to the press or general public.  That congressional judgment is also reflected in the JCD Rules.  JCD Rule 24(a) mandates public disclosure of "all orders entered by the chief judge and judicial council" once "final action has been taken on a complaint and it is no longer subject to review," with certain exceptions, while JCD Rule 23(b) provides that "[a]ll files related to a complaint must be separately maintained with appropriate security precautions to ensure confidentiality."

Beyond those exceptions expressly contemplated and enacted by Congress, Defendant JCD Committee is aware of nothing in the history of federal judicial misconduct investigations that would indicate any degree of openness of these investigations to the public.  Indeed, the

congressional mandate—supported by the JCD Rules—that federal judicial misconduct investigations be conducted outside public view is effectively dispositive of the "experience" factor in the *Press-Enterprise II* test.  Congress's decision to restrict public access to misconduct investigations was not contrary to historical precedent, and Plaintiffs have neither shown nor contended otherwise.

Plaintiffs' claims in this case implicate only the judicial misconduct regime for federal judges, and authorities addressing the judicial misconduct regimes adopted by States—whose judicial systems are fundamentally different than those contemplated by Article III—are not controlling here.  It is true that certain States have chosen to open certain judicial misconduct *proceedings* to the public in specific circumstances.  *See Kamasinski v. Judicial Review Council*, 44 F.3d 106, 108 (2d Cir. 1994) (proceedings of Connecticut's Judicial Review Council involve a "confidential preliminary investigation" and, only upon a finding of probable cause, an open hearing on the record); *First Amendment Coalition v. Judicial Inquiry & Review Board*, 784 F.2d 467, 471 (3d Cir. 1986) (proceedings of Pennsylvania Judicial Inquiry and Review Board treated as confidential unless the Board recommended further action by the Pennsylvania Supreme Court).  However, those actions appear to be founded on legislative policy choices rather than historical or constitutional imperative.  In any event, there is no indication that the court in either *Kamasinski* or *First Amendment Coalition* considered the investigative file anything other than confidential.  *Kamasinski*, 44 F.3d at 108 ("The first [phase] is a confidential preliminary investigation in which the JRC determines whether there is probable cause that judicial misconduct has occurred."); *First Amendment Coalition*, 784 F.2d at 470-71 (considering limitation on access to hearing transcript).

*Kamasinski* and *First Amendment Coalition* are additionally distinguishable from this case by the nature of the claims asserted.  In those cases, the courts of appeals considered the permissibility of restrictions on a participant's ability to *disclose* information relevant to, or gathered in, the course of a judicial misconduct investigation—not the permissibility of limiting the general public's *access to* a federal judicial misconduct investigative file.  Indeed, in *First*

*Adams, et al. v. Committee on Judicial Conduct and Disability,* **No. 4:15-cv-01046-YGR**
**Defendant Committee's Supplemental Brief in Support of Motion to Dismiss - 5**

1   *Amendment Coalition*, the Third Circuit explicitly declined to hold that a First Amendment right
2   of access to state judicial disciplinary proceedings existed.  784 F.2d at 472.[4]  The Third Circuit
3   thus disavowed any decision on "whether the First Amendment prohibits the state from barring
4   public observation of judicial disciplinary proceeding at all stages." *Id.*  In *Kamasinski*,
5   meanwhile, the case turned on whether disclosure of information by a complainant, witness, or
6   staff member could constitutionally be prohibited, and the issue of access to the proceeding by a
7   third party was not before the court. 44 F.3d at 111.
8        In their briefing to date, Plaintiffs have identified no contrary authority establishing a
9   history of openness to the contents of federal judicial misconduct investigations.  Thus, there is
10  no support for the proposition that federal judicial misconduct investigations "have historically
11  been open to the press and general public," and Plaintiffs cannot meet the first prong of the
12  *Press-Enterprise II* test.  478 U.S. at 8.

    **B.**    **Open public access to federal judicial misconduct investigations would severely undermine their functioning.**

     Plaintiffs can fare no better with respect to the second prong of *Press-Enterprise II*. Requiring open public access would not play "a significant positive role in the functioning of" federal judicial misconduct investigations and resolution of misconduct complaints. *Press-Enterprise II*, 478 U.S. at 9.  Instead, both Congress and the Supreme Court have recognized that *confidentiality* in federal judicial misconduct investigations is essential to their proper functioning.

