1  Douglas R. Young (State Bar No. 073248)
     dyoung@fbm.com
2  Morgan T. Jackson (State Bar. No. 250910)
     mjackson@fbm.com
3  Christoffer Lee (State Bar No. 280360)
     clee@fbm.com
4  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
5  San Francisco, CA  94104
   Telephone:  (415) 954-4400
6  Facsimile:  (415) 954-4480

7  Attorneys for Defendant
   CATHY A. CATTERSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHN ADAMS, SHANE CASTLE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES; and CATHY A. CATTERSON in her official capacity as Circuit and Court of Appeals Executive to the U.S. Courts for the Ninth Circuit,<br><br>Defendants. | Case No. 4:15-cv-01046-YGR<br><br>**DEFENDANT CATTERSON'S SUPPLEMENTAL MEMORANDUM ADDRESSING *PRESS-ENTERPRISE II*** <br><br>Judge:   Hon. Yvonne Gonzalez Rogers<br><br>Date:   Hearing vacated by Clerk's Notice |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR

28418\5146282.5

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

I. THERE IS NO RIGHT OF ACCESS UNDER *PRESS-ENTERPRISE II* ......................... 1

    A. Plaintiffs Bear The Burden Of Demonstrating A First Amendment Right Of Access ............................................................................................................. 4

    B. There Is No Long-Standing Historical Practice Of Openness ............................... 4

    C. Further Public Access Would Not Here Play A Substantial Positive Role In The Functioning Of Judicial Misconduct Proceedings ............................................ 7

II. THE COMPLAINT FAILS TO PLEAD AGAINST ANY DEFENDANT ....................... 9

CONCLUSION ............................................................................................................................ 10

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT. TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- i -
28418\5146282.5

# TABLE OF AUTHORITIES

**Page**

**FEDERAL COURT CASES**

*Adkins v. Children's Hosp. of the D.C.*,
    261 U.S. 525 (1923) .................................................................................................. 4

*Clemmer v. Off. of C. J.*,
    544 F. Supp. 2d 722 (N.D. Ill. 2008) ........................................................................ 9

*Courthouse News Serv. v. Planet*,
    750 F.3d 776 (9th Cir. 2014) ................................................................................ 2, 3

*Douglas Oil Co. v. Petrol Stops Northwest*,
    441 U.S. 211 (1979) .................................................................................................. 9

*First Amendment Coalition v. Judicial Inquiry & Review Bd.*,
    784 F.2d 467 (3d Cir. 1986) ............................................................................ *passim*

*Globe Newspaper Co. v. Superior Court*,
    457 U.S. 596 (1982) .................................................................................................. 2

*Houchins v. KQED, Inc.*,
    438 U.S. 1 (1978) ...................................................................................................... 2

*In re Charge of Judicial Misconduct*,
    593 F.2d 879 (9th Cir. 1979) .................................................................................... 5

*In re Judicial Misconduct*,
    751 F.3d 611 (U.S. Jud. Conf. 2014) ................................................................ 7, 8, 9

*Kamasinski v. Judicial Review Council*,
    44 F.3d 106 (2d Cir. 1994) ........................................................................................ 3

*Landmark Communications, Inc. v. Virginia*,
    435 U.S. 829 (1978) .................................................................................................. 3

*Press-Enterprise Co. v. Superior Court*,
    464 U.S. 501 (1984) .................................................................................................. 2

*Press-Enterprise Co. v. Superior Court*,
    478 U.S. 1 (1986) .............................................................................................. *passim*

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984) .................................................................................... 3

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) .............................................................................................. 2, 6

*United States v. Chung*,
    622 F. Supp. 2d 971 (C.D. Cal. 2009) ...................................................................... 4

*W. Coast Hotel Co. v. Parrish*,
    300 U.S. 379 (1937) .................................................................................................. 4

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT                                    - ii -                              28418\5146282.5
CASE NO. 4:15-CV-1046 YGR

*Zemel v. Rusk*,
    381 U.S. 1 (1965) ................................................................................................................ 4

