UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN ADAMS, ET AL.,

         Plaintiffs,

   v.

COMMITTEE ON JUDICIAL CONDUCT & DISABILITY, ET AL.,

         Defendants.

Case No.  15-cv-01046-YGR

ORDER GRANTING MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND

Re: Dkt. Nos. 25, 26

Plaintiffs John Adams and Shane Castle ("Plaintiffs") bring this action against Defendants Committee on Judicial Conduct and Disability of the Judicial Conference of the United States ("the Committee") and Cathy A. Catterson, in her official capacity as Circuit and Court of Appeals Executive to the United States Courts for the Ninth Circuit ("Catterson").  The Committee and Catterson each bring motions to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and each joins in the other's arguments in their respective motions.  (Dkt. Nos. 25 and 26.)  The Committee argues that the Court does not have subject matter jurisdiction over Plaintiffs' claim for violation of the First Amendment because it is completely barred by sovereign immunity, lack of standing, and judicial immunity.  The Committee further argues that both Plaintiffs' claims for violation of the First Amendment and for relief under the Federal Records Act are without substantive merit on the face of the complaint.  Catterson's motion raises additional arguments for dismissal based upon quasi-judicial immunity and the judicial deliberative privilege.

Having carefully considered the papers submitted, the supplemental briefing, the arguments, and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS IN PART** the Motions to Dismiss as set forth herein **WITHOUT LEAVE TO AMEND**.  The Court finds that Plaintiffs have not stated a viable First Amendment violation, which requires dismissal of the complaint under Rule 12(b)(6), as well as under Rule 12(b)(1) on sovereign immunity grounds.  Moreover, the Court finds that it lacks jurisdiction over the claims against the

Committee based upon lack of standing and absolute judicial immunity; and over the claims against Catterson based upon quasi-judicial immunity.  The Court further finds that any amendment of the complaint would be futile given the legal bases for dismissal.

## I.   BACKGROUND

The complaint alleges as follows: Plaintiff John Adams, a member of the press corps residing in Helena, Montana, is a reporter who received a copy of the email that spawned the complaints and investigation concerning Judge Richard F. Cebull, then-Chief Judge of the United States District Court of Montana.  (Complaint ¶¶ 4, 8, 10.)  Adams interviewed Judge Cebull on February 29, 2012, and alleges that Judge Cebull admitted to sending the email in question and admitted it was sent from his Court-issued email address.  (*Id.* at ¶ 9.)  Adams authored a news story about the email incident and Judge Cebull's response.  (*Id.* at ¶ 19.)  Plaintiff Shane Castle is the executive director of Big Sky Investigative Reporting, a nonprofit investigative media organization in Montana.  (*Id.* at ¶ 5.)

### A.   Complaint Against Judge Cebull

Complaints were filed and an investigation was launched as to misconduct by Judge Cebull.  (Complaint ¶ 10; *see also In re Judicial Misconduct*, 751 F.3d 611 (U.S. Jud. Conf. 2014) (Memorandum of Decision filed January 17, 2014, by the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States on Proceedings In Review of the Order and Memorandum of the Judicial Council of the Ninth Circuit on Judicial Council matter numbers 09-12-90026 and 09-12-90032).)  The Committee's investigation revealed that Judge Cebull sent "hundreds" of emails with inappropriate comments related to race, sex, national origin, religion, and sexual orientation, as well comments on political issues that might come before the court and showing disdain for liberal political leaders.  (Complaint at ¶ 13; *In re Judicial Misconduct*, 751 F.3d at 616.)

The Ninth Circuit Judicial Council initially issued a decision on the complaints on March 15, 2013 ("March 2013 Decision"), ordering sanctions against Judge Cebull including a public reprimand, a 180-day suspension of assignment of new cases, and required training course on judicial ethics and bias, as well as a requirement that he give a public apology approved by the Judicial Council.  *In re Judicial Misconduct*, 751 F.3d at 614.  On April 2, 2013, the Ninth Circuit

United States District Court
Northern District of California

Judicial Council announced that Judge Cebull had decided to retire effective May 3, 2013.  *Id.* at 615.  The Ninth Circuit Judicial Council vacated the March 2013 Decision, and reissued an amended, much-abbreviated July 2, 2013 order.  Upon review, the Committee subsequently ordered that the March 2013 Decision be published and adopted as the final order disposing of the complaints on the merits.  *Id.* at 618.  The ultimate decision of the Committee was issued January 17, 2014.

        **B.**       **Plaintiffs' Request and the Instant Complaint**

Plaintiffs allege that, on or about January 13, 2015, they sought copies of the emails written by Judge Cebull by request to Defendant Catterson, and were denied copies of those emails by "Defendants."  (Complaint ¶¶ 4, 5, 14.)  They allege that "Defendants" denied the requests based upon 28 U.S.C. section 360 and an exemption for "the courts of the United States" under the Freedom of Information Act, 5 U.S.C. section 551(1)(B) (the "FOIA").  (*Id.* at ¶¶ 14, 18.)  Plaintiffs allege that "Defendants" are "a section of the United States Government" and have no compelling interest justifying a prohibition on release of "information contained in the investigative file including the emails independently created or received by Judge Cebull," in light of the completion of the investigation, and the finding that the complaints against Judge Cebull had merit. (*Id.* at ¶¶ 14, 15.)

Plaintiffs allege that "the Defendant Committee" has acted unlawfully by refusing to produce Judge Cebull's emails, since they are not private or confidential documents.  (Complaint ¶ 22.)  They further allege that, to the extent "Defendants" are relying on statutes to prevent dissemination and review of the discriminatory emails at issue, those statutes are unconstitutional in that they "abridge the Freedom of the Press guaranteed by the First Amendment."  (*Id.* at ¶ 22.)  Finally, they allege that, by withholding access to the discriminatory emails, and thereby preventing these reporters' stories, "Defendants" are abridging freedom of the press.  (*Id.* at ¶¶ 23, 24.)