     Upon passage of the Act, the Senate Judiciary Committee stressed that its confidentiality provision "will avoid possible premature injury to the reputation of a judge," and that efforts be made to "protect[] the judge from malicious publicity."  S. Rep. No. 96-362 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4315, 4330. The Supreme Court, in *Landmark Communications, Inc. v. Virginia*, accepted the "collective judgment" that confidentiality promotes the effectiveness of

---

[4] Although it proceeded on an assumed right of access, the Third Circuit observed that judicial disciplinary proceedings "do not have a long history of openness."  *First Amendment Coalition*, 784 F.2d at 472.

*Adams, et al. v. Committee on Judicial Conduct and Disability,* **No. 4:15-cv-01046-YGR**
**Defendant Committee's Supplemental Brief in Support of Motion to Dismiss - 6**

judicial disciplinary proceedings, recognizing that 47 states, the District of Columbia, and the judicial misconduct and disability legislation then pending before Congress all provided for such confidentiality.  435 U.S. 829, 834 & n.4, 836 (1978).  The Court identified several important interests served by confidentiality which are relevant here, and at least two of which are directly applicable to the investigation into Judge Cebull's conduct.  First, confidentiality encourages the filing of complaints and the willing participation of relevant witnesses, and second, confidentiality facilitates the work of judicial review commissions by encouraging judges to voluntarily resign or retire to avoid a public formal proceeding.  *See* 435 U.S. at 835.[5]  In a separate concurring opinion, Justice Stewart noted more generally that "[t]here could hardly be a higher governmental interest than a State's interest in the quality of its judiciary," and that maintaining confidentiality was a "derivative interest" serving that goal.  *Id.* at 848-49 (Stewart, J., concurring in the judgment).

Opening the investigation of the Special Committee of the Ninth Circuit Judicial Council to the public, even after that investigation has concluded, would not "play a positive role," but rather would undermine these important interests identified by Congress and the Supreme Court.  And, like the consequence of any constitutional ruling, all future federal misconduct investigations would be subject to claims of First Amendment access.

---

[5] The other two interests identified in *Landmark Communications* are protecting judges from publication of unexamined and unwarranted complaints; and maintaining confidence in the judiciary by avoiding premature announcement of groundless complaints.  *See* 435 U.S. at 835.

In *Landmark Communications*, the Court concluded that Virginia's attempt to impose a criminal penalty on a newspaper's publication of accurate information about a misconduct inquiry could not pass muster under the First Amendment.  *See* 435 U.S. at 842, 846.  Although the reasons supporting confidentiality identified by the Court are germane to the present analysis, other aspects of the case are distinguishable.  Importantly, *Landmark Communications* involved the imposition of criminal sanctions, which are wholly absent here.  *Id.* at 837 ("The narrow and limited question presented, then, is whether the First Amendment permits the *criminal punishment* of third persons who are strangers to the inquiry . . . ." (emphasis added)).  In addition, *Landmark Communications* involved a newspaper's prior disclosure of information about a misconduct proceeding, not a general claim of access to the investigative file.  The Court expressly disavowed any view on a "constitutional challenge to a State's power to keep the Commission's proceedings confidential."  *Id.*

First, any regime in which the records of a federal judicial misconduct investigation were open to the public would almost surely deter individuals from filing misconduct complaints—which often contain highly sensitive or personal allegations—or from providing full, candid testimony or other information about judicial officers.  This threat of deterrence exists with equal force regardless of whether access is allowed during an investigation's pendency or after it is closed, because publication—whether contemporaneous or eventual—would chill their initial willingness to participate in the process.  Even as to those witnesses and complainants who participated in the process, the specter of unrestricted public access may cause them to withhold sensitive information that they do not want publicized.  *Landmark Communications*, 435 U.S. at 835 ("[C]onfidentiality is thought to encourage the filing of complaints and the willing participation of relevant witnesses by providing protection against possible retaliation or recrimination.").  A system under which the filing of complaints is freely encouraged, rather than chilled by a lack of confidentiality, thus promotes the overall quality of the judiciary, and of judicial misconduct investigations, by ensuring that meritorious complaints of misconduct are filed and heard.