**FEDERAL STATUTORY AUTHORITIES**

5 U.S.C.
    § 551(1)(B) ........................................................................................................................ 4

28 U.S.C.
    § 332 .................................................................................................................................. 5
    §§ 351–362 ........................................................................................................................ 5
    § 354(a)(3)(A) ................................................................................................................... 5
    § 355(b)(1) ..................................................................................................................... 5, 7
    § 357 .................................................................................................................................. 2
    § 358 ........................................................................................................................... 1, 2, 7
    § 360 ........................................................................................................................ *passim*
    § 372 .................................................................................................................................. 5

**STATE STATUTORY AUTHORITIES**

District of Columbia Code
    § 11-1527 ........................................................................................................................... 6
    § 11-1528 ........................................................................................................................... 6

Kentucky Superior Court Rules
    4.130 .................................................................................................................................. 6

**CONSTITUTIONAL PROVISIONS**

Delaware Constitution
    Article 4, § 37 ................................................................................................................... 6

**OTHER AUTHORITIES**

Braithwaite, *Who Judges the Judges?* American Bar Foundation (1971) ................................ 5, 6

Edwards, *Regulating Judicial Misconduct and Divining 'Good Behavior' for Federal Judges*, 87 Mich. L.R. 765 (1989) ................................................................................ 5

Hellman, *Judges Judging Judges*, 28 Just. Sys. J. No. 3 426 (2007) ........................................... 5

Marcus, *Who Should Discipline Federal Judges, and How?*, 149 F.R.D. 375 (1993) ................ 5

Wright and Miller, 16 Fed. Prac. & Proc., Juris. § 3939 (3d ed.) .................................................. 5

# INTRODUCTION

The analytical framework employed in *Press-Enterprise II* demonstrates why Plaintiffs do not have a right of access to emails gathered in the course of the judicial misconduct investigation into Judge Cebull, notwithstanding that the investigation is concluded and resulted in a finding that Judge Cebull violated disciplinary rules. (1) There is no historical right of access to records gathered in the course of a judicial misconduct proceeding: formal misconduct proceedings are relatively new and do not reflect the kinds of centuries-long and uniform practices that have led the Supreme Court to find a qualified First Amendment right of access to criminal trials and certain related proceedings. (2) When Congress enacted 28 U.S.C. section 360, it determined what will and will not facilitate effective functioning of judicial misconduct proceedings. In creating the first, formal procedures for discipline of federal judges, Congress carefully considered what should be made public and what should not, and provided for ample public disclosure while also mandating that some materials gathered during the investigative phase, including materials like the emails now at issue, shall remain confidential. This balance ensures that complainants, witnesses and persons who may have information relating to the investigation need not fear potential current or future retaliation or other adverse consequences from participating and cooperating. Here, therefore, neither section 360 nor the FOIA and its judiciary exemption abridge any right of access to the emails selected by the Ninth Circuit Special Committee and its counsel.

# ARGUMENT

## I. THERE IS NO RIGHT OF ACCESS UNDER *PRESS-ENTERPRISE II*

In *Press-Enterprise II*, the Supreme Court addressed whether, under the First Amendment, a California state trial court could close a preliminary hearing (to determine whether probable cause existed to bind a criminal defendant for trial) in order to protect the rights of the accused. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7 (1986).[1] The Court explained that "[i]n

---

[1] While *Press-Enterprise II* addressed proceedings in a criminal case, and some courts have reached the same result in civil cases, judicial misconduct matters are distinct. They do not involve an adversarial process whereby a plaintiff or state prosecutes a case against a defendant judge. Judicial Councils are not required to grant to complainants the right to compel witnesses and documents or to even appear at proceedings conducted by investigating

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT                - 1 -                28418\5146282.5
CASE NO. 4:15-CV-1046 YGR

cases dealing with the claim of a First Amendment right of access to criminal proceedings," two related factors are at issue: "whether the place and process have historically been open to the press and general public," and "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8.[2]