Based on these allegations, Plaintiffs bring claims for declaratory and injunctive relief for: (1) violation of the First Amendment; and (2) violation of 44 U.S.C. section 3101, the Federal Records Act.  Specifically, Plaintiffs seek: (i) a declaration that section 360(a) and the FOIA's exemption for the judiciary is unconstitutional on its face and as applied to Plaintiffs and other

United States District Court
Northern District of California

members of the press; (ii) an order to preserve all emails written or received by Judge Cebull containing discriminatory or bigoted statements or content; (iii) a declaration that Judge Cebull's emails are subject to disclosure to the press; (iv) an order mandating that the Committee create, manage and maintain a system by which the emails of all Federal Judges, and Judge Cebull's emails in particular, are maintained so that they may be produced in the future in connection with a FOIA request and/or a litigation-related discovery order; and (v) nominal damages and costs of litigation.

## II.    LEGAL STANDARDS APPLICABLE TO THE MOTIONS

### A.    RULE 12(B)(1) STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.,* 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the allegations pleaded in the complaint. *See Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction.  *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal.  *See Wolfe,* 392 F.3d at 362.

Where both jurisdictional and merits grounds are presented in a motion, the Court looks to the jurisdictional issues first.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

### B.    RULE 12(B)(6) STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  "Dismissal can be

based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).

## III. DISCUSSION

### A. MOTIONS TO DISMISS FOR LACK OF JURISDICTION – RULE 12(B)(1)

Both Defendants move to dismiss for lack of jurisdiction based upon sovereign immunity and lack of standing. In addition, the Committee moves on grounds of absolute judicial immunity and Catterson moves on grounds of quasi-judicial immunity. The Court addresses each of these four bases below.

#### 1. Sovereign Immunity

Plaintiffs, as the party invoking federal court jurisdiction, bear the burden to establish that such jurisdiction exists. Here, Defendants invoke sovereign immunity as a bar to jurisdiction. The United States, its agencies, and its officers may not be sued without express consent and "the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206,

212 (1983); *Munns v. Kerry*, 782 F.3d 402, 412 (9th Cir. 2015).  Congress alone has the authority to determine whether and under what circumstances to waive the sovereign immunity of the United States. *United States v. Testan,* 424 U.S. 392, 399 (1976).  Thus, Plaintiffs bear the burden of establishing that a waiver of immunity exists.  *See Levin v. United States*, 663 F.3d 1059, 1063 (9th Cir. 2011) (a plaintiff "'bears the burden of pointing to such an unequivocal waiver of immunity'") (quoting *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006) (burden of establishing federal jurisdiction is borne by the party asserting it at the time it is challenged).

Defendants cite authority that the judicial councils of the circuit courts are entitled to sovereign immunity, and that the statutes establishing them have no express waiver of that immunity.  *See Shemonsky v. Vanaskie*, No. CIV. 04CV2759, 2005 WL 2031140, at *4 (M.D. Pa. Aug. 16, 2005) (citing 28 U.S.C. § 332 and finding no express waiver of sovereign immunity for suits against the Third Circuit Judicial Conference); *Danos v. Jones*, 721 F. Supp. 2d 491, 495 (E.D. La. 2010) *aff'd,* 652 F.3d 577 (5th Cir. 2011) (members of the Judicial Council of the Fifth Circuit are federal officials protected by sovereign immunity).

Plaintiffs do not contest that Defendants ordinarily would be entitled to sovereign immunity as an arm of the federal government, but instead argue that they have waived sovereign immunity with respect to requests for documents by invoking the FOIA as a reason for non-production.  (Oppo. at 2:24-3:12.)  Plaintiffs' waiver arguments fail for two reasons.

First, Plaintiffs posit that, because their request cited FOIA, and the denial of that request also cited FOIA, it follows that the FOIA's statutory waiver of sovereign immunity gives the Court jurisdiction here.  The argument fails, in part, because the request was rejected on the basis that the FOIA specifically *exempts* the judicial branch (and the legislative branch) from its scope. 5 U.S.C. § 551(1) ("[f]or the purpose of this subchapter—'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—(A) the Congress; (B) the courts of the United States…."); *see also Warth v. Dep't of Justice*, 595 F.2d 521, 523 (9th Cir. 1979) ("[If] court documents [were] deemed 'agency records' for purposes of the FOIA when held by the DOJ, the Act would encroach upon the authority of the courts to control the dissemination of its documents to the public.  We are

United States District Court
Northern District of California

1    convinced that Congress intended to preclude such encroachment by exempting the courts from

2    the Act's disclosure requirements."); *Banks v. Dep't of Justice*, 538 F. Supp. 2d 228, 231-32

3    (D.D.C. 2008) (the United Stated Probation Office and the Administrative Office of the United

4    States Courts are arms of the federal courts and therefore not subject to the FOIA).  Defendants

5    cannot be said to have waived their sovereign immunity simply by invoking their exemption from

6    the FOIA.  The waiver provision Plaintiffs cite, 5 U.S.C. section 702 of the Administrative

7    Procedure Act, is likewise limited to agencies in the executive branch only, expressly excluding

8    the courts and the Congress.  5 U.S.C. § 701(b) ("For the purpose of this chapter—(1) "agency"

9    means each authority of the Government of the United States, whether or not it is within or subject

10   to review by another agency, but does not include—(A) the Congress; (B) the courts of the United

11   States…."); *cf. E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1086 (9th Cir. 2010) (Section

12   702 of the APA establishes an "unqualified waiver of sovereign immunity in actions seeking

13   nonmonetary relief against legal wrongs for which governmental agencies are accountable").

14   Thus, section 702 does not provide a basis for a waiver of sovereign immunity as to either

15   Catterson, an executive of the federal circuit court, nor to the Committee, comprised of members

16   of the Judicial Conference of the United States Courts.  *See Novell, Inc. v. United States*, 109 F.