Second, where a complainant's allegations are found to warrant corrective action, Congress has already mandated publication of any such order, and has further required publication of the reasons for that action "[u]nless contrary to the interests of justice."  28 U.S.C. § 360(b).  This sensible balancing of competing interests appropriately provides the public with information about findings of judicial misconduct, as well as the reasons for corrective action taken as a result.  Indeed, in this very case, the detailed Order of the Ninth Circuit Judicial Council and the subsequent Decision by the JCD Committee, which recounted in detail the background facts, the nature of the investigation, and the ensuing proceedings, were published to the general public.  *See In re Judicial Misconduct*, 751 F.3d 611 (JCD Committee 2014).  Ordering further disclosure of the investigative file itself would serve little purpose, both retrospectively and prospectively.

Third, granting public access to investigative files of judicial misconduct inquiries would likely disrupt or hinder future investigations by disclosing the manner of investigation, the avenues of inquiry pursued, the types of questions asked, and other confidential aspects of the investigative process.  As the Supreme Court has recognized, investigative processes often require confidentiality to function effectively, and judicial misconduct investigations are no different.  *See Press-Enterprise II*, 478 U.S. at 9-10 ("[I]t takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly.  A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" (quoting *Douglas Oil Co. v. Petrol Stops North-west*, 441 U.S. 211, 218 (1979))).  Alternatively, pressure arising from public disclosure and increased public scrutiny of specific cases could bring undue pressure on investigative committees to pursue or reach particular findings or conclusions, and thus undermine their independent investigative function.

Fourth, granting public access to investigative files would diminish the likelihood that a judge would participate willingly and cooperate in an investigation, including taking voluntary corrective measures to address allegations of misconduct.  "In practice, it has been demonstrated that one of the most effective methods of meeting the problem of the unfit judge is to remove him from the bench by voluntary retirement or resignation." *First Amendment Coalition*, 784 F.2d at 476.  Were the public granted access to investigative proceedings, an accused judge inclined to voluntarily address the misconduct "might feel compelled to seek vindication by requiring a hearing" or by otherwise challenging the allegations. *Id.*  Confidentiality advances a more flexible resolution of misconduct complaints in which voluntary action precludes the necessity of formal action. *Landmark Communications*, 435 U.S. at 835-36 ("When removal or retirement is justified by the charges, judges are more likely to resign voluntarily or retire without the necessity of a formal proceeding if the publicity that would accompany such a proceeding can thereby be avoided.").  Notably, permitting access to investigative files after an

investigation is closed would not meet this goal, since judges otherwise inclined to resign or retire voluntarily might not do so where an investigation will be publicized at some future point.

**CONCLUSION**

Plaintiffs have failed to state a valid claim upon which relief can be granted as to either Defendant named in the Complaint. The "logic and experience" test expressed in *Press-Enterprise II* does not apply to Plaintiffs' claims as Plaintiffs are not seeking access to a proceeding. Even were this Court to apply the *Press-Enterprise II* test, however, Plaintiffs cannot satisfy its requirements. Investigations into potential misconduct by federal judges have historically been confidential, rather than open to the press and general public. The recognition of a novel right of public access under the First Amendment would not simply undermine the function of federal judicial misconduct proceedings, but would threaten to eliminate their effectiveness altogether. For the reasons set forth above and in the JCD Committee's prior briefing, the JCD Committee's Motion to Dismiss should be granted and the Complaint dismissed with prejudice.

Dated: November 16, 2015.                               Respectfully submitted,

U.S. DEPARTMENT OF JUSTICE

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

   */s/ Andrew Zee*
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice

*Attorneys for Committee on Judicial Conduct and Disability*

*Adams, et al. v. Committee on Judicial Conduct and Disability,* **No. 4:15-cv-01046-YGR**
**Defendant Committee's Supplemental Brief in Support of Motion to Dismiss - 10**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.

                                             */s/ Andrew Zee*
                                             M. ANDREW ZEE