The Court concluded that a First Amendment right of access attached, noting a long-established and "near uniform practice of state and federal courts" of openness to preliminary hearings. *Id.* at 10. This finding was in line with an earlier right of access case, *Richmond Newspapers*, in which the Court held the First Amendment right of access applied to a criminal trial because of the tradition of open trials in England and colonial America—a "long history" that served as the "backdrop" against which the First Amendment was adopted. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980). As to the second factor, the *Press-Enterprise II* Court found that preliminary hearings in California functioned like and were conducted in the same manner as criminal trials, making applicable the rationale of the Court's rulings that criminal trials and jury selection in such trials should be open. *Press-Enterprise II*, 478 U.S. at 11-12 (citing *Richmond Newspapers*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) and *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press-Enterprise I*")). Likewise, "the preliminary hearing is often the final and most important step in the criminal proceeding" and the only opportunity for the public to witness the judicial

---

panels. 28 U.S.C. § 358(b). Complainants or judges aggrieved by a Judicial Council's action have no appeal as of right. 28 U.S.C. § 357. Judicial misconduct proceedings are given unique docketing numbers, *see* Judicial Conduct Rule 8(a), and are not maintained on the CM/ECF website. Judicial misconduct files are maintained by the Circuit Executive for the Ninth Circuit separately from the records of Court of Appeals cases. Thus, Catterson does not concede that *Press-Enterprise II's* case-centric framework is appropriate here. *First Amendment Coalition v. Judicial Inquiry & Review Bd.*, 784 F.2d 467, 472 (3d Cir. 1986) ("[C]ases defining a right of access to trials are, at best, of limited usefulness in the context of the fundamentally different procedures of judicial disciplinary boards."); *and see id.* at 473 ("'presumption of openness' gleaned from the history of criminal trials surveyed in *Richmond Newspapers* lacks force"); *see also Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (First Amendment does not mandate any "special" "right of access to government-controlled sources of information").

[2]   Even if these factors indicate a right of access, such a right is not absolute in that other interests may override the First Amendment right of access. *Id.* at 13-14; *Courthouse News Serv. v. Planet*, 750 F.3d 776, 792 (9th Cir. 2014) ("There may be limitations on the public's right of access to judicial proceedings.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT. TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- 2 -
28418\5146282.5

process. *Id.* at 12.³

The right to access criminal proceedings recognized in *Press-Enterprise II* is more narrow than the right to publish information that one already has, a doctrinally different First Amendment right. *First Amendment Coalition*, 784 F.2d at 471-72, 477 (differentiating between "the broader right of free speech" and "simpl[e] access"). Thus, access to a proceeding may be permissibly prohibited even where publication of information relating to the proceeding by one who has such information in some instances may not. *Id.* at 471-72 ("[P]ublication may not be constitutionally prohibited even though access to the particular information may be properly denied."); *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 837 (1978) (whether press, which was stranger to judicial misconduct proceeding, may be subjected to criminal sanctions for divulging accurate information about the proceeding is a distinct inquiry from whether state may keep proceedings confidential; rejecting state's argument that state's interests justify punishment for publication by press). While *Landmark Communications* addressed publication by a stranger to a confidential proceeding, other cases have addressed publication by parties to such proceedings. *Kamasinski v. Judicial Review Council* is one such case—it addressed the right of publication by a party to a confidential misconduct proceeding, not the right of access—and thus is of limited guidance here. *See Kamasinski v. Judicial Review Council*, 44 F.3d 106, 110-11 (2d Cir. 1994) (First Amendment permits ban on disclosure of fact that complaint has been filed or testimony given and on information obtained through interactions with misconduct board); *see also First Amendment Coalition*, 784 F.2d at 479 (state may bar witness, board member, employee, or counsel from disclosing proceedings before the board, but cannot bar witness from disclosing his own testimony). In this matter, where plaintiffs seek access to confidential investigatory files, this Court should hold that plaintiffs' "'right to speak and publish does not carry with it the unrestrained right to gather information.'" *First Amendment Coalition*, 784 F.2d at 474 (quoting

---

³ Some courts have found a First Amendment right of access to civil trials, in part because they, like criminal trials, have a long and well-established, centuries-old history of public openness. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1068-69 (3d Cir. 1984) (noting authorities as early as 1681 establishing open civil trials). The Ninth Circuit, however, has not recognized a First Amendment right of access for civil trials. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- 3 -
28418\5146282.5

*Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965) (Warren, C.J.)).