17   Supp. 2d 22, 25 (D.D.C. 2000) (finding the Administrative Office of the Courts immune from suit

18   because "the 'courts' are excluded from the terms of the APA, and this exclusion extends to the

19   judicial branch generally"); *In re Fid. Mortgage Investors*, 690 F.2d 35, 38 (2d Cir. 1982) (finding

20   that the Judicial Conference is not covered by section 702 since "it is clear that Congress intended

21   the entire judicial branch of the Government to be excluded from the provisions of the

22   Administrative Procedure Act") (citing *Wacker v. Bisson*, 348 F.2d 602, 608 n.18 (5th Cir. 1965)).

         Second, Plaintiffs argue that "sovereign immunity does not bar suit for specific relief

23   against a government official . . . if the official commits an unconstitutional act because the

24   'statute or order conferring power upon the officer to take action is claimed to be

25   unconstitutional.'"  *Al-Nashiri v. MacDonald*, 741 F.3d 1002, 1008 (9th Cir. 2013) (quoting

26   *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949)).  "Suits that

27   charge federal officials with unconstitutional acts are not barred by sovereign immunity" since the

28   federal official is considered to be acting outside an official capacity (*i.e.*, acting *ultra vires*) if the

actions are unconstitutional. *United States v. Yakima Tribal Court*, 806 F.2d 853, 859 (9th Cir. 1986) (citing *Larson,* 337 U.S. 690, 696-97).[1]  Because the merits of the Constitutional challenge merge with the sovereign immunity issue in this regard, the Court conducts an analysis of viability of the constitutional claim under Rule 12(b)(6) grounds, *infra*, at Section III.B. *Cf. Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1032 (9th Cir. 2013) (reaching the challenge on the merits where "the question of '[w]hether the *Larson–Dugan* exception' applied 'merge[d] with the question on the merits.'").  Ultimately, the Court concludes that Plaintiffs have not stated a Constitutional violation and the *ultra vires* exception does not apply.  Consequently, the motion to dismiss on sovereign immunity grounds is **GRANTED**.

**2. Lack of Standing**

*a. Injury In Fact*

The Committee and Catterson contend that Plaintiffs lack standing because they base their claims on speculative injuries to third parties.[2]  They contend that Plaintiffs are trying to show injury in fact by relying entirely on hypothetical injury to other people.

To establish standing for purposes of injunctive relief, Plaintiffs must show, among other things, "that [they are] under threat of suffering 'injury in fact' that is concrete and particularized" and also that the threatened injury is "actual and imminent, not conjectural or hypothetical….." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  This means that Plaintiffs "must allege a

---

[1] Catterson argues that the Court need not consider the merits of the *ultra vires* exception to sovereign immunity because "the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm."  *State of Wash. v. Udall*, 417 F.2d 1310, 1317-18 (9th Cir. 1969) (discussing *Larson*, 337 U.S. 691 n.11).  She contends that ordering disclosure of the emails would constitute an "intolerable burden" on Defendants, since disclosure of the details of a confidential investigatory process after the fact would decrease witness cooperation in all future investigations, whereas the harm to Plaintiffs would be minimal since a great deal of information was already made public through that same statutory process.  The Court does not find the relative burdens here so clearly established as to foreclose any further consideration of the merits of the *ultra vires* exception.

[2] Catterson actually rephrases the argument somewhat in her joinder, stating that "Plaintiffs lack standing to assert speculative injuries *on behalf of* third parties not before the court." (Dkt. No. 26 at 2:6-7.)  The Court understands the argument to be, as stated by the Committee, one that the Plaintiffs do not have standing for alleged injury to *themselves,* the question essential to determining whether the Court has subject matter jurisdiction.

United States District Court
Northern District of California

distinct and palpable injury to [themselves], even if it is an injury shared by a large class of other possible litigants." *Pony v. County of Los Angeles*, 433 F.3d 1138, 1145 (9th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  One "cannot rest [a] claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499.

Here, Plaintiffs allege that they personally have asked to see the contents of the investigative files and emails.  (Complaint ¶ 14.)  They are both members of the press and, in fact, one is a recipient of the email that broke the story concerning Judge Cebull.  (*Id.* at ¶¶ 4, 5.)  While Plaintiffs purport to bring the action on behalf of "all similarly situated members of the press," they also bring it on their own behalves.  (*Id.* ¶ 4.)  They allege that they "desire to write and publish stories about what they believe was a failure by the Committee to investigate the complaints more fully" and are prevented from doing so because of the denial of their request. (*Id.* at ¶ 23.)

Generally, members of the press have standing to challenge on First Amendment grounds governmental restrictions on information they allege is needed to do their work.  *California First Amendment Coal. v. Calderon*, 150 F.3d 976, 980 (9th Cir. 1998) (coalition of print and broadcast journalists had associational standing to challenge constitutionality of ban on observing lethal injections; injury in fact arose from past news stories and plans for future reporting on the issue); *Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Washington*, 845 F.2d 1513, 1515-16 (9th Cir. 1988) ("the public and the press have a qualified first amendment right of access to pretrial hearings and documents…a common law right of access may extend to documents such as presentence probation reports, provided the requesting party 'make[s] some threshold showing that disclosure will serve the ends of justice' and there is no valid countervailing consideration that supports nondisclosure"); *see also Branzburg v. Hayes,* 408 U.S. 665, 681 (1972) (right of the press to gather news and information is protected by the First Amendment because "without some protection for seeking out the news, freedom of the press could be eviscerated").  While there are limitations on their First Amendment rights to access information, *see, e.g., Branzburg*, 408 U.S. at 684, an allegation that such rights were violated is sufficient to allege injury in fact.  Moreover, "in the First Amendment context, litigants…are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that

the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (internal citations and quotation omitted) (not requiring showing of injury in fact in suit brought by bookseller's association asserting infringement of the First Amendment rights of bookbuyers).

Defendants' motion on grounds of failure to allege an individual injury for purposes of standing is, therefore, **DENIED**.

> ### b.      Fairly Traceable

With respect to standing, the Committee further argues that the acts alleged to have caused Plaintiffs' injury—*i.e.*, denial of access to the emails or investigative files—are not "fairly traceable" to any action of the Committee.  To establish standing, a plaintiff's injury "must be fairly traceable to the challenged action of the defendant." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Here, the Committee contends, the complaint does not allege that any request was made to it, or that it played any part in refusing a request.

The Court agrees the complaint is ambiguous as to whether Plaintiffs made a request of the Committee or only of Catterson.  Thus: Plaintiffs allege that "[the] Committee on Judicial Conduct and Disability of the Judicial Conference of the United States, *by and through its executive Cathy Catterson*[,] refuses to release emails contained in an Investigative File into Judge Richard F. Cebull (Ret.)."  (Complaint ¶ 1, emphasis supplied).  Then, they allege that Catterson is the "Circuit & Court of Appeals Executive to the U.S. Court of Appeals for the Ninth Circuit," not an executive or agent of the Committee.  (*Id.* at ¶ 7.)  Finally, they allege that the Committee is the "*Ninth Circuit* Committee on Judicial Conduct and Disability of the Judicial Conference of the United States" (*id.* at ¶ 6, emphasis added), apparently confusing and conflating the Committee on Judicial Conduct and Disability of the Judicial Conference *of the United States*, on the one hand,

10

United States District Court
Northern District of California

with the *Ninth Circuit* Judicial Council, on the other.[3]  Additional factual allegations state that Plaintiffs' requests to see the investigative files and the emails were made to Catterson, but that "Defendants" denied the requests.  (*Id.* at ¶ 14.)