### A. Plaintiffs Bear The Burden Of Demonstrating A First Amendment Right Of Access

Section 360 mandates the confidentiality of the emails at issue. 28 U.S.C. § 360. FOIA also exempts from public access emails generated within the judiciary (such as those at issue), as the courts are not a public agency to which FOIA applies. 5 U.S.C. § 551(1)(B). Only if section 360 and FOIA are found to be unconstitutional, therefore, can Plaintiffs claim a First Amendment right of access to the emails in the investigative file, which were selected and reviewed during the misconduct investigation.[4] Because section 360 and FOIA are presumed constitutional, and because Plaintiffs assert a purported First Amendment right of access, Plaintiffs bear the burden of establishing that right. *See Adkins v. Children's Hosp. of the D.C.*, 261 U.S. 525, 544 (1923) (statutes entitled to "every possible presumption" in favor of validity) (*overruled on other grounds in W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 397 (1937)); *United States v. Chung*, 622 F. Supp. 2d 971, 973 (C.D. Cal. 2009) ("A statute is presumed constitutional."). This analysis is consistent with *First Amendment Coalition*, which placed the burden of establishing a right of access on the plaintiffs. 784 F.2d at 475 (referring to plaintiffs' "particularly heavy" burden); *id.* at 477 (plaintiffs "failed to demonstrate unconstitutionality of the state procedure").

### B. There Is No Long-Standing Historical Practice Of Openness

When the *Press-Enterprise II* analysis is employed, it is beyond dispute that judicial misconduct proceedings have not historically been open: "These administrative proceedings, [judicial disciplinary boards,] unlike conventional criminal and civil trials, do not have a long history of openness." *First Amendment Coalition*, 784 F.2d at 472; *id.* at 479 ("[B]ecause there is no tradition or history of access to the documents under consideration, there is simply no right of access to them") (Becker, J., concurring in part). For the majority of the country's history, there were no formal procedures and entities to administer alleged judicial misconduct; impeachment and the related procedures of address and recall were the only formal mechanisms to address

---

[4] As pointed out in Catterson's Reply, Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss was notably silent on section 360 (and *Press-Enterprise II*) and focused instead on FOIA.

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- 4 -
28418\5146282.5

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1    judicial misconduct. *See* Braithwaite, *Who Judges the Judges?* American Bar Foundation, at 12-
2    13 (1971); Hellman, *Judges Judging Judges*, 28 Just. Sys. J. No. 3 426, 426 (2007) ("For most of
3    the nation's history, the only formal procedure for dealing with misconduct by federal judges was
4    the cumbersome process of impeachment. That era ended with the enactment of the Judicial
5    Councils Reform and Judicial Conduct and Disability Act of 1980.").[5]

6    Prior to the Judicial Councils Reform and Judicial Conduct and Disability Act, the federal
7    judiciary employed non-public, largely informal discipline, including through the Judicial
8    Councils, to address issues not warranting impeachment. *See* Edwards, *Regulating Judicial*
9    *Misconduct and Divining 'Good Behavior' for Federal Judges*, 87 Mich. L.R. 765, 788, 792-93
10   (1989) (noting federal courts employed informal discipline before Judicial Misconduct Act in
11   1980); Marcus, *Who Should Discipline Federal Judges, and How?*, 149 F.R.D. 375 (1993)
12   ("Before 1981, discipline of federal judges short of impeachment was handled as part of the
13   general administrative responsibilities of the Judicial Councils of the various circuits under
14   28 U.S.C. § 332."); *and see* Wright and Miller, 16 Fed. Prac. & Proc., Juris. § 3939, Judicial
15   Councils, (3d ed.) at 911 ("The role of the judicial councils in matters of judicial misconduct or
16   disability was regularized by extensive amendments of 28 U.S.C.A. § 372, now transferred to
17   §§ 351–362, that began with the Judicial Councils Reform and Judicial Conduct and Disability
18   Act in 1980.").