Accordingly, the Court finds that Plaintiffs have not alleged that their injury is fairly traceable to any conduct of the Committee, at least not with clarity.  The Committee's motion to dismiss under Rule 12(b)(1) for lack of standing is therefore **GRANTED**.  The Court addresses below, in Section IV, the appropriateness of leave to amend as to the grounds upon which the motions are brought.

### 3. Judicial Immunity

The Committee separately argues that it and its member judges are entitled to absolute judicial immunity, depriving the Court of jurisdiction here.  Judges are absolutely immune from civil liability for their judicial acts.  *See Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987) (citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347 (1872) and *Pierson v. Ray,* 386 U.S. 547 (1967)).  To determine whether absolute judicial immunity applies, the allegations must be clear enough to ascertain whether the subject acts were undertaken in the judge's role of resolving and adjudicating issues, rather than administrative, legislative, or executive functions performed by a judge which are not entitled to immunity.  *Cf. Forrester v. White*, 484 U.S. 219, 230 (1988) (judge not entitled to absolute immunity for his decisions to demote and discharge court employee).

---

[3]  The Judicial Conference of the United States is a national policy-making body for the federal courts.  Among other things, the Judicial Conference has authority to "review circuit council conduct and disability orders" filed under chapter 16 of title 28 of the United States Codes, which authority it may exercise "as the Conference, or through a standing committee," *i.e.* Defendant Committee on Judicial Conduct and Disability of the Judicial Conference of the United States.  *See* 28 U.S.C. § 331.  By contrast, each regional circuit court of appeals, including the Ninth Circuit, has its own circuit judicial council charged with making "necessary and appropriate orders for the effective and expeditious administration of justice" within the circuit.  28 U.S.C. § 332.  As one of these panels of judges, the Ninth Circuit Judicial Council is responsible for judicial discipline, formulation of circuit policy, and implementation of policy directives from the Judicial Conference of the United States.  28 U.S.C. § 332(g).

United States District Court
Northern District of California

Here, the allegations of the complaint are, at best, ambiguous as to whether the Committee played any part in denying the request for documents.[4]  In the absence of allegations that the judges of the Committee were acting outside their judicial role, but instead undertook the alleged actions in an administrative, legislative, or executive capacity, absolute judicial immunity would apply.[5]  As stated above, the complaint fails to allege an injury fairly traceable to the conduct of the Committee with clarity.  As a result, the Court also cannot determine whether the alleged actions fall outside the Committee's judicial role.  The motion to dismiss on judicial immunity grounds is therefore **GRANTED**.

### 4.    Quasi-Judicial Immunity

Along the same lines as the foregoing argument, Catterson separately contends that she is immune from suit due to absolute quasi-judicial immunity.  She argues that her alleged denial of Plaintiffs' request to obtain the investigative file and emails was undertaken as part of her quasi-judicial duties to enforce and comply with 28 U.S.C. section 360(a), as well as Rule 23(a) of the Judicial Conduct Rules concerning confidentiality of files related to a complaint.[6]  Catterson states

---

[4] In their opposition, Plaintiffs say that they "clearly were identifying the Committee as one of the defendants denying access to the emails."  (Dkt. No. 27 at 7:22-23.)

[5] The Committee argues that the actions of the judges comprising the Committee were "judicial acts" for which they are immune from liability.  The Court agrees that absolute judicial immunity applies to the actions of the Committee in reviewing the Ninth Circuit Judicial Council's decisions and issuing an order thereon.  However, it is not those actions that give rise to the request for relief here.  Plaintiffs' complaint is focused on the refusal to provide the requested emails.

[6] 28 U.S.C. section 360 provides, in part:

(a) Confidentiality of proceedings.--Except as provided in section 355, all papers, documents, and records of proceedings related to investigations conducted under this chapter shall be confidential and shall not be disclosed by any person in any proceeding except to the extent that--
    (1) the judicial council of the circuit in its discretion releases a copy of a report of a special committee under section 353(c) to the complainant whose complaint initiated the investigation by that special committee and to the judge whose conduct is the subject of the complaint;
    (2) the judicial council of the circuit, the Judicial Conference of the United States, or the Senate or the House of Representatives by

(*cont'd*)

that the Circuit Executive, in compliance with judiciary policy, maintains the orders and reports from judicial misconduct proceedings in a permanent file, separate from other court records, and archives underlying investigation materials for five years after final disposition of the complaint. Citing *Mullis*, 828 F.2d at 1390, and *Sharma v. Stevas*, 790 F.2d 1486 (9th Cir. 1986), Catterson argues that denial of Plaintiffs' request is analogous to a clerk of court denying an improper request for a judge's case notes, and therefore an integral part of the judicial process.  In

---

(…*cont'd*)

> resolution, releases any such material which is believed necessary to an impeachment investigation or trial of a judge under article I of the Constitution; or
> (3) such disclosure is authorized in writing by the judge who is the subject of the complaint and by the chief judge of the circuit, the Chief Justice, or the chairman of the standing committee established under section 331.

28 U.S.C. § 360.  Rule 23 of the Rules of Judicial-Conduct and Judicial-Disability Proceedings, as adopted by the Judicial Conference of the United States (and adopted by the Ninth Circuit April 10, 2008, as amended September 17, 2015) ("Judicial Conduct Rules"), provides, in pertinent part:

> 23. Confidentiality
> (a)      General Rule. The consideration of a complaint by the chief judge, a special committee, the judicial council, or the Judicial Conference Committee on Judicial Conduct and Disability is confidential. Information about this consideration must not be disclosed by any judge or employee of the judicial branch or by any person who records or transcribes testimony except as allowed by these Rules.  A chief judge may disclose the existence of a proceeding under these Rules when necessary to maintain public confidence in the federal judiciary's ability to redress misconduct or disability.
> (b)      Files. All files related to complaints must be separately maintained with appropriate security precautions to ensure confidentiality.
> (c)      Disclosure in Decisions. Except as otherwise provided in Rule 24, written decisions of the chief judge, the judicial council, or the Judicial Conference Committee on Judicial Conduct and Disability, and dissenting opinions or separate statements of members of the council or Committee may contain information and exhibits that the authors consider appropriate for inclusion, and the information and exhibits may be made public.
> (d)      Availability to Judicial Conference. On request of the Judicial Conference or its Committee on Judicial Conduct and Disability, the circuit clerk must furnish any requested records related to a complaint. For auditing purposes, the circuit clerk must provide access to the Committee to records of proceedings under the Act at the site where the records are kept.