19   The Ninth Circuit in November 1978 adopted basic procedures for processing misconduct
20   complaints under 28 U.S.C. section 332. *In re Charge of Judicial Misconduct*, 593 F.2d 879, 880
21   (9th Cir. 1979). Those procedures permitted a Chief Judge to close a complaint if he or she was
22   assured "that appropriate corrective action has been taken," or to appoint a committee to
23   investigate. *Id.* n.1. The Committee's work and the documents it received were to remain

---

[5] The *First Amendment Coalition* court also rejected the notion that the history of impeachment proceedings should apply to judicial misconduct proceedings, because the state judicial misconduct process in that case was designed to supplement, not replace, the impeachment process. *First Amendment Coalition*, 784 F.2d at 472-73. The federal process is also designed to supplement but not replace impeachment proceedings. *See* 28 U.S.C. § 354(a)(3)(A) (barring removal of Article III judge); *id*. at § 355(b)(1) (Judicial Conference can certify determination that impeachment is warranted to House of Representatives, but House of Representatives takes whatever action it deems necessary).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT                - 5 -                    28418\5146282.5
CASE NO. 4:15-CV-1046 YGR

confidential. *Id.* ("All papers received by, and proceedings and reports of, the committee shall remain confidential."). The Ninth Circuit Council was not obligated to make its final determination public, and was required only to "notify the complainant in a manner it deems appropriate about the disposition of the complaint." *Id.*

To the extent states' practices are relevant, the states began adding a variety of new formal procedures for handling alleged judicial misconduct only in the 1960's. Braithwaite, *Who Judges the Judges?*, at 12-13. As the states established these new procedures, numerous states determined to preclude access to underlying documents. *See, e.g.*, Del. Const. Art. 4, § 37 (making confidential "[a]ll hearings and other proceedings of the Court on the Judiciary" and "all records except a final order of removal or retirement"); D.C. Code §§ 11-1527, 11-1528 (Commission must file order of retirement or removal, but "hearings before the Commission, the record thereof, and materials and papers filed in connection with such hearings shall be confidential"); Ky. SCR 4.130 (providing that after time to answer notice of formal proceedings, except the notice and subsequent pleadings filed before Commission, "[a]ll papers and information obtained by or on behalf of the Commission shall be confidential" as well as "the Commission's internal papers such as investigative reports and staff memoranda, and similar matters").[6]

It is clear the historical record underlying application of judicial misconduct proceedings falls short of the kind of rich historical record the Supreme Court relied on to find a First Amendment right of access in a wholly different context. *Richmond Newspapers*, 448 U.S. at 565-69 (finding right of access to criminal trial because conclusive history of open trials starting in England prior to Norman Conquest and after, including "reports of the Eyre of Kent, a general court held in 1313–1314," and in colonial America when "our organic laws were adopted"); *id.* at 576 (First Amendment prohibits "government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted"); *Press-Enterprise II*,

---

[6] Plaintiffs tacitly conceded that the judicial deliberative privilege shields the investigatory and adjudicatory work of the Ninth Circuit Judicial Council and its designated Special Committee. *See* Plaintiffs' Consolidated Opp., Docket No. 27 (not addressing argument); Catterson's Reply, Docket No. 30, at 6-7.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- 6 -
28418\5146282.5

478 U.S. at 10 (right of access attached to criminal preliminary hearing because "[f]rom [the 1807 trial of Aaron Burr for treason] until the present day, the near uniform practice of state and federal courts has been to conduct preliminary hearings in open court").

### C. Further Public Access Would Not Here Play A Substantial Positive Role In The Functioning Of Judicial Misconduct Proceedings

The Cebull investigation was conducted under the leadership of an experienced judicial officer pursuant to a carefully-enacted statutory scheme, one in which Congress thoughtfully balanced the benefits of confidentiality with the need for public awareness and involvement. As a result, extensive information is already available to the public regarding the adjudication of the misconduct complaints against Judge Cebull and the evidence underlying the determinations made by the Ninth Circuit Judicial Council.