United States District Court
Northern District of California

opposition, Plaintiffs argue that Catterson's denial of their request for documents was not an integral part of the judicial process, and is not entitled to absolute quasi-judicial immunity.

"Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis*, 828 F.2d at 1390. The clerk of the court and the Circuit Executive are immune from suit under quasi-judicial immunity when they are engaged in such functions as "[t]he filing of exhibits and the processing of a request to withdraw an appeal[,]… tasks that are necessary to the judicial process." *Ocasio v. Kozinski*, No. C 08-4820JF(PR), 2008 WL 5046288, at *1 (N.D. Cal. Nov. 25, 2008); *see Overton v. Torruella*, 183 F. Supp. 2d 295, 300 (D. Mass. 2001) (Judicial Council was empowered to decide complaints of judicial misconduct, which was a form of adjudication and fell within scope of functions protected by absolute immunity); *see also Miller v. Gammie*, 335 F.3d 889, 895-96 (9th Cir.2003) (judicial immunity extends to individuals performing functions necessary to the judicial process).[7] However, court personnel are not entitled to absolute quasi-judicial immunity for the performance of purely administrative and nondiscretionary tasks unless those are actually part of a judicial function. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436-437 (1993) (denying court reporters absolute immunity as their duty to transcribe a record verbatim is non-discretionary and ministerial); *In re Castillo*, 297 F.3d 940, 952 (9th Cir. 2002), *as amended* (Sept. 6, 2002) (the Ninth Circuit has "extended absolute quasi-judicial immunity in post-*Antoine* decisions to court clerks and other non-judicial officers for purely administrative acts—acts which taken out of context would appear ministerial, but when viewed in context are actually a part of the judicial function").

Thus, by way of example, the Ninth Circuit determined that a court jury commissioner's decision not to provide sign-language interpreters to assist deaf individuals in jury service was not

---

[7] As the Court previously noted, "quasi-judicial immunity would extend to [Catterson and the Committee] for actions taken in connection with the investigation of the misconduct complaints against Judge Cebull." *Four Directions v. Comm. on Judicial Conduct & Disability of the Judicial Conference of the United States*, No. 14-CV-03022-YGR, 2015 WL 1254765, at *5 (N.D. Cal. Mar. 18, 2015) *order vacated on reconsideration*, No. 14-CV-03022-YGR, 2015 WL 3409469 (N.D. Cal. May 27, 2015). The Court made no determination as to whether Catterson or the Committee would be immune from a suit alleging injury based upon their refusal to produce emails in response to a request.

United States District Court
Northern District of California

performing an "integral part of the judicial process" and therefore not entitled to quasi-judicial immunity.  *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1108 (9th Cir. 1987).  By contrast, in *Castillo*, the Ninth Circuit held that a bankruptcy trustee's notice and scheduling of a hearing was part of its discretionary, judicial functions and was subject to immunity.  *In re Castillo*, 297 F.3d at 953.  Following from *Castillo*, a court of this district found that "the maintenance of case files and sealing of documents are basic and integral parts of the judicial process…[and] the clerk of the court and deputy clerks are the officials through whom such actions are taken," making such actions subject to quasi-judicial immunity unless performed "in the clear absence of jurisdiction."  *Ilaw v. United States*, No. 11-CV-5000 RMW, 2012 WL 629244, at *2 (N.D. Cal. Feb. 27, 2012) (dismissing complaint by litigant that clerk did not maintain medical records under seal, citing *Castillo* and *Mullis*).

Here, Catterson's denial of Plaintiffs' request was integral to the judicial process of investigating and deciding the complaints before the Ninth Circuit Judicial Council. The members of the Ninth Circuit Judicial Council acted in an adjudicative role to resolve the complaints against Judge Cebull.  The circuit clerk or circuit executive's role in accepting complaints and maintaining files and records related to judicial misconduct complaints is set forth in the Judicial Conduct Rules.  Catterson's maintenance of the investigative file, and the documents therein is similar to the role of a court clerk maintaining judicial records in regular civil and criminal litigation.  The Judicial Conduct Rules provide that records in judicial misconduct proceedings may be shielded from public view, similar to judicial records being sealed by court order in litigation under appropriate circumstances.

Notwithstanding the foregoing, even when an action undertaken is a judicial action, both quasi-judicial and judicial immunity can be overcome in certain very limited circumstances.  For instance, judges (and by analogy, court personnel performing tasks integral to a judicial function) will not be deprived of immunity for conduct that was "was in error, was done maliciously, or was in excess of…authority," but will only be deprived of their immunity when they have acted "in the clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley, supra*, 80 U.S. at 351).  The allegations against Catterson do not fall into within the circumstances described.  While Catterson is alleged to have denied the request on grounds

Plaintiffs contend are unconstitutional, and therefore arguably in *excess* of her authority, she is not alleged to have acted "in the clear *absence* of all jurisdiction." *Cf. Stump*, 435 U.S. at 356-57 (judge had original jurisdiction over action and therefore did not act in absence of jurisdiction in granting sterilization petition).

Based on the foregoing, Catterson's motion to dismiss on grounds of quasi-judicial immunity is **GRANTED.**

**B.**     **MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM – RULE 12(B)(6)**

**1.**     **Judicial Deliberative Privilege**

Catterson argues that the complaint fails to state a claim on which relief can be granted because the documents sought by Plaintiffs here are privileged under the judicial deliberative privilege.  The investigative file and emails Plaintiffs seek include materials used by or created at the direction of federal judges adjudicating the claim of judicial misconduct pursuant to the governing Judicial Conduct and Disability Act.