Congress has determined that public access to investigatory materials would not positively affect judicial misconduct proceedings. Congress' consideration of the degree to which such materials should be disclosed in federal judicial misconduct investigations was reflected in a careful balancing of factors that ensure a high degree of public disclosure and transparency. "The publication requirement in the Act [section 360(b)] and in the JCD Rules balances the need to preserve the confidentiality of the identity of a judge who is subject to a complaint of misconduct or disability to which no merit has yet been ascribed, with the need for transparency and public confidence once the Circuit Judicial Council has adjudicated the matter on the merits." *In re Judicial Misconduct*, 751 F.3d 611, 617 (U.S. Jud. Conf. 2014).[7] Congress determined that the public need not have access to the "papers, documents, and records of proceedings related to investigations," subject to certain exceptions. 28 U.S.C. § 360(a). The Court should give weight to Congress' determination of the proper balance. *See First Amendment Coalition*, 784 F.2d at

---

[7] For example, Congress affords the public a notice and comment period on any rule for the conduct of judicial misconduct proceedings that may be issued by a Judicial Council or the Judicial Conference, and such rules are to be a matter of public record. 28 U.S.C. § 358(c). Each written order issued by a Judicial Council, the Judicial Conference, or a standing committee, must be made public and must, unless justice dictates otherwise, include the "written reasons therefor." *Id.* at § 360(b). If, as the result of an investigation, a Judicial Council or the Judicial Conference determines that consideration of impeachment is warranted, it sends its determination and the record of proceedings to the Clerk of the House of Representatives, who "shall make available to the public the determination and any reasons for the determination." *Id.* at § 355(b)(1).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- 7 -
28418\5146282.5

474-75 (where state confronted question of public access, finding presumption of validity weighs heavy, and "state's determination [should] be upheld unless it is found to transgress a clear constitutional prohibition"); *and see id.* at 477.

The balance Congress struck in section 360 is evident here in light of the information already available to the public, including widespread public reporting of Judge Cebull's conduct, *In re Judicial Misconduct*, 751 F.3d at 613 ("Judge Cebull's forwarding of the email in question was widely reported in the local and national press. The ensuing notoriety was extensive. . . ."); *id.* ("There was also a substantial response from the public, and the story was widely reported in the local and national press."), and the U.S. Judicial Conference Order quoting Judge Cebull's most infamous email and publishing the Ninth Circuit Judicial Council's March 15 Order. *See id.*

That March 15 Order details the Ninth Circuit Judicial Council's process, including: identifying the formation of and members of a Special Committee (*id.* at 619-20); the appointment of counsel to the Committee (*id.*); the location and review of email archives to create "snapshots" of certain dates (*id.* at 620); the interview of over twenty-five witnesses, including court staff and recipients of the Judge Cebull's email, and a summary of the information they provided (*id.* at 621); and the interview of Judge Cebull himself (*id.* at 622).

The March 15 Order likewise explains the process the Council employed to analyze and determine that Judge Cebull's rulings did not appear to be the result of bias. *Id.* at 621-22. As the Order explains, the Council's Special Committee obtained data on Judge Cebull's sentencing practices from 2005 to the then-present, broken down by race, and demonstrating the number of sentences below, within, or above sentencing guidelines. *Id.* at 622. It did not find evidence of bias against nonwhite defendants. *Id.* It also reviewed the Ninth Circuit's opinions and memoranda reviewing Judge Cebull's appealed-from orders, and found no troubling reversals nor patterns in the types of cases that were appealed. *Id.* The Order details that the Special Committee statistically analyzed Judge Cebull's disposition of labor, civil rights, and prisoner rights case over a five year period, and did not see evidence of bias. *Id.* Finally, the Order describes the nature of the emails and provides a detailed discussion of the standards the Ninth Circuit's Judicial Council applied, and its ultimate decision and the supporting

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- 8 -
28418\5146282.5

rationale. *Id.* at 620-21, 623-25.