Confidential communications among judges and their staffs "in the performance of their judicial duties" are subject to a qualified privilege.  *See Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d 1488, 1520 (11th Cir. 1986) (*superceded by statute on other grounds*).  "A party raising a claim of judicial privilege has the burden of demonstrating that the matters under inquiry fall within the confines of the privilege."  *Id.*  The privilege generally "can extend only to communications among judges and others relating to official judicial business such as, for example, the framing and researching of opinions, orders, and rulings."  *Id.*  Items such as "appointment diaries, daily schedules or itineraries, calendars, travel itineraries" or "telephone message books, logs and memoranda," without some indication that they revealed the substance of communications concerning official judicial business, would not ordinarily be covered by the privilege.  *Id.* Further, the privilege is not absolute and may be overcome in appropriate circumstances.  *Id.* at 1520, 1521.

Plaintiffs, in their opposition to the motions, "stipulate" that they are only seeking to obtain copies of the emails of Judge Cebull identified in the Ninth Circuit Judicial Council's March 2013 Decision, not the entire investigative file.  (Dkt. No. 27 at 5:3-4.)  Catterson does not establish a

United States District Court
Northern District of California

United States District Court
Northern District of California

basis for a qualified privilege of Judge Cebull's emails in their entirety, given that the emails

described in the March 2013 Decision were not, in pertinent part, communications relating to

official judicial business.  The motion on these grounds is **DENIED**.

### 2.    Failure to State a First Amendment Violation

#### a.    *Allegations of the Claim*

Plaintiffs' complaint alleges a "First Count for Declaratory and Injunctive Relief for

Violation of First Amendment."  (Complaint, ¶¶ 25-33.)  Paragraph 31 alleges:

> Plaintiffs Adams and Castle are suffering a violation of their rights to Freedom of
> Speech and Freedom of the Press under the First Amendment because they have
> been prevented from accessing public records and from publishing the results of
> their requests and the complaints filed against Judge Cebull.  The nondisclosure
> of these important public documents therefore constitutes an abridgement of
> Plaintiffs' First Amendment rights.

Paragraph 33 alleges:

> This Court should therefore act to declare the legal bases on which the
> government relies for non-disclosure, 28 U.S. Code § 360 (a) of the Committee's
> Rules and 5 U.S.C. § 551(1)(B) the FOIA exemption for judicial records, as
> violating the First Amendment protections for Freedom of Speech and the Press.

The complaint also alleges that "the Committee has taken what was once public domain

information (the Cebull emails) and classified them now as 'Investigative Materials' subject to

secrecy, even though the complaint(s) has/have been settled…."  (*id.*, ¶ 28.)  Although Plaintiffs

allege that they have been "prevented…from publishing" information (*id.*, ¶ 28), this allegation

seems to be contingent entirely upon the alleged failure to permit access, not on Defendants taking

steps to prevent publication of information already in Plaintiffs' possession.  Plaintiffs further

argue that the FOIA "exemption afforded the Judiciary is not narrowly tailored to the need to

protect the rights of litigants or the deliberative process…[and] the withholding of the emails is

undermining the faith in the Judiciary by not exposing the hateful content of the emails to the light

of day."  (Dkt. No. 27 at 11:4-7.)

#### b.    *Legal Framework Applicable to First Amendment Access Claim*

Defendants argue that Plaintiffs have failed to state a constitutional challenge in their

complaint.  They contend that the First Amendment does not confer any right on the press or the

public generally to access government information.  Citing the Supreme Court's plurality opinion

in *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978), and other authorities, Defendants contend that there is no constitutional right of access to government information or right to gather information, and certainly not a guarantee of special access for the press.  In *Houchins*, in the context of a press request for access to a county jail to interview inmates or film and photograph conditions, the Supreme Court held that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control" and that the media has no special right of access different from that of the public generally.  *Houchins*, 438 U.S. at 15.

Nevertheless, the Supreme Court subsequently held that there is a qualified First Amendment right of access to information about government activities in the context of access to judicial proceedings.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81 (1980) (holding that "[a]bsent an overriding interest articulated in findings," a criminal trial should be open to the public).  "[A]n arbitrary interference with access to important information is an abridgment of the freedoms of speech and of the press protected by the First Amendment." *Id*. at 583 (Stevens, J., concurring).  Cases following thereafter have recognized a right of access for the press and the public protected by the First Amendment with respect to such information as: testimony of minor witnesses alleged to be victims of sex crimes; *voir dire* proceedings in criminal cases; and transcripts of preliminary hearings.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) (minor sex crime victims); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*voir dire*); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (preliminary hearing transcripts) ("*Press Enterprise II*").  "Though the Supreme Court originally recognized the First Amendment right of access in the context of criminal trials, the federal courts of appeals have widely agreed that it extends to civil proceedings and associated records and documents." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (collecting cases) (internal citation omitted).  Likewise, the Ninth Circuit has "applied the *Press–Enterprise II* framework to evaluate right of access claims in a variety of nonjudicial contexts." *Id.* (citing *Cal–Almond, Inc. v. U.S. Dep't of Agric.,* 960 F.2d 105, 109 (9th Cir. 1992), where the Ninth Circuit found a "serious constitutional question" regarding the right to access a list of almond growers eligible to

vote in a federal regulatory referendum).[8]

To evaluate a claim of a First Amendment right of access to government information, the *Press-Enterprise II* court set forth two preliminary considerations: (a) whether historical experience counsels in favor of public access, and (b) whether public access would play a "significant positive role in the functioning of the particular process in question." *Press-Enterprise II,* 478 U.S. at 8; *see also Cal-Almond, Inc.*, 960 F.2d at 109 (applying the *Press-Enterprise II* test). "Under [the *Press-Enterprise II*] framework, a court cannot rubber-stamp an access restriction simply because the government says it is necessary." *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012) (reversing district court's denial of preliminary injunction regarding Bureau of Land Management viewing restrictions on horse roundups where district court did not consider the fact-intensive *Press-Enterprise II* factors). When these "experience and logic" criteria are met, a qualified First Amendment right of access that cannot be overcome by conclusory assertions of prejudice arises, and access should only be denied when specific findings are made on the record demonstrating that denial of access is essential to preserve higher values and is narrowly tailored. *Press-Enterprise II*, 478 U.S. at 13-14.