Sound policy reasons and logic support Congress' determination, which allowed the extensive disclosure outlined above. Confidentiality over underlying documents facilitates the process because it encourages witnesses to testify and produce documents and information without fear for how it may later be used or disseminated. *See Clemmer v. Off. of C. J.*, 544 F. Supp. 2d 722, 728 (N.D. Ill. 2008) ("Individuals who participate in such confidential conversations 'must be able to predict with some degree of certainty whether particular discussions will be protected.'") (citation omitted). While the investigation here is concluded, finding a First Amendment right of access to the emails in the investigative file would threaten the trust placed in the investigative process because of its confidentiality and harm future investigations. Finding a right of access would alter how Judicial Councils investigate and open the door nationwide to potential access going forward, thereby deterring participation and cooperation insofar as future witnesses might be deterred from producing relevant evidence for fear that the extent of their cooperation would be revealed and thus open the witnesses to potential retribution by others or press attention.[8] Congress' carefully crafted judicial misconduct scheme also reflects the balanced determination that judges are in the best position to investigate potential judicial misconduct (with the safeguards of confidentiality for the investigative process), and that the need for public oversight that animates presumptive openness in criminal (and civil) cases applies with less force.

## II.    THE COMPLAINT FAILS TO PLEAD AGAINST ANY DEFENDANT

For the reasons discussed above, Plaintiffs cannot meet their burden under the *Press-Enterprise II* test. Accordingly, the Complaint fails to state a claim against either the Committee on Judicial Conduct and Disability ("CJCD") or Catterson. Proof of this pleading deficiency is further illustrated by a close reading of the relief sought by Plaintiffs. Plaintiffs' First Cause of

---

[8]   Even the *Press-Enterprise II* Court noted that "it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly" such as the "classic example" of "'the proper functioning of our grand jury system [which] depends upon the secrecy of grand jury proceedings.'" *Press-Enterprise II*, 478 U.S. at 8-9 (quoting *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218 (1979)). Indeed, many of the confidentiality safeguards animating grand jury secrecy apply with equal force to judicial misconduct investigations. *See Douglas*, 441 U.S. at 219 n. 10.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT
CASE NO. 4:15-CV-1046 YGR
- 9 -
28418\5146282.5

Action seeks declaratory relief and a finding that section 360 and the FOIA federal court-exemption are unconstitutional.  Compl. ¶¶ 25-33 (describing actions of the "Committee" or "Committee on Judicial Conduct").  Plaintiffs' Second Cause of Action seeks injunctive relief through an order that the CJCD create, manage, and maintain a system so that Judge Cebull's emails and the emails of all federal judges can be produced in connection with FOIA requests or litigation-related discovery.  *Id.* at ¶¶ 34-41.  None of these causes of action seek relief from Catterson.  Plaintiffs' Prayer for Relief is similarly silent as to Catterson.  Moreover, in her role as Circuit Executive, Catterson is entitled to quasi-judicial immunity for the reasons discussed in Catterson's previous briefing.

## CONCLUSION

Plaintiffs may not obtain access simply because they believe as a matter of policy Congress should have struck a different balance.  As the *First Amendment Coalition* court summarized:  courts must not "'confuse what is 'good,' 'desirable,' or 'expedient' with what is constitutionally commanded by the First Amendment'" where concerns of access "have been accommodated up to the point that the state has determined them to be outweighed by more compelling interests."  *First Amendment Coalition*, 784 F.2d at 475 (citation omitted); *and see id.* at 473-74; *Press-Enterprise II*, 478 U.S. at 9.  For this reason and the reasons set forth above and in Catterson's prior briefing, this Court should dismiss the Complaint with prejudice.

Dated: November 16, 2015                                         FARELLA BRAUN + MARTEL LLP


                                                                 By:   */s/ Douglas R. Young*
                                                                        Douglas R. Young

                                                                 Attorneys for Defendant
                                                                 Cathy A. Catterson

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPPLEMENTAL BRIEF OF CATTERSON ISO MOT.
TO DISMISS COMPLAINT                                - 10 -                           28418\5146282.5
CASE NO. 4:15-CV-1046 YGR