### c.    *Analysis of Plaintiffs' First Amendment Claim*

Defendants assert that the confidentiality provision in the Judicial Council's Reform and Judicial Conduct and Disability Act of 1980, 28 U.S.C section 360, "unquestionably applies to the requested materials, and its disclosure prohibition reflects Congress's determination of the need for confidentiality in investigations of possible judicial misconduct." (Dkt. No. 25, 22:6-8.) However, the Court is not convinced that Judge Cebull's emails are protected categorically by section 360(a) from disclosure as "investigative materials." Defendants offer no authority directly addressing that question. As Plaintiffs highlight, Judge Cebull himself created the emails. They

---

[8] As the Supreme Court has stated, "in a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press….With respect to judicial proceedings in particular, the function of the press serves to...bring to bear the beneficial effects of public scrutiny upon the administration of justice." *Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 491–92 (1975) (finding First Amendment protection for television reporter's statements in reporting on trial, barring civil tort liability for reporting of trial events).

United States District Court
Northern District of California

United States District Court
Northern District of California

existed prior to and independent of the investigation.  They do not relate to performance of any judicial function, but instead were a personal use of government property for personal ends.[9] Thus, the Court considers the First Amendment claim from two perspectives:

(i) assuming Defendants are correct that the emails are "investigative materials" covered by 360(a), is that confidentiality restriction consistent with the First Amendment?; and alternatively,

(ii) assuming the emails are not "investigative materials" covered by 360(a), does the First Amendment provide any right or claim to compel their disclosure by Defendants?

The Court turns to the *Press-Enterprise II* framework to determine if, under either formulation, Plaintiffs' access claim is one that meets the historical experience and logic criteria, such that a qualified First Amendment right of access exists.

i.      First Perspective: Access to Investigative Materials

First, assuming the emails are covered by section 360(a), the First Amendment inquiry considers whether experience and logic criteria favor public access to documents in the investigative files related to judicial misconduct investigations.  Plaintiffs rely on *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978) to argue that there is a long-standing public right to access judicial records.  However, *Nixon* dealt only with the right to inspect documents filed in regular court proceedings, and expressly recognized that such right is not absolute but is subject to every court's right to exercise "supervisory power over its own records and files."  *Id.* at 598. Likewise, *Press-Enterprise II* and its progeny dealt with access to records and proceedings in criminal and civil cases, not with access to judicial misconduct investigations or the non-case-related records of judges generally.  *See First Amendment Coal. v. Judicial Inquiry & Review Bd.*,

---

[9]  Analogizing to documents protected by attorney-client privilege, Plaintiffs contend that even the absolute shield protecting such communications does not allow a person to conceal information simply by giving it to the person's attorney, whether or not part of an investigation. *See Fisher v. United States*, 425 U.S. 391, 403 (1976) (pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney); *see also United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997) (pre-existing document that was discoverable when it was in client's hands did not become less so by its transfer to his attorney).

784 F.2d 467, 472 (3d Cir. 1986) ("cases defining a right of access to trials are, at best, of limited usefulness in the context of the fundamentally different procedures of judicial disciplinary boards").  In examining the history of openness in one state's judicial disciplinary procedures, the court in *First Amendment Coalition* found that such proceedings had little history of openness and were created to supplement, rather than displace, the "more cumbersome and ineffective" public judicial discipline proceedings of impeachment or criminal prosecution of a judge.  *Id.* at 472.  Thus, the court there held that the lack of an historical antecedent, along with the state's weighty interest in protecting the confidentiality of the proceedings, meant that restricting public access to the hearings and papers in those disciplinary proceedings did not violate the First Amendment.  *Id.* at 477 ("even assuming a right of access…[t]he state's interests are weighty, its resolution of a serious problem is not unreasonable, and the Coalition's claim, although presenting arguably desirable alternatives, is not supported by historical antecedents").

The history underlying the Judicial Conduct and Disability Act of 1980 ("the JCDA"), of which section 360 is now a part, demonstrates that the federal judiciary's disciplinary processes, short of impeachment, have been subject to nearly total confidentiality.  *See* Richard L. Marcus, *Who Should Discipline Federal Judges, and How?*, 149 F.R.D. 375, 390 (1993) (noting history prior to enactment and confidentiality considerations in implementation of the JCDA); *In re Charge of Judicial Misconduct*, 593 F.2d 879, 880 at fn *(9th Cir. 1979) (Ninth Circuit procedures in effect before the JCDA, providing that all documents and proceedings of investigating committee shall remain confidential); *see also Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 846 (1978) (appendix to decision noting and citing to authorities that "[a] total of 49 jurisdictions now have some mechanism for inquiring into judicial disability and conduct. With the one exception of Puerto Rico, all of the remaining jurisdictions impose some requirement of confidentiality through constitutional, statutory, or administrative provisions").

As to the other *Press-Enterprise II* factor, Congress itself previously determined that disclosure of the claims and evidence in judicial misconduct proceedings would not play a positive role in the process.  Congress found, in enacting the JCDA, that allowing public access to judicial misconduct investigations, and the evidence given therein, would have adverse consequences, including potentially unfounded injury to a judge's reputation and diminished public confidence in

the judiciary.  S. Rep. No. 96-362 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4315, 4330 ("the Senate Report").  The Senate Report indicates that Congress' intention was to provide for confidentiality of "all matters filed with, all testimony or evidence given before, and all deliberations of a judicial council."  *Id.*  Congress's balancing of the competing considerations led it to adopt a publication requirement for final remedial orders, but otherwise to prohibit disclosure of investigative records.  *See* 28 U.S.C. § 360(a)-(b).  Moreover, courts have found that confidentiality in judicial misconduct proceedings serves the important functions of: encouraging the filing of complaints; obtaining complete and candid testimony; increasing cooperation with investigation; protecting judges from groundless complaints; maintaining public confidence by avoiding disclosure of unfounded complaints prior to investigation; and facilitating removal of offending judges by voluntary retirement or resignation rather than protracted impeachment proceedings.  *Kamasinski v. Judicial Review Council*, 44 F.3d 106, 110 (2d Cir. 1994) (citing *Landmark*).

Plaintiffs offer two arguments against finding that the experience and logic test precludes access to emails in the investigatory file here.  First, they contend that the government's interest in maintaining confidentiality of the evidence obtained in judicial misconduct complaint proceedings ends once the proceedings conclude, citing *Butterworth v. Smith*, 494 U.S. 624, 633 (1990).  *Butterworth* does not aid Plaintiffs.  The Court there held unconstitutional a ban on a witness' disclosure of his *own* testimony before a grand jury once those proceedings had concluded.  *Id.* at 632-33.  In *Butterworth*, the Supreme Court also reaffirmed the importance of the tradition of confidentiality of grand jury proceedings on the proper functioning of the system.  *Id.* at 629-30.  Despite allowing disclosure of a witness' own testimony, the *Butterworth* court held that the prohibition against disclosure of other witnesses' grand jury testimony "remain[ed] enforceable," consistent with the First Amendment.  *Id.* at 633.

Similar to confidentiality in grand jury proceedings, cases considering state court judicial misconduct proceedings have held that the First Amendment permits a ban on disclosure of those proceedings and evidence given therein, other than the witness' own testimony.  *See Kamasinski*, 44 F.3d at 110-11 (state may ban disclosure of facts regarding filing of complaint, testimony, or information obtained in judicial misconduct investigation consistent with First Amendment); *First*

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Amendment Coalition*, 784 F.2d at 479 (state may bar witness, board member, employee, or counsel from disclosing proceedings before the board, but not own testimony); *cf. Landmark*, 435 U.S. at 841 (criminal sanction for breach of confidentiality of state judicial misconduct proceedings and publication of truthful information was unconstitutional).  Thus, none of these authorities supports the conclusion that a bar on disclosure, even after the conclusion of the proceedings, is constitutionally infirm.

Second, Plaintiffs contend that the public has an interest in ensuring federal judicial officers are unbiased because no other check on their tenure exists.  While that argument certainly supports the existence of the JCDA as a mechanism supplementary to the ultimate "check" of impeachment, it does not warrant stripping the confidentiality of evidence obtained in proceedings under the JCDA.

In sum, while the Court cannot simply rubberstamp Congress' determination that confidentiality, rather than public access, is necessary to the proper functioning of the process, Plaintiffs have not offered allegations, authorities, or persuasive argument that public access would play a significant positive role in the JCDA's judicial misconduct complaint procedures.  Thus, Plaintiffs have not demonstrated that the experience and logic test would result in a qualified right of access to emails in the investigative file.

ii.     Second Perspective: Access to Correspondence Generally

The Court turns to the second inquiry: assuming that Judge Cebull's emails are not covered by section 360(a)'s confidentiality restrictions for documents in investigative files, have Plaintiffs set forth a basis for a claim that historical experience and logic favor finding a First Amendment right of access to judicial officers' emails or personal correspondence?  The Court finds that they have not.  While Plaintiffs generally assert that these emails are subject to disclosure as "emails from a public email account and sent on a public computer" (Plaintiffs' Supp., Dkt. No. 39, at 4:11-13), they offer no authority or persuasive argument that the First Amendment requires such

United States District Court
Northern District of California

23

disclosure.[10]  Indeed, Plaintiffs do not attempt to connect their arguments based on authorities establishing a right of access to information concerning judicial proceedings to the very different question of public access to the emails they seek here.  The authorities upon which Plaintiffs rely, such as *Nixon, supra*, address only public access to judicial records in civil and criminal cases, not access to a judge's personal correspondence.  In the absence of any relevant authority permitting public or press access to this kind of information about a judicial officer, or some other articulable basis for finding that the experience and logic factors set forth in *Press-Enterprise II* can compel access to a judge's personal correspondence, Plaintiffs have not stated even a qualified right of access to the information they seek.[11]

> ### d.    Conclusion

The Court finds that Plaintiffs have not set forth a cognizable basis for a claim to a First Amendment right of access to Judge Cebull's emails under the experience and logic criteria set forth in *Press-Enterprise II*.  The more general rule set forth by the Supreme Court in *Houchins*— that the First Amendment right of the public or the press does not grant unlimited access to all government information or information within the government's control—prevails.  Defendants' motions to dismiss Plaintiffs' First Amendment claim are, therefore, **GRANTED**.

As a further consequence, the *ultra vires* exception to sovereign immunity that Plaintiffs argued is not supported.  (*See* Section III.A.1, *supra*.)  Dismissal on grounds of sovereign immunity is therefore **GRANTED** as well.

> ### 3.    Federal Records Act Claim

Defendants move to dismiss the claim for violation of the Federal Records Act because it does not provide a private right of action.  Plaintiffs do not oppose.  The motions to dismiss on

---

[10]  *Compare* Kathryn A. Watts, *Judges and Their Papers*, 88 N.Y.U. L. Rev. 1665, 1675 (2013) (considering whether public should have access to judges' working papers, but not questioning the "longstanding view that a judge's private papers should be treated as the judge's private property").

[11]  Because the Court finds that Plaintiffs have not offered a basis for disclosure that would give rise to a qualified First Amendment right of access under the *Press-Enterprise II* experience and logic criteria, the Court need not turn to the second part of that analysis, which requires specific findings as to whether the denial of access is essential to preserve higher values and is narrowly tailored.  *See Press-Enterprise II*, 478 U.S. at 13-14.

these grounds are **GRANTED**.

**IV.    CONCLUSION**

Based upon the foregoing, the motions of Defendants Catterson and the Committee are **GRANTED** as follows:

The motion to dismiss under Rule 12(b)(1) on jurisdictional grounds as to the Committee is: (1) **GRANTED** on grounds of sovereign immunity because the allegations of unconstitutional conduct do not state a claim; (2) **GRANTED** for lack of standing due to failure to allege an action fairly traceable to the Committee; and (3) **GRANTED** on grounds that Plaintiffs fail to allege the Committee's conduct is not covered by absolute judicial immunity.

The motion to dismiss under Rule 12(b)(1) on jurisdictional grounds as to Catterson is: (1) **GRANTED** on grounds of sovereign immunity because the allegations of unconstitutional conduct do not state a claim; and (2) **GRANTED** on grounds of quasi-judicial immunity, but **DENIED** on standing grounds.

The motion to dismiss under Rule 12(b)(6) for failure to state a claim as to both Defendants is **GRANTED** on Plaintiffs' claims for violation of the First Amendment and violation of the Federal Records Act, and **DENIED** on grounds of judicial deliberative privilege.

Based on the grounds for dismissal, the Court finds that leave to amend would be futile. The action is therefore **DISMISSED WITH PREJUDICE** and the Court will enter judgment forthwith.

**IT IS SO ORDERED.**

Dated: February 25, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**